# EXHIBIT B

**MUTUAL CONFIDENTIALITY AGREEMENT**

This Mutual Confidentiality Agreement ("Agreement") is entered into as of **April 17, 2023**, ("Effective Date") by and between **MC Nutraceuticals PLLC** a Texas LLC with its principal place of business at 6101 Long Prairie Road, Suite 744, LB 17, Flower Mound, Texas 75028 ("MCN" and "First Party") and , **Ryan McConnell** with an address of 126 Kluge Ave.Palisade, CO 81526 ("**McConnell**" and "Second Party"), collectively (" the Parties").

First Party and Second Party may in turn be referred to as either a "Disclosing Party" or a "Receiving Party" and collectively referred to herein as "the Parties". Notwithstanding any such designation below as the "Disclosing Party" or the "Receiving Party," each Party hereto recognizes that this is a mutual nondisclosure and non-circumvention agreement. Thus, in the agreement that follows there may be times and circumstances whereby the exchange and use of information is reversed, and the Disclosing Party will under those circumstances be the Receiving Party. In those circumstances the obligations and duties set forth herein shall reverse and run each to the other on a mutually binding basis.

In respective instances "the Parties", "Disclosing Party" and "Receiving Party" includes but is not limited to their officers, agents and subsidiaries.

**WHEREAS, McConnell** is employed by MCN as Senior Account Manager and during the course of their employment will have access to sensitive, confidential and proprietary information of MCN and its affiliates.; and

**WHEREAS,** In order to induce Disclosing Party to disclose valuable, confidential, proprietary and trade secret information ("Confidential Information") during such discussions, Receiving Party agrees to accept such information in accordance with and under the restrictive covenants, terms, and conditions set forth in this Agreement;

**NOW THEREFORE,** in consideration of the premises contained herein, it is hereby agreed as follows:

1. **DISCLOSURE OF CONFIDENTIAL INFORMATION**

   As used in this Agreement, "Confidential Information" includes any information or data disclosed by Disclosing Party to the Receiving Party and which concerns the management and business of Disclosing Party, the business relationships and affairs of the Disclosing Party and its clients, the internal policies and procedures applicable to the Disclosing Party's personnel and the formulation of marketing strategies and policies. It also includes displays, designs, descriptions, procedures, formulas, discoveries, inventions, specifications, drawings, sketches, models, samples, codes, improvements, concepts, ideas, commercial agreements and past, present and future research, development, business activities, products or services that are proprietary to the Disclosing Party or to a third party to whom the Disclosing Party has a duty of confidentiality as well as any additional information the Disclosing Party may also designate as Confidential Information either orally or in writing. Such Confidential Information is covered by this Agreement whether or not it is disclosed to Receiving Party in written form and whether or not marked "Confidential" or, disclosed orally.

**2. CONFIDENTIALITY COVENANTS**

Receiving Party agrees to accept and receive Disclosing Party's Confidential Information under a covenant of confidentiality, establishing a fiduciary relationship between Disclosing Party and Receiving Party, in regard to the Confidential Information. Furthermore, Receiving Party hereby agrees to maintain and safeguard Disclosing Party's Confidential Information in the strictest of confidence (in a manner no less stringent than the measures they use for their own Confidential Information), using Confidential Information solely and exclusively for the purpose of evaluating the commercial potential with Disclosing Party.  Receiving Party will not directly or indirectly use, take advantage of, or allow anyone to use or take advantage of, the Confidential Information for their own separate interests, or to compete against the Disclosing Party in any enterprise of a comparable or similar nature. Under no circumstances shall the Receiving Party or its employees or consultants make copies of the Disclosing Party's Confidential Information or remove such Confidential Information from their business premises without written permission.

**3. CONFIDENTIALITY COVENANTS -- EXEMPTIONS**

Confidential Information shall not include information that (i) is or becomes available to the public other than by disclosure by the Receiving Party in violation of this Agreement; (ii) was demonstrably known to Receiving Party previously with no obligation to hold it in confidence; (iii) is independently developed by either party without recourse to the Confidential Information, or (iv) was rightfully obtained by either party from a third party without an obligation of confidentiality.

