IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:25-CV-400-BO-KS

| | |
|---|---|
| MC BOTANICALS LLC and MC NUTRACEUTICALS LLC, Plaintiffs, <br><br> v. <br><br> ASTERRA LABS LLC, RISE CAPITAL LLC, and RYAN MCCONNELL, Defendants. | **DEFENDANT RISE CAPITAL LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

## INTRODUCTION

Defendant Rise Capital, LLC ("Rise") respectfully submits this memorandum in support of its motion to dismiss all claims asserted against it in Plaintiffs' Verified Complaint ("Complaint"), (ECF No. 1), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint asserts three claims against Rise: (1) tortious interference with contract (Counts Five and Six); (2) tortious interference with prospective economic advantage (Counts Five and Six); and (3) unfair and deceptive trade practices (Count Nine). Each of these causes of action fails to state a claim for which relief may be granted against Rise as a matter of law, because the Complaint does not plausibly allege facts sufficient to satisfy the requisite elements under North Carolina law.

Rise is an equity investor in co-defendant Asterra Labs LLC ("Asterra") but is not involved in Asterra's day-to-day operations and was not a party to any agreement with the plaintiffs, MC Botanicals LLC ("MC Botanicals") and MC Nutraceuticals LLC ("MC Nutraceuticals") (collectively, "Plaintiffs" or "MC"). Rise's limited involvement arose solely in connection with

1

efforts to protect its investment by assisting Asterra in collecting debts owed by MC after Plaintiffs defaulted on their contractual obligations, resulting in an outstanding balance exceeding $1.6 million. The Complaint's allegations against Rise are conclusory, speculative, and insufficient to state a claim upon which relief may be granted. Accordingly, the Court should dismiss all claims against Rise with prejudice.

## **STATEMENT OF FACTS**

For purposes of this motion, the Court must accept as true[1] the well-pleaded factual allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint that "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief") (citation and internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a plaintiff must set out the basis for its claim by providing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). However, the Court is not required to accept legal conclusions couched as facts or unwarranted inferences. *Iqbal*, 556 U.S. at 678. The relevant factual allegations, drawn from the Complaint, are summarized below.

Plaintiffs are entities engaged in the distribution of hemp-derived cannabinoids. (Compl. ¶¶ 9-10). Asterra is a North Carolina-based manufacturer of premium wholesale and white-label cannabidiol ("CBD") and hemp products. (Compl. ¶¶ 14-16.) On May 2, 2025, Asterra and MC Botanicals entered into a Manufacturing and Supply Agreement ("Agreement"), pursuant to which

---

[1] Nothing in this memorandum should be construed as a concession or admission by Rise or Asterra that any allegations made by Plaintiffs are true. To the contrary—Rise and Asterra dispute the veracity of Plaintiffs' allegations and intend to vigorously defend against them when procedurally appropriate.

MC Botanicals would procure ingredients and advise Asterra on purchases, Asterra would finance and fulfill purchase orders, and MC Botanicals would pay invoices within 30 days, with interest accruing on late payments at 1.5% per month. (Compl. ¶¶ 25-26; Ex. A.) The financial strength and creditworthiness of MC Botanicals was a material term of the Agreement, which permitted Asterra to pause the supply of products to MC Botanicals unless and until MC Botanicals adequately demonstrated its financial health and creditworthiness if Asterra "in its reasonable discretion" determined that MC Botanicals may be unable to meet its obligations under the Agreement. (Compl. Ex. A ¶ 9.) Rise is a private equity company that owns an equity interest in Asterra but is not involved in Asterra's operations. (Compl. ¶16.) Although MC alleges that Rise was purportedly required to fund the credit facility extended to MC Botanicals under the Agreement, Compl. ¶ 26.j), the Agreement itself, (Compl. Ex. A), reveals that Rise was not a party to the Agreement and had no contractual or other obligations to Plaintiffs.

MC contends that its relationship with Asterra deteriorated due to Asterra's alleged operational failures, including delays in fulfillment and inventory mismanagement. (Compl. ¶¶ 32-33.) Plaintiffs allege that they embedded employees, including co-defendant Ryan McConnell ("McConnell") (a former MC Nutraceuticals employee), at Asterra's facility to assist MC in managing its relationship with Asterra. (Compl. ¶¶ 35-41.) It is uncontroverted that MC fell behind on payments owed to Asterra for products Asterra supplied to MC Botanical and MC Nutraceuticals. MC alleges that the failure to timely pay the amounts invoiced and owed to Asterra was the result of "market turbulence" due to "threatened regulatory changes" in Texas, which supposedly affected Plaintiffs' cash flow, leading to payment delays. (Compl. ¶¶ 55-57.) Asterra allegedly repudiated the Agreement without providing a 30-day cure period, and Rise's alleged

involvement is limited to purportedly interjecting itself as "chief negotiator" to cause Asterra's repudiation. (Compl. ¶¶ 58-63, 46.)