**4. MATERIALS SHALL REMAIN PROPERTY OF DISCLOSING PARTY**

All materials, including, without limitation, documents, displays, drawings, models, presentations, apparatus, sketches, designs and lists furnished to Receiving Party by Disclosing Party in furtherance of this Agreement shall remain the property of Disclosing Party.  Upon written notice of termination from the Disclosing Party, the Receiving Party shall, as requested by the Disclosing Party, immediately return all Confidential Information to Disclosing Party or destroy such materials and all copies thereof. This Agreement does not grant Receiving Party any license to use Disclosing Party's Confidential Information

**5. NON-CIRCUMVENT**

In the event **McConnell** ceases to be employed by MCN for any reason, they  may not contact or enter into any agreement directly, or through its agents or subsidiaries or by any other means, with any individual or entity that was a Customer of MCN or its affiliates. The direct contact of such third parties by **McConnell**, without the written consent of MCN shall be a material breach of this Agreement.

**6. TERM**

The term of this Agreement shall be effective as of the date signed and shall terminate one year after the employment of **McConnell** ceases.

7.  **GENERAL PROVISIONS**

(a)  This Agreement shall be governed by and construed in accordance with the laws of The United States of America and of the State of Texas. Receiving Party agrees that the breach of the provisions of this Agreement by Receiving Party will cause Disclosing Party irreparable damage for which recovery of money damages would be inadequate. Disclosing Party will, therefore, be entitled to obtain timely injunctive and other equitable relief to protect Disclosing Party rights under this Agreement in addition to any and all other remedies available at law.

(b)  Neither party may assign its rights under this Agreement. This Agreement may be amended or supplemented only by a writing that is signed by duly authorized representatives of both parties. No term or provision hereof will be considered waived by either party, and no breach excused by either party, unless such waiver or consent is in writing signed on behalf of the party against whom the waiver is asserted. If any part of this Agreement is found invalid or unenforceable, that part will be amended to achieve as nearly as possible the same economic effect as the original provision and the remainder of this Agreement will remain in full force. This Agreement constitutes the entire agreement between the parties relating to this subject matter and supersedes all prior or simultaneous representations, discussions, negotiations, and agreements, whether written or oral.

(c)  Any public announcement regarding the relationship between the parties shall be made only following consultation between the parties and joint approval of the timing and content of such public announcement, such approval not to be unreasonably withheld or delayed.

(d)  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original and all of which shall together constitute one and the same instrument. Delivery of an executed copy of this Agreement by electronic facsimile transmission or other means of electronic communication capable of producing a printed copy shall be deemed to be execution and delivery of this Agreement as of the Effective Date.

(e)  The individuals executing this Agreement on behalf of the Parties, do each hereby represent and warrant that they respectively have been and are on the date of this Agreement duly authorized by all necessary appropriate entity action, to execute this Agreement on behalf of their respective principals.

The parties shall be responsible for the acts of their officers, employees, subcontractors or agents to whom Confidential Information or any portion thereof has been disclosed, and the parties further guarantee the full and substantial performance by their officers, employees, subcontractors and agents of the terms and conditions of this Agreement.

8.  **NOTICES**

Any notice required to be given or otherwise given pursuant to this Agreement shall be in writing and shall be hand delivered, mailed by recognized overnight courier service to the other Party at the address first written above (or to such other address as either party may hereafter designate in accordance with the terms of this Paragraph).

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed as of the day and year first written above.

**First Party – MC Nutraceuticals, PLLC**

_____
(Authorized Signature)


_____
Bret Worley, President


_____
(Date)

**Second Party  - Ryan McConnell**

_____
(Authorized Signature)


_____
Ryan McConnell


4/11/2023
_____
(Date)