Significantly, Plaintiffs omit from their recitation of the relevant terms of the Agreement, (Compl. ¶ 26), that the existence of reasonable grounds for Asterra to believe that MC would be unable to comply with its financial obligations under the Agreement—for example, MC falling behind on payments—expressly gave Asterra discretion to suspend shipments directed by MC until MC demonstrated that it was financially healthy and creditworthy. (Compl. Ex. A ¶ 9.) Plaintiffs' description of the events that transpired in May and June of 2025 is exactly what was contemplated by paragraph 9 of the Agreement: (1) MC was unable to pay as agreed, leading Asterra to reasonably question whether MC would be able to comply with its obligations under the Agreement, (Compl. ¶¶ 56-57, 59-60); (2) Asterra suspended shipments directed by MC until MC could demonstrate that it was financially healthy by paying $50,000.00 per day towards its substantial outstanding balance, (Compl. ¶¶ 62, 66); (3) MC failed to demonstrate[2] that it was financially healthy and creditworthy by making the daily $50,000.00 payments towards its outstanding balance, (Compl. ¶¶ 65-66, Ex. D); and (4) because MC consistently failed to demonstrate its financial health and creditworthiness, Asterra maintained its suspension of shipments for MC and ultimately terminated the Agreement, (Compl. ¶ 68, Ex. D).

On or about June 11, 2025, McConnell resigned from MC Nutraceuticals and joined Asterra, allegedly breaching his employment agreement and misappropriating information that

---

[2] The Complaint alleges, "Defendants did not ask MC Botanicals for further assurances that it could performance of making payments on the Asterra Invoices." (Compl. ¶ 64.) However, paragraph 9 of the Agreement, (Comp. Ex. A ¶ 9), makes clear that it is MC's burden to establish its financial strength and creditworthiness. MC made no effort to demonstrate its positive financial condition to Asterra, and the most plausible reasonable inference for this failure by MC is that it was in poor financial condition and recognized that it could not comply with its payment obligations under the Agreement.

4

Plaintiffs contend constitutes trade secrets. (Compl. ¶¶ 69-73.) These allegations are undermined by the July 1, 2025[3] email from Asterra's counsel attached as Exhibit D to the Complaint, which reveals that MC had been aware of McConnell's transition from MC to Asterra and MC only requested reimbursement for the costs associated with McConnell's transition when MC was unable to pay its invoices to Asterra. (Compl. Ex. D.)

Plaintiffs allege, without any supporting facts, that Rise "knew or should have known" of McConnell's restrictive covenants and induced his breaches. (Compl. ¶¶ 76-78.) Plaintiffs further allege that Asterra and Rise converted MC Botanicals' inventory—which had been paid for by Asterra and never reimbursed by MC—and solicited MC's customers. (Compl. ¶¶ 79-83.) Defendants are implausibly accused, without specificity or any supporting facts, of threatening to use unidentified political connections to prosecute Plaintiffs' principals if demands that MC Botanicals LLC and MC Nutraceuticals LLC pay the substantial outstanding balance owed for work done by Asterra were not met. (Compl. ¶¶ 84-87.)

Based on these sparse factual allegations related to purported conduct by Rise, Plaintiffs assert tortious interference claims against Rise, (Counts Five and Six), and include Rise in their unfair and deceptive trade practices claim, (Count Nine). (Compl. ¶¶ 111-121, 140-148.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted. To survive dismissal, the complaint must allege

---

[3] Plaintiffs inaccurately state that the email from Asterra's counsel to Defendants is dated July 2, 2025, but the actual date is July 1, 2025. (Compl. ¶ 86, Ex. D.) This misstatement is understandable, because Asterra's counsel sent two subsequent emails on July 2, 2025 and several emails prior to July 1, 2025, all of which were deliberately omitted by Plaintiffs in furtherance of their misleading narrative and attempts to avoid paying any amount of the approximately $1.6 million owed to Asterra.

enough facts to state a claim to relief that is, not merely "conceivable," but "plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible when the factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient to plausibly state a valid claim for relief. *Id.* at 663. The court must disregard allegations that are "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotations and citations omitted).

Because North Carolina is the forum state and the Agreement between Asterra and MC provides that the laws of this state will govern and control disputes arising from the Agreement, (Compl. Ex. A ¶ 17), the substantive law of North Carolina governs the claims asserted by Plaintiffs. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-96 (1941) (federal court applies forum state's choice-of-law rules); *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (North Carolina applies *lex loci contractus* for breach of contract claims); *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) (holding that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect").

## ARGUMENT

### I. The Complaint fails to state a claim for tortious interference with contract against Rise (Counts Five and Six).

To state a claim for tortious interference with contract under North Carolina law, a plaintiff must allege: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party not to

6

perform the contract; (4) the defendant's actions were without justification; and (5) resulted in actual damages to the plaintiff. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); *see also Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016). The Complaint fails to plausibly allege elements (2), (3), and (4) as to Rise regarding the McConnell Agreement and fails to plausibly allege elements (3) and (4) as to Rise with respect to the Agreement between MC Botanicals and Asterra.

###    A.    Plaintiffs failed to adequately allege that Rise knew of the existence and terms of the McConnell Agreement.

The Complaint speculates that Rise "knew or should have known of the McConnell Employment Agreement and that Mr. McConnell was subject to restrictive covenants similar to those contained in Section 10 of the [Agreement between MC Botanicals and Asterra]," (Compl. ¶ 76), and that Rise was "fully aware or should have been fully aware of [the McConnell Agreement's] terms," (Compl. ¶ 118). The North Carolina Supreme Court found similarly vague allegations to be insufficient to satisfy the knowledge requirement for this tort in *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018).

In *Krawic*, the plaintiffs sued a rival dance studio and dance instructors who were formerly employed by the plaintiff for essentially the same claims that MC has asserted against Defendants in this action. 370 N.C. at 605-06, 811 S.E.2d at 545-46. The North Carolina Business Court dismissed all claims against the studio defendant. *Id.* The trial court dismissed the plaintiffs' claim for tortious interference with contract against the studio defendant "on the basis that plaintiffs failed to allege that the Metropolitan defendants knew of the exclusive employment agreement between plaintiffs and the dancer defendants." *Id.* at 606, 811 S.E.2d at 546. On appeal, the plaintiffs contended that the following allegation was sufficient to satisfy the knowledge element of their claim for tortious interference: "Defendants Metropolitan and Manlys, as well as

7

Defendants Bogosavac and Divljak, all had knowledge and/or should have had knowledge of the existing contracts pursuant to the O1-B work visas between Plaintiffs and Defendants Bogosavac and Divljak." *Id.* at 607, 811 S.E.2d at 546. The Supreme Court affirmed the trial court's dismissal, holding that the complaint did not allege facts sufficient to demonstrate how the studio defendant could have known of the existence of any exclusivity provisions of the dancer defendants' employment agreement simply because the studio defendant was allegedly aware of the dancer defendants' non-immigrant work visas. *Id.* at 607, 811 S.E.2d at 546-47.

As in *Krawic*, Plaintiffs have failed to allege any facts that establish how Rise knew or could have known of the existence of McConnell Agreement or any of the provisions of that agreement. The Complaint does not allege that any employee or representative of Rise reviewed a copy of the McConnell Agreement, received a copy of the agreement, discussed the terms of the agreement with Plaintiffs or McConnell, or ever spoke to McConnell at all. Plaintiffs simply contend that Rise should have somehow divined from its supposed knowledge of existence of the Agreement between MC Botanicals and Asterra—to which Rise was indisputably not a party—that McConnell had an employment agreement with MC that contained confidentiality provisions. These allegations are insufficient to satisfy the second element of Plaintiffs' tortious interference claim. *See Krawic*, 370 N.C. at 607, 811 S.E.2d at 546-47.

**B.    There are no factual allegations that Rise induced McConnell or Asterra to breach any agreement with Plaintiffs or otherwise unjustifiably interfered with such agreements.**

The Complaint does not allege specific acts by Rise that intentionally induced Asterra or McConnell to breach any contract with MC. Plaintiffs vaguely allege that Rise "interject[ed] itself to act as chief negotiator for Asterra" and "caused Asterra to repudiate" the Agreement, (Compl. ¶¶ 46, 63), and that it somehow "procured McConnell's breach," but provides no facts showing

8

inducement by Rise, such as offers of employment, incentives, or other promises that would have foreseeably enticed McConnell to violate any agreement with MC, (Compl. ¶¶ 76-78.) These conclusory assertions lack specific supporting factual allegations regarding communications, directives, or actions by Rise. *See Iqbal*, 556 U.S. at 678 (requiring more than "naked assertions" devoid of "further factual enhancement").

Even if inducement by Rise were adequately alleged, Rise's actions were justified. Justification exists if the defendant acts to protect a legitimate business interest without malice. *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (holding that shareholders have a qualified privilege to induce severance of contractual relations between the company and a third party where doing so is in the economic interests of the company); *see also Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988) (actions to protect the economic interests of a company are typically justified and cannot be the basis of a claim for tortious interference).

As an equity investor in Asterra, Rise had a legitimate interest in protecting its investment after Plaintiffs' numerous defaults created a $1.6 million outstanding balance owed by MC to Asterra. (Compl. ¶¶ 3, 27, 51, 58-63; Ex. D.) Even treating the allegations of the Complaint as true, as required by Federal Rule of Civil Procedure 12(b)(6), Plaintiffs concede that Rise became substantially involved only after payment delays by MC. (Compl. ¶¶ 27, 46, 62.) A party's efforts to collect debts or enforce contractual obligations constitute actions to protect an economic interest and are a defense against a tortious interference claim. *Privette v. Univ. of N.C.*, 96 N.C. App. 124, 134-35, 385 S.E.2d 185, 191 (1989) (holding the complaint fails to allege that there was no motive other than malice for a defendant's interference, the allegations are sufficient to support a claim for tortious interference). Plaintiffs' unsupported allegations of "malice" are conclusory

9

and contradicted by the Complaint's acknowledgment of MC's defaults on its financial obligations under the Agreement and its failure to make any payment towards the approximately $1.6 million owed to Asterra for weeks prior to the commencement of this action. (Compl. ¶¶ 55-57, 113). *See Nemet Chevrolet*, 591 F.3d at 255 (disregarding unwarranted inferences in determining the sufficiency of the complaint on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

In *Button v. Level Four Orthotics and Prosthetics, Inc.*, 380 N.C. 459, 468, 869 S.E.2d 257, 265-66 (2022), the plaintiff alleged that two of the defendants, who were shareholders in the corporation that employed the plaintiff, had intentionally induced the plaintiff's employer to violate its employment agreement with the plaintiff "to benefit themselves regardless of the negative repercussions on [the employer corporation]." *Id.* at 468, 869 S.E.2d at 266. The North Carolina Supreme Court affirmed the trial court's dismissal of the plaintiff's claim for failure to state a claim upon which relief may be granted, because: (1) the plaintiff failed to make specific allegations showing how each defendant had acted in its own personal interest, and (2) the conclusory allegations of the complaint were insufficient to establish the malice necessary to defeat the qualified privilege of the defendant shareholders as corporate "non-outsiders," who were presumed to be acting in the employer corporation's best interests. *Id.* at 467-69, 869 S.E.2d at 265-66. *See also Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964) (holding that shareholders and directors have a qualified privilege, arising from their financial interest in and fiduciary responsibility to the corporation, to "interfere with contractual relations between the corporation and a third party"); *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965) (holding that "[g]eneral allegations which characterize defendant's conduct as malicious are insufficient as a matter of pleading").

Even if MC had adequately alleged that Rise induced Asterra to breach its Agreement with MC Botanicals, the complaint does not contain any allegations sufficient to defeat the presumption that Rise was acting in Asterra's best interests and was privileged to interfere with its contractual relationship with MC Botanicals, which Plaintiffs concede had not complied with its obligation to pay for products supplied by Asterra pursuant to the Agreement. In fact, treating the allegations of the Complaint as true, the Complaint reveals on its face that any interference by Rise was motivated, at the very least in part, by MC's failure to pay as agreed, and MC's general characterization of Rise's conduct as malicious is insufficient to defeat Rise's qualified privilege.

Likewise, as to the McConnell Agreement, even if Plaintiffs had adequately alleged that Rise had caused McConnell to leave his employment with MC to work for Asterra, any such interference would not be actionable. In *Hooks*, the defendant was employed by the plaintiff as a district manager who supervised insurance agents operating in a certain geographic area. 322 N.C. at 217-18, 367 S.E.2d at 648. The defendant left his employment with the plaintiff and accepted a job with another company that was a competitor of the plaintiff to work in the same geographic area. *Id.* at 218, 367 S.E.2d at 648. The defendant hired several of the plaintiff's employees to work at the defendant's new company to perform the same job function and in the same territory in which they worked for the plaintiff. *Id.* at 218-20, 367 S.E.2d at 648-49. Because the defendant had worked for the plaintiff as a supervisor, when he recruited the plaintiff's employees, he knew the terms of their non-compete agreements and that the employees working with the defendant's new company violated those agreements. *Id.* at 219, 367 S.E.2d at 649. The plaintiff filed a claim for tortious interference with contract against the defendant based on the defendant's alleged malicious interference with the non-compete provisions of its former employees' employment contracts. *Id.* at 218, 367 S.E.2d at 648. However, the North Carolina Supreme Court held that

11

that the defendant's hiring of the plaintiff's former employees "for the purpose of developing the territory assigned to him by a company competing with the plaintiff" was a justifiable interference, because competing with the plaintiff was a legitimate business motive. *Id.* at 222, 367 S.E.2d at 650. As a result, the Supreme Court affirmed the trial court's dismissal of the plaintiff's claim for tortious interference with contract for failure to state a claim upon which relief may be granted. *Id.* at 217, 367 S.E.2d at 654.

Even if MC had sufficiently alleged that Rise had known about the existence and terms of the McConnell Agreement and interfered with that agreement by encouraging McConnell to accept a position with Asterra to compete[4] with MC, it is well settled under North Carolina law that any such interference would be legally justified unless MC made factual allegations showing that Rise's "**only** motive is a malicious wish to injure" MC and that there was no business purpose for the interference. *Hooks*, 322 N.C. at 221, 367 S.E.2d at 650 (emphasis added). Because the Complaint reveals on its face that any alleged interference with the contract between McConnell and MC was legally justified and completely fails to make specific allegations showing the malice necessary to defeat Rise's privilege, MC's claim for tortious interference with contract against Rise fails as to the McConnell Agreement. *See also Kuykendall*, 322 N.C. at 662, 370 S.E.2d at 388 (holding that, even where a defendant hires a former employee of the plaintiff, such actions without evidence of an improper motive are insufficient to support a cause of action for tortious interference).

---

[4] There are no allegations in the Complaint demonstrating that Asterra is a competitor of Plaintiff. In fact, Asterra and MC have different business models. Asterra manufactures hemp products and sells those finished goods. MC does not manufacture any of its own products and has a business model based purely on arbitrage, where it buys raw ingredients and other hemp products and sells them at a markup without adding any value.

Accordingly, Plaintiffs' claim for tortious interference with contract against Rise in Counts Five and Six should be dismissed.

II.     **The Complaint fails to state a claim for tortious interference with prospective economic advantage against Rise (Counts Five and Six).**

Plaintiffs conflate their claims for tortious interference with contract and tortious interference with prospective economic advantage as though these are not different torts with different elements, and the Complaint fails to adequately allege either cause of action.

North Carolina recognizes a claim for tortious interference with prospective economic advantage, which requires a plaintiff to establish that: (1) the defendant induced a third party not to enter into a contract with the plaintiff; (2) the prospective contract would have ensued but for the interference; (3) the defendant acted without justification; and (4) the plaintiff's damages were proximately caused by the defendant's unjustified interference. *Beverage Sys.*, 368 N.C. at 701, 784 S.E.2d at 463; *see also Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000). The Complaint fails on elements (1), (2), and (3), such that it also necessarily fails on element (4).

The Complaint vaguely alleges that Rise "impair[ed] the contractual rights and prospective economic advantage," (Compl. ¶¶ 112, 119), of MC Botanicals by supposedly causing Asterra to repudiate the Agreement and inducing McConnell to breach the McConnell Agreement. However, the Complaint does not identify any prospective contracts that would have ensued or any third party who would have purportedly entered into a contract with MC Botanicals but for the unspecified "interference" of Rise. The Complaint makes only general references to "customers" like Golden Hour Hemp, which was allegedly solicited by Asterra and McConnell, not Rise, and general "vendor lists," which were also purportedly obtained by Asterra and McConnell, not Rise. (Compl. ¶¶ 78, 98.) These allegations are insufficient to satisfy the second element of Plaintiffs' tortious interference with prospective advantage claim. *See Dalton v. Camp*,

13

353 N.C. 647, 655, 548 S.E.2d 704, 710 (2001) (dismissing the tortious interference with prospective advantage claim for failure to specifically allege acts that amount to malicious inducement by the defendant or to demonstrate that a contract would have ensued but for the defendant's unjustified interference); *King v. Chaffin*, 759 F. Supp. 3d 690, 700 (W.D.N.C. 2024) (dismissing the plaintiffs' claim for tortious interference with prospective advantage where the plaintiffs failed to identify a specific contract that was lost as a result of the defendants' conduct and holding that the defendants instructions to a prospective client of the plaintiff to deal with the defendants instead is "run of the mill business competition"). The "but for" element of this cause of action is also entirely speculative and insufficiently alleged, as no facts are asserted that show Rise maliciously interfered or prevented the formation of other contracts that would have ensued. *See Beverage Sys.*, 368 N.C. at 701, 784 S.E.2d at 463 (holding that a plaintiff's "mere expectation of a continuing business relationship is insufficient" and that plausible allegations of causation are required).

Moreover, as with MC's insufficient claim for tortious interference with contract claim, Rise's actions were justified to protect its investment, as discussed *supra* Section I. *See Embree*, 330 N.C. at 498, 411 S.E.2d at 924. Unsupported allegations of threats that were supposedly made involving "powerful North Carolina networks" are attributed to "Defendants" collectively but lack specific factual contentions tying Rise to any improper conduct. (Compl. ¶¶ 84-87). *See Twombly*, 550 U.S. at 565 n.10 (vague allegations of parallel actions taken by defendants without setting out specific facts supporting the existence of a conspiracy are insufficient). Accordingly, Counts Five and Six should be dismissed as to Rise on Plaintiffs' claim for tortious interference with prospective advantage.

**III.     The Complaint fails to state a claim for unfair and deceptive trade practices against Rise (Count Nine).**

To state a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) in or affecting commerce; and (3) proximately causing injury to the plaintiff. *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711; *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007). An act is unfair if it offends public policy or is immoral, unethical, oppressive, or substantially injurious, and it is deceptive if it tends to deceive. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). The Complaint fails as to Rise on elements (1) and (3).

The UDTPA claim against Rise incorporates prior allegations and asserts "unfair and deceptive" conduct, including repudiation of the Agreement, inducement of McConnell's breaches, conversion of inventory, and threats of prosecution. (Compl. ¶¶ 142-48.) However, these acts are not attributed specifically to Rise. Instead of alleging any specific unfair or deceptive conduct by Rise, the Complaint improperly relies on collective pleading because Rise did not have any contractual or other obligation to Plaintiffs. (Compl. ¶¶ 142-48.). Rise's role in the dispute between Asterra and MC was limited to working in good faith to attempt to negotiate a resolution of Asterra's claims against MC after defaults to protect Rise's investment as one of several owners of an equity interest in Asterra. This conduct does not constitute unfairness or deception. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (applying North Carolina law and holding that ordinary contract disputes are not UDTPA violations absent egregious circumstances); *see also PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) (a mere breach of a contract is insufficient to satisfy the requirements for a UDTPA claim).

**A.      Legitimate debt collection efforts cannot be the basis of a UTPA claim.**

Allegations of threats by Rise to take legal action against MC and its principals, (Compl. ¶ 148), even if true, relate only to legitimate efforts to collect the more than $1.6 million owed by MC to Asterra and cannot, as a matter of law, be actionable because MC does not allege that such conduct is a violation of any specific regulation applicable to debt collection.  *See Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 208-09, 794 S.E.2d 898, 904 (2016) (citing *Davis Lake Community Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868-69 (2000), and holding "a party may not bring a claim for unfair or deceptive practices based upon the actions of the defendant's counsel" and that in order to state a claim for unfair debt collection, a complaint must allege facts stating a violation of the specific regulations applicable to debt collection).

Under North Carolina law, debt collection activities are regulated by the North Carolina Debt Collection and Servicing Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 to 75-56, which "exclusively constitute[s] the unfair or deceptive acts or practices proscribed by N.C. Gen. Stat. § 75-1.1 in the area of [debt collection]."  N.C. Gen. Stat. § 75-56(a).  Thus, a plaintiff cannot maintain a UDTPA claim based on debt collection efforts unless the conduct violates the NCDCA's specific prohibitions against fraudulent, deceptive, or misleading representations (N.C. Gen. Stat. § 75-54), unlawful threats or coercion (N.C. Gen. Stat. § 75-51), harassment (N.C. Gen. Stat. § 75-52), or unreasonable publication (N.C. Gen. Stat. § 75-53).  *See Simmons v. Kross Lieberman & Stone, Inc.*, 228 N.C. App. 425, 430, 746 S.E.2d 311, 315 (2013) (holding that NCDCA provides exclusive remedy for unfair debt collection practices, precluding standalone UDTPA claims arising from collection efforts absent an NCDCA violation).  Here, the Complaint does not allege any NCDCA violation by Rise or Asterra.  Instead, as to Rise, it concedes that Rise's involvement

arose from Plaintiffs' payment delays and defaults, (Compl. ¶¶ 46, 58-63), which triggered legitimate efforts to enforce the Agreement and recover the over $1.6 million owed to Asterra.

**B.    Rise's support for Asterra's exercise of its rights under paragraph 9 of the Agreement is not unfair or deceptive conduct within the meaning of the UDTPA.**

The Complaint on its face reveals that Asterra had the absolute right under paragraph 9 of the Agreemet to cease supplying products to MC if Asterra determined that "in it is reasonable discretion . . . [MC's] financial condition or creditworthiness is such that [MC] may be unable to meet is financial obligations under [the] Agreement." (Compl., Ex. A ¶ 9.)  MC's delinquency on its payment obligations to Asterra would certainly be considered a reasonable basis for Asterra to question MC's financial condition and creditworthiness, which would trigger Asterra's right to demand that MC demonstrate "the strength of [MC's] financial condition or creditworthiness" to meet its obligations to Asterra under the Agreement, and if MC failed to do so, to terminate the Agreement. (Compl. Ex. A ¶ 9.)  To the extent the Complaint can be construed to allege that Rise encouraged Asterra to exercise its rights under paragraph 9 of the Agreement to stop shipments to MC until MC demonstrated its financial strength and creditworthiness, any such conduct by Rise—supporting Asterra's prudent exercise of its contractual rights—is neither unfair nor deceptive and cannot possibly be the basis of a claim under N.C. Gen. Stat. § 75-1.1.  Routine, non-abusive collection activities and the exercise of contractual rights do not constitute unfair or deceptive practices.  *See, e.g., Self v. Nationstar Mortg. LLC*, No. 2:19-CV-3-D, 2019 U.S. Dist. LEXIS 165305, at *15 (E.D.N.C. Sep. 26, 2019) (dismissing a UDTPA claim because the "NCDCA exclusively constitutes the unfair or deceptive acts or practices proscribed by the UDTPA in debt collection matters").

**C. Statements regarding an intent to pursue criminal charges are not improper when made in connection with efforts to collect a legitimate debt resulting from economic loss caused by the criminal conduct.**

Even assuming for the sake of argument that Rise made threats to pursue criminal prosecution against Plaintiffs' principals as alleged in the Complaint, such threats do not constitute unfair, deceptive, or unethical conduct under North Carolina law where, as here, they relate to acts forming the basis of both civil claims and potential criminal charges and the amounts demanded do not exceed what Asterra would be entitled to recover as civil damages or criminal restitution. A threat to institute criminal proceedings, when honestly made and based on a good-faith belief that a crime has been committed, does not amount to extortion or duress, particularly when used to collect a legitimate debt arising from the alleged criminal conduct.

Here, the alleged threats pertain to potential criminal charges, such as obtaining property by false pretenses under N.C. Gen. Stat. § 14-100, the elements of which mirror potential civil claims for fraud and conversion against MC, and the demands made by Defendants were limited to recovering the approximately $1.6 million owed to Asterra under the Agreement—precisely the economic loss that would form the basis for civil damages or restitution in a criminal proceeding under N.C. Gen. Stat. § 15A-1340.34, which permits restitution for economic loss to a victim directly and proximately harmed by the offense. Because the statements of an intent to pursue criminal charges against MC's principals were not baseless, false, or aimed at extracting excessive amounts beyond the legitimate recovery, these statements are proper and fall outside the scope of unfair or deceptive practices under the UDTPA. *See Simmons*, 228 N.C. App. at 430, 746 S.E.2d at 315 (emphasizing that debt collection threats must violate specific NCDCA provisions to support a UDTPA claim).

18

Threats to pursue criminal charges to recover the amount Asterra would be entitled to receive as restitution also do not constitute the offense of compounding a crime under North Carolina law, which involves agreeing to forbear from reporting or prosecuting a felony in exchange for valuable consideration, rather than threatening prosecution to encourage repayment of a legitimate debt. *See State v. Hodge*, 142 N.C. 665, 667-68, 55 S.E. 626, 627 (1906) (defining compounding a crime as an agreement not to inform authorities about a crime in exchange for something of value beyond the economic loss proximately resulting from the criminal acts). The North Carolina State Bar has determined, consistent with ABA Formal Opinion 92-363, that threatening criminal prosecution in connection with a related civil matter does not violate the Rules of Professional Conduct if the criminal charges are well-grounded in fact and law and the lawyer does not imply improper influence over the criminal process. *See* Alice Neece Moseley, *When May a Lawyer Threaten the Other Party with Criminal Prosecution?* N.C. STATE BAR ETHICS ARTICLES (June 1998), https://www.ncbar.gov/for-lawyers/ethics/ethics-articles/when-may-a-lawyer-threaten-the-other-party-with-criminal-prosecution/ (explaining that no disciplinary action is warranted for well-founded threats of criminal prosecution in related civil matters).

**D.    Acts of an attorney representing a party attempting to collect a debt cannot constitute unfair or deceptive conduct within the meaning of the UDTPA, because they are excluded by the learned-profession exemption.**

Although Plaintiffs attached to the Complaint a July 1, 2025 email from Asterra's attorney reiterating Asterra's demands for payment and warning of potential legal consequences, (Compl. Ex. D), a UDTPA claim cannot be based on efforts undertaken by counsel to collect a debt owed by Plaintiffs. North Carolina expressly law exempts "professional services rendered by a member of a learned profession" from conduct that is actionable under the UDTPA. *See* N.C. Gen. Stat. § 75-1.1(b). This exemption includes debt collection activities performed by attorneys on behalf

19

of their clients. *See Reid v. Ayers*, 138 N.C. App. 261, 266-67, 531 S.E.2d 231, 235 (2000) (holding that attorneys' debt collection efforts, including communications demanding payment, fall within the learned-profession exemption and cannot support a UDTPA claim). Exhibit D to the Complaint reflects standard pre-litigation advocacy by Asterra's counsel, including analysis of potential claims and demands for resolution, which is protected conduct under the learned-profession exemption. Allowing a UDTPA claim based on an attorney's communications, particularly settlement negotiations, would chill legitimate legal representation in commercial disputes and discourage pre-litigation dispute resolution. *See Reid*, 138 N.C. App. at 267, 531 S.E.2d at 235.

### E. Any economic loss experienced by MC was not proximately caused by Rise or Asterra, but is instead the result of MC's own breach of the Agreement.

Finally, no cause of action under N.C. Gen. Stat. § 75-1.1 exists against Rise or Asterra where any purported injury to Plaintiffs is the proximate result of Plaintiffs' own violations of their contractual obligations to Asterra. The UDTPA requires that the defendant's unfair or deceptive act be the proximate cause of the plaintiff's injury. *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 226 (emphasizing that the unfair act or deceptive practice must proximately cause the actual injury to the plaintiff). In this case, the Complaint reveals that Plaintiffs' injuries arose from their own payment defaults purportedly triggered by "market turbulence" and "acute, temporary disruption of MC's financing systems and cash flow," (Compl. ¶¶ 55-57), which breached the Agreement and necessitated Rise's involvement in post-default collections efforts to protect its investment. (Compl. ¶¶ 58-63.) Any resulting harm, such as the loss of inventory or business relationships, is self-inflicted, not proximately caused by Rise. *See Bumpers*, 367 N.C. at 89, 747 S.E.2d at 227. As set out above, Count Nine should be dismissed as to Rise.

## CONCLUSION

For the foregoing reasons, Rise respectfully requests that the Court grant its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismiss all claims against it with prejudice.

Respectfully submitted, this the 25th day of July, 2025.

<div align="right">

**PARKER BRYAN BRITT**
**TANNER & JENKINS, P.L.L.C.**

ATTORNEYS FOR PLAINTIFF

/s/ Alicia Jurney
Alicia Jurney
N.C. State Bar # 37133
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: alicia@parkerbryanlaw.com

/s/ Amy L. Britt
Amy L. Britt
N.C. State Bar # 33835
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: amy@parkerbryanlaw.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2025 a copy of the foregoing Rise Capital LLC's Memorandum in Support of Motion to Dismiss was served upon all other parties in this cause via CM/ECF as follows:

Brandon S. Neuman
Nelson Mullins Riley & Scarborough, L.L.P.
brandon.neuman@nelsonmullins.com
*Attorney for Defendant Ryan McConnell*

Nathaniel J. Pencook
Nelson Mullins Riley & Scarborough, L.L.P.
nate.pencook@nelsonmullins.com
*Attorney for Defendant Ryan McConnell*

K. Alan Parry
Parry Law, P.L.L.C.
kap@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants MCB and MCN*

Amos Tyndall
Parry Law, P.L.L.C.
agt@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants MCB and MCN*

Jonah Garson
Parry Law, P.L.L.C.
jag@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants MCB and MCN*

<div style="margin-left:40%">

**PARKER BRYAN BRITT
TANNER & JENKINS, P.L.L.C.**

ATTORNEYS FOR ASTERRA LABS LLC
AND RISE CAPITAL LLC

 /s/ Alicia Jurney
Alicia Jurney
N.C. State Bar # 37133
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: alicia@parkerbryanlaw.com

</div>

22