IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:25-CV-400-BO-SW

| | |
|---|---|
| MC BOTANICALS LLC and<br>MC NUTRACEUTICALS LLC, a Texas<br>limited liability company,<br>        Plaintiffs,<br><br>    v.<br><br>ASTERRA LABS LLC,<br>RISE CAPITAL LLC, and<br>RYAN MCCONNELL,<br>        Defendants. | |
| ASTERRA LABS LLC,<br>        Counter-Plaintiff,<br><br>    v.<br><br>BRET C. WORLEY,<br>JEFFREY A. WORLEY,<br>MC BOTANICALS LLC,<br>MC NUTRACEUTICALS LLC, a<br>Colorado limited liability company,<br>MC NUTRACEUTICALS LLC, a Texas<br>limited liability company, and<br>MC GLOBAL HOLDINGS LLC,<br>        Counter-Defendants. | **ASTERRA LABS LLC'S AMENDED[1]**<br>**ANSWER and COUNTERCLAIMS**<br><br>**(Jury Trial Demanded)** |

---

[1] This amended counterclaim is filed pursuant to Fed. R. Civ. P. 15(a)(1)(B) in response to the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 20), filed by Counter-Defendants on August 15, 2025.

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................4

ANSWER .....................................................................................................................................5

COUNTERCLAIMS....................................................................................................................25

    PARTIES .................................................................................................................................26

    JURISDICTION AND VENUE ............................................................................................28

    FACTUAL BACKGROUND.................................................................................................30

        Asterra's Operations and Initial Engagement with Counter-Defendants .............................30

        The Manufacturing and Supply Agreement........................................................................34

        Escalating Breaches and Fraudulent Assurances ........................................................35

        Harm to Asterra by Counter-Defendants' Unlawful Acts........................................61

    FIRST COUNTERCLAIM .....................................................................................................66

    (Breach of Contract—Against Counter-Defendants MCB, MCN, and MCGH)

    SECOND COUNTERCLAIM.................................................................................................69

    (Unfair & Deceptive Trade Practices—Against Counter-Defendants MCB, MCN, and MCGH)

    THIRD COUNTERCLAIM .....................................................................................................73

    (Fraud—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

    FOURTH COUNTERCLAIM..................................................................................................76

    (Abuse of Process—Against Counter-Defendants Bret Worley, MCB, and MCN)

    FIFTH COUNTERCLAIM ......................................................................................................79

    (Veil Piercing, Alter Ego, and Mere Instrumentality—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

    SIXTH COUNTERCLAIM ......................................................................................................82

    (Civil RICO Pursuant to 18 U.S.C. § 1961 *et seq.*—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

Counter-Defendants' RICO Enterprise ........................................................................83

Counter-Defendants' Pattern of Racketeering Activity ...........................................85

Predicate Acts of Counter-Defendants ....................................................................86

Injury to Asterra Proximately Caused by Counter-Defendants RICO Enterprise ...............92

SEVENTH COUNTERCLAIM .......................................................................................92

(Conspiracy to Violate RICO in Violation of 18 U.S.C. § 1962(d)—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

EIGHTH COUNTERCLAIM..............................................................................................95

(Civil RICO Pursuant to N.C. Gen. Stat. § 75D-1 *et seq.*—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

NINTH COUNTERCLAIM..................................................................................................98

(Civil Conspiracy—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

PUNITIVE DAMAGES....................................................................................................100

PRAYER FOR RELIEF....................................................................................................100

CERTIFICATE OF SERVICE........................................................................................103

3

**INTRODUCTION**

This case arises from a scheme involving deceit and exploitation in the cannabinoid industry, a sector often likened to the "Wild West" due to its regulatory ambiguities and opportunistic actors. Counter-Defendants Bret C. Worley ("Counter-Defendant Bret Worley") and Jeffrey A. Worley ("Counter-Defendant Jeff Worley"), through their web of interconnected entities, induced Defendant and Counter-Plaintiff Asterra Labs LLC ("Asterra" or "Counter-Plaintiff") to extend substantial credit and supply valuable products based on blatant misrepresentations of financial solvency and good standing in the industry, only to abscond with over $1,000,000.00 in unpaid goods as part of a pattern of fraud against vendors, employees, and regulators.

The actions of Counter-Defendants and the entities that they control transcend mere breach of contract. Their coordinated conduct constitutes a fraudulent enterprise designed to take advantage of trusting business partners, evade accountability through corporate shells, and inflict harm on legitimate market participants. Asterra, a North Carolina-based manufacturer committed to ethical operations, fell victim to this scheme, suffering nearly catastrophic financial losses, reputational damage, and crippling operational disruptions.

Counter-Defendants' misconduct violates North Carolina's prohibitions against unfair and deceptive trade practices, fraud, and racketeering, warranting not only compensatory damages but also treble and punitive damages to deter such predatory behavior. The commingling of Counter-Defendants' operations necessitates piercing the corporate veils of the limited liability company defendants, which Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley have abused for personal gain and used as asset shields to evade obligations to their many creditors. Asterra seeks compensatory damages as redress for injuries caused by Counter-Defendants and

4

punitive and treble damages to hold Counter-Defendants accountable and vindicate the principles of commercial integrity in this state.

## ANSWER

NOW COMES Asterra Labs LLC, by and through its undersigned counsel of record, and answering the allegations of the complaint, (ECF No. 1), alleges and says as follows:

### Parties

1.     To the extent that the allegations in the unnumbered introductory paragraphs contained on pages 1 through 3 of the complaint are inconsistent with the answers and allegations set forth herein below, those allegations are denied. The allegations of paragraph 1 are admitted in part and denied in part. It is admitted that MC Botanicals LLC ("Counter-Defendant MCB") is a foreign limited liability company organized under the laws of Texas on October 7, 2024, with its registered principal place of business in Lantana, Denton County, Texas. It is further admitted that Counter-Defendant MCB obtained a certificate of authority to transact business in North Carolina on February 2, 2025 and that Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley are officers of Counter-Defendant MCB. It is denied that Counter-Defendant MCB's actual principal place of business is in Lantana, Texas.[2] Upon information and belief, Counter-Defendant MCB's actual principal place of business is in Golden, Colorado in violation of paragraph 39 of the Assurance of Discontinuance ("Assurance") Counter-Defendants entered into with the Colorado Attorney General's Office on or about May 14, 2025. Except as specifically admitted, the allegations of paragraph 1 are denied.

---

[2] Upon information and belief, the address in Lantana, Texas that is listed as the principal place of business of Counter-Defendant MCB, Counter-Defendant MCN TX, and Counter-Defendant MCGH is the residence of Counter-Defendant Jeff Worley. Upon information and belief, Counter-Defendants do not distribute products from this address.

2.      The allegations of paragraph 2 are admitted in part and denied in part.  By way of further answer, there are two entities known as MC Nutraceuticals LLC.  One entity known as MC Nutraceuticals LLC ("MCN TX") is a foreign limited liability company organized under the laws of the Texas on October 5, 2020, with its principal place of business in Lantana, Denton County, Texas.  Another entity known as MC Nutraceuticals LLC ("MCN CO") is a foreign limited liability company organized under the laws of Colorado on November 4, 2021, with its principal place of business in Golden, Jefferson County, Colorado.  It is unclear whether MCN TX or MCN CO is the MC Nutraceuticals LLC that is the plaintiff in this case.  Except as specifically admitted, the allegations of paragraph 2 are denied.

3.      The allegations of paragraph 3 are admitted.

4.      Upon information and belief, the allegations of paragraph 4 are admitted.

5.      Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 5 regarding the citizenship and residency of Mr. McConnell.  Upon information and belief, Mr. McConnell is, and at the time of filing of the complaint in this action was, a resident of Colorado.  To the extent that a response from Asterra is required, the allegations of paragraph 5 are denied.

Jurisdiction and Venue

6.      Paragraph 6 consists of legal conclusions to which no response from Asterra is required.  To the extent that a response from Asterra is required, it is admitted that the amount in controversy in this action exceeds $75,000.00.  It is denied that this case involves claims between citizens of different states, because upon information and belief, Mr. McConnell is a citizen and resident of the same state as Counter-Defendant Bret Worley, who is a member of

6

Plaintiff/Counter-Defendant MCB and Plaintiff/Counter-Defendant MCN. Except as specifically admitted, the allegations of paragraph 6 are denied.

7.      Paragraph 7 consists of legal conclusions to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 7 are admitted.

8.      Paragraph 8 consists of legal conclusions to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 8 are denied.

<u>Summary of Relevant Facts</u>

9.      The allegations of paragraph 9 are admitted in part and denied in part. It is admitted that Counter-Defendant Jeff Worley is the father of Counter-Defendant Bret Worley. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding the roles Counter-Defendant Jeff Worley and Counter-Defendant Bret Worley had in the founding of MCN TX and MCN CO, which are collectively referred to as "<u>Counter-Defendant MCN</u>." Except as specifically admitted, the allegations of paragraph 9 are denied.

10.     The allegations of paragraph 10 are admitted in part and denied in part. It is admitted that Counter-Defendant MCN does not manufacture any of its own products and operates an arbitrage business that resells cannabinoid products purchased from suppliers to Counter-Defendant MCN's customers at a markup. It is admitted that *Forbes* and *The Financial Times* have published articles referencing Counter-Defendant MCN, which speak for themselves. Except as specifically admitted, the allegations of paragraph 10 are denied.

11.     The allegations of paragraph 11 are admitted in part and denied in part. It is admitted that Counter-Defendant Bret Worley has been referenced in media publications by various outlets and that these publications speak for themselves. Except as specifically admitted, the allegations of paragraph 11 are denied.

7

12.     Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding Counter-Defendant MCN's annual revenue in 2022, 2023, and 2024.  To the extent that a response from Asterra is required, the allegations of paragraph 12 are denied.

13.     The allegations of paragraph 13 are denied.  Upon information and belief, by early 2025, many suppliers in the hemp industry had refused to do business with Counter-Defendant MCN because of Counter-Defendants' deceptive business practices, and as a result, Counter-Defendant MCN needed to find new suppliers to support its arbitrage business model.

14.     The allegations of paragraph 14 are admitted in part and denied in part.  Upon information and belief, Counter-Defendant MCN recognized that Asterra was an up-and-coming company in the hemp industry and sought to take advantage of Asterra to obtain products that Counter-Defendant MCN did not have the capital to purchase without relying on Asterra's credit.  Except as specifically admitted, the allegations of paragraph 14 are denied.

15.     The allegations of paragraph 15 are admitted in part and denied in part.  It is admitted that Asterra was founded in 2019.  It is further admitted that Asterra manufactures and distributes premium wholesale and white-label CBD and hemp products.  Except as specifically admitted, the allegations of paragraph 15 are denied.

16.     The allegations of paragraph 16 are admitted in part and denied in part.  It is admitted that Rise Capital LLC owns an equity interest in Asterra.  Except as specifically admitted, the allegations of paragraph 16 are denied.

17.     The allegations of paragraph 17 are denied.

18.     The allegations of paragraph 18 are denied.

19.     The allegations of paragraph 19 are denied.

20.     The allegations of paragraph 20 are denied.

8

21.     The allegations of paragraph 21 are admitted in part and denied in part. It is admitted that Asterra truthfully held itself out as North Carolina's first manufacturer of pharmaceutical-grade hemp products, utilizing top-of-the line equipment and facilities manned by industry experts. Except as specifically admitted, the allegations of paragraph 21 are denied.

22.     The allegations of paragraph 22 are admitted in part and denied in part. It is admitted that, in December 2024, Counter-Defendant Bret Worley approached Asterra about forming a commercial relationship. Except as specifically admitted, the allegations of paragraph 22 are denied.

23.     The allegations of paragraph 23 are admitted in part and denied in part. It is admitted that Asterra believed that the commercial relationship proposed by Counter-Defendant Bret Worley was an opportunity to develop an additional stream of revenue outside its already-successful business plan. Except as specifically admitted, the allegations of paragraph 23 are denied.

24.     The allegations of paragraph 24 are admitted in part and denied in part. It is admitted that Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley formed Counter-Defendant MCB as an undercapitalized shell entity to exploit the line of credit provided by Asterra without any intention of repaying Asterra. Except as specifically admitted, the allegations of paragraph 24 are denied.

25.     The allegations of paragraph 25 are admitted and denied in part. It is admitted that Asterra and Counter-Defendant MCB entered into a Manufacturing and Supply Agreement on May 2, 2025 ("Agreement") and that the Agreement is attached to the complaint as Exhibit A. Except as specifically admitted, the allegations of paragraph 25 are denied.

26.     The allegations of paragraph 26 are admitted and denied in part. It is admitted that Asterra and Counter-Defendant MCB entered into the Agreement and that the Agreement speaks for

itself. Except as specifically admitted, the allegations of paragraph 26, including subparagraphs (a) through (s), are denied.

27. The allegations of paragraph 27 are admitted in part and denied in part. Upon information and belief, Counter-Defendant MCB sought to take advantage of Asterra to obtain products that Counter-Defendant MCN and Counter-Defendant MCB did not have the capital to purchase without relying on Asterra's credit. Except as specifically admitted, the allegations of paragraph 27 are denied.

28. The allegations of paragraph 28 are admitted in part and denied in part. It is admitted that Asterra agreed to perform as set out in the Agreement and that the Agreement speaks for itself. Except as specifically admitted, the allegations of paragraph 28 are denied.

29. The allegations of paragraph 29 are denied.

30. The allegations of paragraph 30 are admitted in part and denied in part. It is admitted that Asterra and Counter-Defendant MCN entered into a series of purchase order contracts beginning in February 2025 and that the Agreement between Asterra and Counter-Defendant MCB was executed on May 2, 2025. Except as specifically admitted, the allegations of paragraph 30 are denied.

31. The allegations of paragraph 31 are denied.

32. The allegations of paragraph 32, including subparagraphs (a) through (f), are denied.

33. The allegations of paragraph 33 are denied.

34. The allegations of paragraph 34 are denied.

35. The allegations of paragraph 35 are admitted in part and denied in part. It is admitted that Defendant Ryan McConnell ("Mr. McConnell"), with the consent of Counter-Defendant MCN,

began working with Asterra in February 2025. Except as specifically admitted, the allegations of paragraph 35 are denied.

36.     The allegations of paragraph 36 are denied.

37.     The allegations of paragraph 37 are denied.

38.     The allegations of paragraph 38 are admitted in part and denied in part. It is admitted that, on June 5, 2025, Counter-Defendant Jeff Worley, on behalf of Counter-Defendant MCN, expressly agreed by email for Mr. McConnell to begin working for Asterra. Except as specifically admitted, the allegations of paragraph 38 are denied.

39.     The allegations of paragraph 39 are admitted in part and denied in part. It is admitted that Counter-Defendant MCN's (now former) employee, Nick Pavlicek ("Mr. Pavlicek"), visited Asterra and conducted an erroneous accounting of the inventory held by Asterra pursuant to the Agreement. Except as specifically admitted, the allegations of paragraph 39 are denied.

40.     The allegations of paragraph 40 are denied.

41.     The allegations of paragraph 41 are denied.

42.     The allegations of paragraph 42 are denied.

43.     The allegations of paragraph 43 are denied.

44.     The allegations of paragraph 44 are denied. It is expressly denied that information was provided to Asterra through Counter-Defendant MCB and/or Counter-Defendant MCN's Microsoft Business Central Enterprise Resource Planning ("ERP") system.

45.     The allegations of paragraph 45 are denied.

46.     The allegations of paragraph 46 are denied.

47.     The allegations of paragraph 47 are denied.

48.     The allegations of paragraph 48 are denied.

49. The allegations of paragraph 49 are admitted in part and denied in part. It is admitted that Asterra was on an upward trajectory when it began doing business with Counter-Defendant MCN in February 2025 due to Asterra's successful execution of its business plan, which focused on its white-label manufacturing and in-house product line revenue streams, and that for that reason, February 2025 was Asterra's best month ever at the time. Except as specifically admitted, the allegations of paragraph 49 are denied.

50. The allegations of paragraph 50 are denied.

51. The allegations of paragraph 51 are admitted in part and denied in part. It is admitted that Counter-Defendant MCB took advantage of Asterra to obtain products that Counter-Defendant MCN and Counter-Defendant MCB did not have the capital to purchase without relying on Asterra's credit, because Counter-Defendants were, unknown to Asterra at the time, heavily in debt to other vendors and had negative cash flow. Except as specifically admitted, the allegations of paragraph 51 are denied.

52. The allegations of paragraph 52 are admitted in part and denied in part. It is admitted that Counter-Defendant MCN and Counter-Defendant MCB proposed a merger with Asterra, because Counter-Defendants were far behind on payments owed to Asterra for products Asterra had supplied pursuant to Counter-Defendants' purchase orders. It is further admitted that, after one brief discussion regarding Counter-Defendants' merger proposal, Asterra declined the offer to merge with Counter-Defendants. Except as specifically admitted, the allegations of paragraph 52 are denied.

53. The allegations of paragraph 53 are denied.

54. The allegations of paragraph 54 are denied.

55. The allegations of paragraph 55 are denied.

12

56.     Upon information and belief, the allegations of paragraph 56 are denied.

57.     The allegations of paragraph 57 are denied.  By way of further answer, upon information and belief, Counter-Defendants' cash flow had, unknown to Asterra at the time, been negative since at least the third quarter of 2024 and was the result of Counter-Defendants' deceptive business practices, which are described in greater detail below.

58.     The allegations of paragraph 58 are denied.  By way of further answer, by late May 2025, Counter-Defendant MCN and Counter-Defendant MCB owed Asterra hundreds of thousands of dollars and were making no effort to pay down the substantial past-due balance that had accumulated.

59.     The allegations of paragraph 59 are denied.  By way of further answer, by Memorial Day Weekend 2025, Counter-Defendant MCN and Counter-Defendant MCB owed Asterra hundreds of thousands of dollars and were making no effort to pay down the substantial past-due balance that had accumulated.

60.     The allegations of paragraph 60 are denied.

61.     The allegations of paragraph 61 are denied.

62.     The allegations of paragraph 62 are denied.  By way of further answer, on June 5, 2025, Asterra notified Counter-Defendants that it was suspending shipment of products, which it had the right to do pursuant to paragraph 9 of the Agreement, and it set out certain requirements for Counter-Defendants to cure their defaults under the Agreement and establish that they were financially stable and creditworthy.

63.     The allegations of paragraph 63 are denied.

64.     The allegations of paragraph 64 are denied.

65.     The allegations of paragraph 65 are denied.

66.     The allegations of paragraph 66 are admitted in part and denied in part. It is admitted that, on June 5, 2025, Asterra notified Counter-Defendants that it was suspending shipment of products, which it had the right to do pursuant to paragraph 9 of the Agreement, and that one of the requirements for Counter-Defendants to cure their defaults under the Agreement and establish that they were financially stable and creditworthy was paying $50,000.00 a day towards their outstanding balances until their balances had been paid in full. Except as specifically admitted, the allegations of paragraph 66 are denied.

67.     The allegations of paragraph 67 are denied. By way of further answer, Asterra refused to reduce Counter-Defendant MCB's outstanding balance based on the fraudulent contention of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley that inventory was purportedly missing.

68.     The allegations of paragraph 68 are denied.

69.     The allegations of paragraph 69 are admitted in part and denied in part. It is admitted that, upon information and belief, Mr. McConnell, who Counter-Defendant Jeff Worley, on behalf of Counter-Defendant MCN, had expressly agreed Asterra could hire, gave notice of resignation to Counter-Defendant MCN after Counter-Defendants pressured Mr. McConnell to fabricate inventory and invoice disputes so that they could attempt to fraudulently reduce the outstanding balance Counter-Defendants owed Asterra. Except as specifically admitted, the allegations of paragraph 69 are denied.

70.     The allegations of paragraph 70 are denied.

71.     Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 71. To the extent that a response from Asterra is required, the allegations of paragraph 71 are denied.

72. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 72. To the extent that a response from Asterra is required, the allegations of paragraph 72 are denied.

73. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 73. To the extent that a response from Asterra is required, the allegations of paragraph 73 are denied.

74. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 74. To the extent that a response from Asterra is required, the allegations of paragraph 74 are denied.

75. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 75. To the extent that a response from Asterra is required, the allegations of paragraph 75 are denied.

76. The allegations of paragraph 76 are denied.

77. The allegations of paragraph 77, including subparagraphs (a) through (d), are denied.

78. The allegations of paragraph 78 are denied.

79. The allegations of paragraph 79 are denied.

80. The allegations of paragraph 80 are denied.

81. The allegations of paragraph 81 are admitted in part and denied in part. It is admitted that Asterra has attempted to mitigate the damages caused by Counter-Defendant MCB's numerous material breaches of the Agreement by selling raw ingredients purchased and held in inventory by Asterra. Except as specifically admitted, the allegations of paragraph 81 are denied.

82. The allegations of paragraph 82 are admitted in part and denied in part. It is admitted that, in an effort to mitigate the damages Asterra has suffered as a result of Counter-Defendant MCB's

15

numerous material breaches of the Agreement, Asterra's president posted on LinkedIn that Asterra had raw ingredients it had purchased available for sale. Except as specifically admitted, the allegations of paragraph 82 are denied.

83. The allegations of paragraph 83 are admitted in part and denied in part. It is admitted that Counter-Defendant MCB has absurdly demanded that Asterra ship items held in its inventory to Counter-Defendant MCB's facility in Colorado—where Counter-Defendant MCB is prohibited from conducting business pursuant to paragraph 39 of the Assurance—without paying Asterra for these items. Except as specifically admitted, the allegations of paragraph 83 are denied.

84. The allegations of paragraph 84 are admitted in part and denied in part. It is admitted that Asterra notified Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley that Asterra intended to pursue criminal prosecution of Counter-Defendants, because Counter-Defendants had, in fact, committed crimes against Asterra, including, but not limited to, obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100 and wire fraud in violation of 18 U.S.C. § 1343. Except as specifically admitted, the allegations of paragraph 84 are denied.

85. Asterra lacks sufficient personal knowledge or information to admit or deny allegations regarding messages purportedly sent by an individual who is not an employee of Asterra, to which no employee of Asterra was a party. Except as specifically admitted, the allegations of paragraph 85 are denied.

86. The allegations of paragraph 86 are admitted in part and denied in part. It is admitted that, in an email dated July 1, 2025, Asterra's counsel notified Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley that Asterra intended to seek restitution through criminal charges against Counter-Defendants for the more than $1,000,000.00 Counter-Defendants had

16

fraudulently obtained from Asterra. Except as specifically admitted, the allegations of paragraph 86 are denied.

87. The allegations of paragraph 87 are admitted in part and denied in part. It is admitted that Asterra, through counsel, sent notices to preserve potential evidence to individuals whom Asterra reasonably believes possess evidence relevant to Asterra's claims against Counter-Defendants. Except as specifically admitted, the allegations of paragraph 87 are denied.

88. The allegations of paragraph 88 are denied.

89. The allegations of paragraph 89 are denied. By way of further answer, Counter-Defendants have refused to pay Asterra for the goods they fraudulently obtained from Asterra, just as Counter-Defendants have refused to pay many other vendors for goods obtained from those companies—as evidenced by the numerous lawsuits pending against Counter-Defendants in other jurisdictions. Except as specifically admitted, the allegations of paragraph 89 are denied.

<u>Count One—Breach of Contract</u>

90. Paragraphs 1 through 89 above are hereby realleged and incorporated by reference as if fully set forth herein. Except as specifically admitted, the allegations of paragraph 90 are denied.

91. The allegations of paragraph 91 are admitted.

92. The allegations of paragraph 92 are denied.

93. The allegations of paragraph 93, including subparagraphs (a) through (k), are denied.

94. The allegations of paragraph 94 are denied.

<u>Count Two—Breach of Contract</u>

95. Paragraphs 1 through 94 above are hereby realleged and incorporated by reference as if fully set forth herein. Except as specifically admitted, the allegations of paragraph 95 are denied.

17

96. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 96. To the extent that a response from Asterra is required, the allegations of paragraph 96 are denied.

97. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 97. To the extent that a response from Asterra is required, the allegations of paragraph 97 are denied.

98. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 98. To the extent that a response from Asterra is required, the allegations of paragraph 98, including subparagraphs (a) through (d), are denied.

99. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 99. To the extent that a response from Asterra is required, the allegations of paragraph 99 are denied.

<u>Count Three—Breach of Implied Duty of Good Faith and Fair Dealing</u>

100. Paragraphs 1 through 99 above are hereby realleged and incorporated by reference as if fully set forth herein. Except as specifically admitted, the allegations of paragraph 100 are denied.

101. The allegations of paragraph 101 are admitted in part and denied in part. It is admitted that Asterra and Counter-Defendant MCB and Counter-Defendant MCN had implied duties of good faith and fair dealing in connection with the performance of the purchase order contracts and the Agreement. Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding any purported agreement between Counter-Defendants and Mr. McConnell. Except as specifically admitted, the allegations of paragraph 101 are denied.

102. The allegations of paragraph 102 are denied.

103. The allegations of paragraph 103 are denied.

<u>Count Four—Unjust Enrichment</u>

104.     Paragraphs 1 through 103 above are hereby realleged and incorporated by reference as if fully set forth herein.  Except as specifically admitted, the allegations of paragraph 104 are denied.

105.     The allegations of paragraph 105 are denied.

106.     Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding any purported agreement between Counter-Defendants and Mr. McConnell.  To the extent that a response from Asterra is required, the allegations of paragraph 106 are denied.

107.     The allegations of paragraph 107 are denied.

108.     The allegations of paragraph 108 are denied.

<u>Count Five—Tortious Interference with Contract and/or Prospective Advantage</u>

109.     Paragraphs 1 through 108 above are hereby realleged and incorporated by reference as if fully set forth herein.  Except as specifically admitted, the allegations of paragraph 109 are denied.

110.     The allegations of paragraph 110 are admitted.

111.     The allegations of paragraph 111 are admitted in part and denied in part.  It is admitted that Defendant Rise Capital LLC is not a party to the Agreement.  Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding Rise Capital LLC's awareness of the terms of an agreement to which it is not a party.  Except as specifically admitted, the allegations of paragraph 111 are denied.

112.     The allegations of paragraph 112 are denied.

113.     The allegations of paragraph 113 are denied.

114.     The allegations of paragraph 114 are denied.

115.     The allegations of paragraph 115 are denied.

19

## Count Six—Tortious Interference with Contract and/or Prospective Advantage

116.     Paragraphs 1 through 115 above are hereby realleged and incorporated by reference as if fully set forth herein.  Except as specifically admitted, the allegations of paragraph 116 are denied.

117.     Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 117.  To the extent that a response from Asterra is required, the allegations of paragraph 117 are denied.

118.     The allegations of paragraph 118 are admitted in part and denied in part.  It is admitted that Asterra is not a party to any purported agreement between Mr. McConnell and Counter-Defendants.  Asterra lacks sufficient personal knowledge or information to admit or deny the allegations regarding Rise Capital LLC's awareness of the terms of any agreement to which it is not a party.  Except as specifically admitted, the allegations of paragraph 118 are denied.

119     The allegations of paragraph 119 are denied.

120.     The allegations of paragraph 120 are denied.

121.     The allegations of paragraph 121 are denied.

122.     The allegations of paragraph 122 are denied.

## Count Seven—State Misappropriation of Trade Secrets

123.     Paragraphs 1 through 122 above are hereby realleged and incorporated by reference as if fully set forth herein.  Except as specifically admitted, the allegations of paragraph 123 are denied.

124.     Paragraph 124 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 124, including subparagraphs (a) through (d), are denied.

125.     Paragraph 125 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 125 are denied.

126.     The allegations of paragraph 126 are denied.

127.     Paragraph 127 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 127 are denied.

128.     Asterra lacks sufficient personal knowledge or information to admit or deny the allegations of paragraph 128. To the extent that a response from Asterra is required, the allegations of paragraph 128, including subparagraphs (a) through (e), are denied.

129.     The allegations of paragraph 129 are denied.

130.     The allegations of paragraph 130 are denied.

131.     The allegations of paragraph 131 are denied.

132.     The allegations of paragraph 132 are denied.

133.     The allegations of paragraph 133 are denied.

134.     The allegations of paragraph 134 are denied.

135.     The allegations of paragraph 135 are denied.

<u>Count Eight—Federal Misappropriation of Trade Secrets</u>

136.     Paragraphs 1 through 135 above are hereby realleged and incorporated by reference as if fully set forth herein. Except as specifically admitted, the allegations of paragraph 136 are denied.

137.     Paragraph 137 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 137 are denied.

138.     Paragraph 138 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 138 are denied.

139.     Paragraph 139 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 139 are denied.

140.     The allegations of paragraph 140 are denied.

141.     The allegations of paragraph 141 are denied.

<u>Count Ten[3] (*sic*)—Unfair and Deceptive Trade Practices</u>

142.     Paragraphs 1 through 141 above are hereby realleged and incorporated by reference as if fully set forth herein.  Except as specifically admitted, the allegations of paragraph 142 are denied.

143.     Paragraph 143 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 143 are denied.

144.     Paragraph 144 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 144 are denied.

145.     Paragraph 145 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 145 are denied.

146.     The allegations of paragraph 146 are denied.

147.     The allegations of paragraph 147 are denied.

148.     The allegations of paragraph 148 are denied.

149.     Paragraph 149 consists of a legal conclusion to which no response from Asterra is required. To the extent that a response from Asterra is required, the allegations of paragraph 145 are denied.

## **AFFIRMATIVE DEFENSES**

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure and applicable North Carolina law, Asterra hereby asserts the following affirmative defenses to the plaintiffs' claims. These affirmative defenses are pleaded in the alternative and without waiver of any other defenses or objections that Asterra may raise.

---

[3] Plaintiffs misnumbered the claims in the complaint.  The claim denominated as "Count Ten" should be "Count Nine."

## First Affirmative Defense
### (Prior Material Breach)

150.    Counter-Defendant MCB and Counter-Defendant MCN's claims for breach of contract and related counts against Asterra are barred by Counter-Defendants' own prior material breaches of the Agreement, including failure to pay invoices timely, misrepresentations of financial solvency to induce credit extensions, and inability to demonstrate creditworthiness, which excused Asterra's performance and justified termination of the Agreement under N.C. Gen. Stat. §§ 25-2-609 and 25-2-703.

## Second Affirmative Defense
### (Unclean Hands/Estoppel)

151.    Counter-Defendant MCB and Counter-Defendant MCN are estopped from pursuing equitable relief due to their unclean hands, including fraudulent misrepresentations, willful non-payment of over $1,000,000.00 owed to Asterra, and violation of the Assurance prohibiting Counter-Defendant MCB from conducting business in Colorado, all of which directly relate to the transactions at issue.

## Third Affirmative Defense
### (Waiver)

152.    Counter-Defendant MCB and Counter-Defendant MCN waived any right to enforce the Agreement or claim damages for purported breaches by repeatedly accepting Asterra's performance despite any alleged delays or issues, failing to provide notice of alleged defaults as required under the Agreement, and continuing to submit purchase orders after purported breaches.

23

### Fourth Affirmative Defense
### (Failure of Consideration)

153.    Counter-Defendant MCB and Counter-Defendant MCN's contract claims fail for lack or failure of consideration, as Counter-Defendants did not provide the promised value, including timely payments and creditworthy performance, rendering the Agreement unenforceable against Asterra.

### Fifth Affirmative Defense
### (Set Off/Recoupment)

154.    Asterra is entitled to set off or recoup against any recovery by Counter-Defendant MCB and Counter-Defendant MCN the amounts owed by Counter-Defendant MCB and Counter-Defendant MCN for unpaid invoices exceeding $1,600,000.00 (principal plus interest), operational costs incurred due to Counter-Defendants' material breaches of contract, and damages from Counter-Defendants' fraud and related misconduct, as described in greater detail below.

### Sixth Affirmative Defense
### (Laches)

155.    Counter-Defendant MCB and Counter-Defendant MCN's claims, particularly for injunctive relief and trade secret misappropriation, are barred by laches, as Counter-Defendants unreasonably delayed asserting any rights they may have had, despite knowledge of the alleged facts, causing prejudice to Asterra through continued reliance and business operations.

### Seventh Affirmative Defense
### (Election of Remedies)

156.    Asterra asserts the affirmative defense of election of remedies.  Counter-Defendant MCB and Counter-Defendant MCN's claims all seek redress for the same wrongful conduct alleged to have been committed by Asterra.  Counter-Defendant MCB and Counter-Defendant MCN are

not entitled to recover multiple times for the same injury and should be required to elect their remedy.

## Eighth Affirmative Defense
### (Estoppel)

157.    Asterra asserts the affirmative defense of estoppel.  To the extent that Counter-Defendant MCB and Counter-Defendant MCN's allegations in this action are inconsistent with allegations made in any other proceeding involving the same transactions or occurrences, Counter-Defendant MCB and Counter-Defendant MCN should be estopped from taking an inconsistent position in this action.

## Ninth Affirmative Defense
### (Illegality)

158.    Asterra asserts the affirmative defense of illegality.  To the extent that Counter-Defendant MCB and Counter-Defendant MCN engaged in illegal conduct, including violations of federal and state electronic laws as set out below, Counter-Defendant MCB and Counter-Defendant MCN should be barred from recovering from Asterra.

## COUNTERCLAIMS

NOW COMES Counter-Plaintiff Asterra Labs LLC, by and through its undersigned counsel, and counterclaiming against Counter-Defendants, pursuant to Rule 13(a)-(b) and (h)[4] of the Federal Rules of Civil Procedure, alleges and says as follows:

---

[4] Asterra asserts counterclaims against Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, and the Counter-Defendant MCN that was not the plaintiff in the original action pursuant to Fed. R. Civ. P. 13(h), because their presence is required for granting of complete relief against all concerned parties in this action.  Joining these Counter-Defendants is consistent with Fed. R. Civ. P. 19(a)(1)(A), or alternatively Fed. R. Civ. P. 20(b), because the counterclaims asserted against them arise out of the same transactions and occurrences as the claims set out in the complaint and Asterra's compulsory counterclaims against the plaintiffs, and the counterclaims against the additional Counter-Defendants involve common questions of law and fact with Asterra's counterclaims against the plaintiffs.

159. Paragraphs 1 through 158 above are hereby realleged and incorporated by reference as if fully set forth herein.

**PARTIES**

160. Asterra is a domestic limited liability company, organized and existing under the laws of North Carolina, with its principal place of business in Nashville, Nash County, North Carolina. Asterra is engaged in the manufacture and distribution of premium cannabidiol ("CBD") and American-grown hemp products, including gummies, vapes, tablets, flower, and distillate. Operating with a commitment to quality and compliance, Asterra maintains state-of-the-art facilities in North Carolina and serves a national clientele through ethical business practices.

161. Upon information and belief, Counter-Defendant Bret Worley is an individual citizen and resident of Colorado. Counter-Defendant Bret Worley holds dominant positions across the counter-defendant entities, serving as the president of Counter-Defendant MC Nutraceuticals LLC (Texas), the chief executive officer of Counter-Defendant MC Global Holdings LLC, and a manager of Counter-Defendant MC Botanicals LLC. Counter-Defendant Bret Worley personally orchestrated and participated in the fraudulent representations, deceptive practices, and racketeering activities alleged herein, leveraging his purported industry influence—often exaggerated through false claims of political clout—to perpetrate the scheme that resulted in damage to Asterra.

162. Upon information and belief, Counter-Defendant Jeff Worley is an individual citizen and resident of Texas. Counter-Defendant Jeff Worley is the father of Counter-Defendant Bret Worley and similarly exercises control over the counter-defendant entities, serving as the chief financial officer of Counter-Defendant MC Nutraceuticals LLC (Texas) and Counter-Defendant MC Global Holdings LLC, a manager of Counter-Defendant MC Nutraceuticals LLC (Colorado),

and a manager of Counter-Defendant MC Botanicals LLC.  Counter-Defendant Jeff Worley deliberately misrepresented the financial health and stability of the counter-defendant entities, made false payment assurances, and manipulated inter-entity transactions to conceal assets and evade creditors.

163.    Counter-Defendant MC Nutraceuticals LLC ("Counter-Defendant MCN TX") is a foreign limited liability company organized under the laws of the Texas on October 5, 2020, with its supposed principal place of business in Lantana, Denton County, Texas.  Counter-Defendant MCN TX operates as a subsidiary of Counter-Defendant MC Global Holdings LLC and functions as a wholesale distributor of hemp-derived cannabinoids, purporting to generate substantial revenues while in reality sustaining chronic negative cash flow and fraudulently defaulting on obligations to multiple vendors.  Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley are members of Counter-Defendant MCN TX.

164.    Counter-Defendant MC Nutraceuticals LLC ("Counter-Defendant MCN CO") is a foreign limited liability company organized under the laws of Colorado on November 4, 2021, with its principal place of business in Golden, Jefferson County, Colorado.  Counter-Defendant MCN CO is also a subsidiary of Counter-Defendant MC Global Holdings LLC and operates in tandem with Counter-Defendant MCN TX as an integrated component of Counter-Defendants' enterprise, sharing resources, personnel, and fraudulent practices without regard to corporate distinctions (Counter-Defendant MCN TX and Counter-Defendant MCN CO are referred to collectively as "Counter-Defendant MCN").  Counter-Defendant Jeff Worley is the sole member of Counter-Defendant MCN CO.

165.    Counter-Defendant MC Botanicals LLC ("Counter-Defendant MCB") is a foreign limited liability company organized under the laws of Texas on October 7, 2024, with its supposed

principal place of business in Lantana, Denton County, Texas. Like Counter-Defendant MCN, Counter-Defendant MCB is a subsidiary of Counter-Defendant MC Global Holdings LLC. Counter-Defendant MCB obtained a certificate of authority to transact business in North Carolina on February 2, 2025. Counter-Defendant MCB was created as a shell entity to interface with Asterra, securing credit extensions under false pretenses while funneling benefits to the broader enterprise operated by Counter-Defendants. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley are members of Counter-Defendant MCB.

166. Counter-Defendant MC Global Holdings LLC ("Counter-Defendant MCGH") is a foreign limited liability company organized under the laws of Texas on February 25, 2021, with its supposed principal place of business in Lantana, Denton County, Texas. As the parent company overseeing Counter-Defendant MCN and Counter-Defendant MCB, Counter-Defendant MCGH facilitates the commingling of funds, shields assets from creditors, and perpetuates alter ego relationships among Counter-Defendants. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley are members of Counter-Defendant MCGH.

## JURISDICTION AND VENUE

167. The Court has subject matter jurisdiction over Asterra's counterclaims pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between Counter-Plaintiff and all Counter-Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Asterra is a citizen of North Carolina for diversity purposes, as its members are citizens and residents of North Carolina. Counter-Defendant Bret Worley is a citizen of Colorado. Counter-Defendant Jeff Worley is a citizen of Texas. Counter-Defendant MCN, Counter-Defendant MCB, and Counter-Defendant MCGH are citizens of Colorado and Texas, as their members, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, are Colorado

28

and Texas citizens, respectively. No Counter-Defendant shares North Carolina citizenship with Asterra. The damages sought, which include compensatory, treble, and punitive damages, arise from over $1,000,000.00 in unpaid contractual obligations, far surpassing the jurisdictional threshold. The court has subject matter jurisdiction over Asterra's federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*) counterclaims pursuant to 28 U.S.C. § 1331, because these claims arise under federal law. Additionally, the Court has supplemental subject matter jurisdiction over Asterra's counterclaims pursuant to 28 U.S.C. § 1367(a), because all counterclaims arise out of the same case or controversy as the claims over which the Court has original jurisdiction.

168.     The Court has personal jurisdiction over all Counter-Defendants in accordance with due process under the Fourteenth Amendment and North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4. The Manufacturing and Supply Agreement executed by Asterra and Counter-Defendant MCB on May 2, 2025 contains an enforceable forum selection clause mandating that any disputes arising from or relating to the Agreement be litigated exclusively in the state or federal courts of North Carolina, thereby conferring consent-based personal jurisdiction over Counter-Defendant MCB. Additionally, Counter-Defendant MCN and Counter-Defendant MCB have availed themselves of the jurisdiction of this Court by filing this action against Asterra on July 7, 2025. Jurisdiction extends to Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, and Counter-Defendant MCGH, because Counter-Defendant MCN and Counter-Defendant MCB are alter egos and mere instrumentalities of Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, and Counter-Defendant MCGH, rendering Counter-Defendant MCN and Counter-Defendant MCB's contacts attributable to all other Counter-Defendants under North Carolina's instrumentality rule. All Counter-Defendants conspired to commit tortious acts directed at

Asterra, a North Carolina resident, causing foreseeable harm in this state. Counter-Defendants purposefully availed themselves of North Carolina's laws by contracting with a North Carolina entity, facilitating shipment of products to and from North Carolina facilities, and deriving substantial revenue from North Carolina-sourced goods. The exercise of personal jurisdiction is reasonable and comports with traditional notions of fair play and substantial justice, given the gravity of Counter-Defendants' intentional misconduct and North Carolina's strong interest in protecting its residents from fraud and other unlawful conduct.

169. Venue is proper in the Eastern District of North Carolina under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Asterra's performance of its contractual obligations, the supply of products to Counter-Defendant MCN and Counter-Defendant MCB from Nash County, North Carolina, and the economic injury inflicted upon Asterra as an entity located and operating in Nash County, North Carolina.

## **FACTUAL BACKGROUND**

<u>Asterra's Operations and Initial Engagement with Counter-Defendants</u>

170. Asterra (formerly known as Chiron LLC) was founded in North Carolina in 2019 and specializes in the production of high-quality CBD and hemp-derived products. From its Nashville headquarters, Asterra employs rigorous quality controls and manufactures white-label hemp products and its in-house brand, Southern Ease. Prior to its inauspicious engagement with Counter-Defendants, Asterra was on an upward trajectory and achieving all benchmarks of its business plan.

171. Counter-Defendant MCN, Counter-Defendant MCB, and Counter-Defendant MCGH do not manufacture any products. The business model of these entities is pure arbitrage. Counter-

Defendant MCN, Counter-Defendant MCB, and Counter-Defendant MCGH act as middlemen, buying CBD and hemp products from manufacturers and reselling them at a markup.

172.     Upon information and belief, Counter-Defendant MCN and Counter-Defendant MCGH began falling consistently behind on payments to their suppliers in or around the second quarter of 2023.

173.     Upon information and belief, by 2024, the market position of Counter-Defendant MCN and Counter-Defendant MCGH had declined due to stagnant growth arising from increased competition, regulatory changes, and manufacturers sourcing raw ingredients directly from labs.

174.     Throughout 2024, Counter-Defendant MCGH and Counter-Defendant MCN, along with Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's other companies, were, unknown to Asterra at the time, under investigation by the Colorado Attorney General's Office for deceptive business practices.

175.     Upon information and belief, by the third quarter of 2024, unknown to Asterra at the time, Counter-Defendant MCN and Counter-Defendant MCGH had a consistently negative cash flow, amassing substantial past-due balances with suppliers and service providers, including, but not limited to, the following:

  a.     IAH Oregon, a manufacturing company and the United States-based subsidiary of Naturecan, located in Medford, Oregon;

  b.     JL Processing LLC,[5] a cannabinoid manufacturing company located in Nashville, Tennessee;

  c.     Atlantic Global Supply, a pharmaceutical lab located in Wilson, North Carolina;

---

[5] JL Processing has a civil action for breach of contract and unjust enrichment, seeking damages in the amount of $31,930.00, against Counter-Defendant MCN pending in *JL Processing LLC v. MC Nutraceuticals LLC*, Case No. 2025CV31109, Jefferson County District Court, Colorado.

d.      The Southern Group,[6] a lobbying firm located in Tallahassee, Florida;

e.      BioVivo Science LLC (formerly known as HempRise LLC),[7] a botanical extraction and manufacturing company located in Jeffersonville, Indiana;

f.      FM Labs, a cannabinoid manufacturing company located in Fort Lupton, Colorado;

g.      Hemp Depot, a company that manufactures hemp-based products located in Colorado Springs, Colorado;

h.      Low Gravity, a company that manufactures hemp-based products located in Martinez, California;

i.      Inov8 Distribution, a manufacturer and distributor of hemp-derived minor cannabinoids located in Austin, Texas;

j.      BHP Holdings LLC (d/b/a BioPure Healing Products), a manufacturer and distributor of botanical and herbal supplements located in Woodinville, Washington; and

k.      FlowBlend, a company that manufactures and sells CBD pouches and other products located in Kalispell, Montana.

176.    In late 2024, Counter-Defendant Bret Worley approached Asterra with a business proposal. Counter-Defendant Bret Worley styled himself as a successful executive and a leader in the hemp industry, claiming that Counter-Defendant MCN had annual revenue in the amount of

---

[6] The Southern Group has a civil action for breach of contract, seeking damages in the amount of $83,925.00, against Counter-Defendant MCGH pending in *The Southern Group of Florida, Inc. v. MC Global Holdings LLC*, Case No. 2025 CA 001208, Leon County, Second Judicial Circuit, Florida.
[7] BioVivo has a civil action for breach of contract and unjust enrichment, seeking damages in the amount of $148,791.41, against Counter-Defendant MCN pending in *BioVivo Science LLC v. MC Nutraceuticals LLC*, Case No. 49D01-2506-CE-029895, Marion County Superior Court, Indiana.

32

$90 million[8]. Counter-Defendant Bret Worley boasted of his business and political connections, including fabricated claims of influence over federal policy through his romantic relationship with Caroline Wiles, the daughter of President Donald J. Trump's chief of staff, Susie Wiles. Counter-Defendant Bret Worley used his affiliation with Susie Wiles—a respected political figure held in high regard—through Caroline Wiles to cause Asterra and other business associates to believe that he should also be viewed as a person worthy of trust and respect. By way of example, Counter-Defendant Bret Worley stated that he could, indirectly through his personal relationship with Caroline Wiles, secure political appointments and other favors for those who conducted business on terms that were favorable to Counter-Defendants. Collectively, these misrepresentations were intended to falsely portray Counter-Defendant MCN, Counter-Defendant MCB, and Counter-Defendant MCGH as creditworthy powerhouses and desirable business partners. Counter-Defendant Jeff Worley echoed Counter-Defendant Bret Worley's false assurances of Counter-Defendant MCN's financial strength to Asterra and other potential business partners.

177.    Although Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley presented the prospective business relationship between Asterra and Counter-Defendant MCN as an opportunity for Asterra, the truth was that Counter-Defendant MCN needed Asterra to supply products on credit for it to resell at a markup to increase its revenue and regain its industry standing.

178.    On or about February 12, 2025, Asterra began purchasing and distributing raw materials on behalf of Counter-Defendant MCN. Customers would place orders with Counter-Defendant

---

[8] Counter-Defendant MCN admitted that its annual revenue was approximately half that amount, approximately $48 million, in 2024, (Compl. ¶ 12), though Asterra believes that Counter-Defendant MCN's actual revenue was far less.

MCN, and Counter-Defendant MCN would submit purchase orders for its customers' products to Asterra. Asterra would then purchase the raw materials ordered by Counter-Defendant MCN and have these materials shipped to Counter-Defendant MCN's facility in Colorado. Counter-Defendant MCN would receive payment from its customers and ostensibly remit payment to Asterra in the amount of its cost plus a commission.

179. When Asterra began doing the work described in paragraph 178 above for Counter-Defendant MCN, Counter-Defendant MCN initially made timely payments that served to cultivate Asterra's trust.

<u>The Manufacturing and Supply Agreement</u>

180. Shortly after Asterra began distributing raw materials for Counter-Defendant MCN as described in paragraph 178 above, Counter-Defendant Bret Worley proposed expanding the scope of Asterra's work with Counter-Defendant MCGH's subsidiary entities. Counter-Defendant Bret Worley proposed an arrangement between Asterra and Counter-Defendant MCB, whereby Asterra would purchase raw ingredients on behalf of Counter-Defendant MCB, hold the raw ingredients in Asterra's inventory, ship the ingredients from Asterra's inventory as directed by Counter-Defendant MCB, and then be paid an agreed-upon rate for each unit shipped for Counter-Defendant MCB.

181. On May 2, 2025, Asterra and Counter-Defendant MCB, by and through Counter-Defendant Bret Worley, executed the Manufacturing and Supply Agreement ("<u>Agreement</u>"), a copy of which is attached hereto as **EXHIBIT A** and incorporated by reference herein. The Agreement was drafted primarily by Counter-Defendant MCN's in-house counsel and modified by Counter-Defendant Jeff Worley to include a provision for Asterra to extend to Counter-Defendant MCB a $2.5-million revolving line of credit.

34

182.    Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley deliberately concealed from Asterra the Colorado Attorney General's investigation[9] of their companies and the poor financial condition of Counter-Defendant MCGH, Counter-Defendant MCB, and Counter-Defendant MCN.  As of the date of execution of the Agreement, Asterra was unaware that Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's companies were under investigation for deceptive business practices or that Counter-Defendant MCGH and Counter-Defendant MCN had negative cash flow.  Unknown to Asterra, Counter-Defendant MCB had been created to function as an undercapitalized shell entity to exploit the Agreement's line of credit for Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB's arbitrage model, reselling rather than manufacturing products while concealing the enterprise's insolvency

### Escalating Breaches and Fraudulent Assurances

183.    Almost immediately after execution of the Agreement, cracks emerged in Counter-Defendants' façade of integrity and profitability.

184.    In May 2025, Counter-Defendants began to fall behind on payments owed to Asterra for the products supplied by Asterra to Counter-Defendant MCN and Counter-Defendant MCB.

185.    Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley made increasingly implausible excuses for payment delays.  When excuses no longer sufficed, Counter-Defendant

---

[9] On or about May 14, 2025—less than two weeks after executing the Agreement with Asterra—Bret Worley and Jeff Worley executed the Assurance on behalf of Counter-Defendant MCGH, Counter-Defendant MCN, and other subsidiaries of Counter-Defendant MCGH to close the Colorado Attorney General's investigation of Counter-Defendant MCGH, Counter-Defendant MCN, Counter-Defendant MCB and other entities.  The Assurance required these entities to, among other things, pay a $50,000.00 fine and comply with the Colorado Consumer Protection Act.

Jeff Worley, falsely stated that they had made wire transfers[10] for payments to Asterra. Unknown to Asterra at the time, this tactic of staving off creditors with lies and fraudulent payment confirmation documentation was Counter-Defendants' modus operandi.

186. The outstanding balance Counter-Defendants owed for work done by Asterra for Counter-Defendant MCN and Counter-Defendant MCB grew to over $1,000,000.00 by early June 2025. In accordance with paragraph 9 of the Agreement, Asterra suspended shipments based on its reasonable belief that Counter-Defendant MCB was not creditworthy and could not comply with its financial obligations under the Agreement.

187. On June 5, 2025, during a conference call with Asterra's representatives, in order to cure Counter-Defendant MCN and Counter-Defendant MCB's default, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley falsely promised to:

      a.    Pay Asterra $50,000.00 each day until the total amount owed for products supplied by Asterra to Counter-Defendant MCN and Counter-Defendant MCB until the outstanding balance owed by Counter-Defendants had been paid in full;

      b.    Remain current on all invoices; and

      c.    Permit Asterra to hire Ryan McConnell ("Mr. McConnell"), an employee of Counter-Defendant MCN who had a positive working relationship with Asterra.

---

[10] Some wire transfers were never initiated by Counter-Defendants, and Counter-Defendant Jeff Worley simply lied about initiating the transfers to induce Asterra and other suppliers to ship additional products. Other purported "wire transfers" were actually post-dated ACH transfers, which Asterra did not realize until receiving and examining the purported "wire transfer confirmation" from Counter-Defendant Jeff Worley. Rather than making funds immediately available to Asterra as a wire transfer would, the ACH transfer would not occur until days or weeks later. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley knew that the scheduled payments were not wire transfers, but they deliberately used this term to mislead Asterra to ensure that Asterra would continue shipping goods for the benefit of Counter-Defendant MCN and Counter-Defendant MCB.

188.   When Asterra insisted that Counter-Defendants begin aggressively paying down their outstanding balance, Counter-Defendant Bret Worley pressured Mr. McConnell to fabricate invoice disputes to fraudulently reduce the legitimate debt owed to Asterra.  Mr. McConnell refused and immediately resigned from his position with Counter-Defendant MCN.

189.   It soon became apparent to Asterra that Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's promises, described in paragraph 187(a)-(c) above, were nothing more than deception intended to secure additional product shipments and discourage Asterra from pursuing legal action.  This is consistent with the fraudulent and deceptive practices of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley in their dealings with other vendors—making false promises, falsely stating that payments had been made, cycling debt, and paying the minimal amount necessary to procure more goods without any intention of satisfying the full outstanding balance.

190.   Counter-Defendants did not make any payments to Asterra after June 9, 2025.  When Counter-Defendants failed to make the agreed-upon payment on June 10, 2025, Asterra terminated the Agreement based on Counter-Defendants' material breaches, failure to establish creditworthiness and the ability to fulfill financial obligations, and misrepresentations.

191.   As of July 25, 2025, the outstanding balance owed by Counter-Defendants is $1,608,507.13:

   a.      For work done by Asterra for Counter-Defendant MCN, $991,300.00 principal and $20,934.23 interest;

   b.      For work done by Asterra for Counter-Defendant MCB, $564,425.00 principal and $9,259.42 interest;

c.  For shipping costs for samples for Counter-Defendant MCN, $21,793.17 principal and $795.30 interest.

<u>Counter-Defendants' Racketeering and Corrupt Enterprise</u>

192.  Asterra's experience with Counter-Defendants is not anomalous.  Counter-Defendants' fraudulent and criminal conduct is consistent with their well-established pattern and business practices, whereby Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley operate as nothing more than middlemen, prey on suppliers without adding value, and hold vendors hostage with de minimis payments and false promises.

193.  In furtherance of their corrupt enterprise, Counter-Defendants have engaged in a pattern of misconduct beyond defrauding Asterra and other business partners as described above, including, but not limited to, the following:

a.  In or around June 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley extorted a former employee who left his position with Counter-Defendant MCN in Colorado to go to work for Bucanna Labs in Texas.  Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley threatened to make a false report to the former employee's probation officer, which would likely have resulted in the employee being charged with a probation violation, unless the employee quit his job with Bucanna Labs, returned to work for Counter-Defendant MCN, and apologized and announced to the other employees of Counter-Defendant MCN that he had made a mistake.  The former employee acquiesced to the demands of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley due to his fear that they would follow through on their threats and he would not be able to support his family.

38

b.    Upon information and belief, beginning in or around the first quarter of 2025 and continuing through the present, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley have sourced raw ingredients for Counter-Defendant MCGH and its subsidiaries from suppliers in China and Lithuania through purchases from an importer, Hau Processing.  Upon information and belief, Hau Processing obtains raw ingredients from suppliers in China, such as Shanghai Minstar Chemical Co. Ltd., and Lithuania, such as Santobiotec, and imports these goods without paying tariffs.  Upon information and belief, in order to avoid paying tariffs on these goods, Hau Processing and its foreign-based suppliers cause large orders for cannabinoids to be artificially split into multiple small shipments such that they would appear to fall under the de minimis exception set out in 19 U.S.C. § 1321 and/or cause shipments to be intentionally mislabeled to misclassify goods and avoid applicable tariffs.  Tariff evasion, through purchases directly from China-based suppliers, like Shanghai Minstar Chemical Co. Ltd., Lithuania-based suppliers, like Santobiotec, or importers like Hau Processing, gives distributors an unlawful advantage over their competitors, because it allows them to undercut compliant competitors by selling their products at a lower price point while maintaining profitability that would not be possible if applicable tariffs were paid. Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting on behalf of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, obtained THCP and other cannabinoids from foreign-based suppliers, either directly or through an importer such as Hau Processing, at artificially low price points that they knew, or reasonably

39

should have known, would not have been financially feasible if tariffs had been paid for these goods as required by federal law. Upon information and belief, employing this illegal tariff evasion scheme has enabled Counter-Defendants to undercut the market prices of competitors who source products domestically by approximately forty percent (40%).

c. Upon information and belief, beginning in or around the first quarter of 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, have sourced ingredients, such as THCP, from suppliers in China and Lithuania and placed these materials into interstate commerce in the United States. Upon information and belief, Counter-Defendants distribute cannabinoids imported from China and Lithuania to customers in the United States without transformation in the United States, but Counter-Defendants do not indicate that China or Lithuania is the country of origin on their products' labels or Counter-Defendants' website (www.mcnutraceuticals.com). Upon information and belief, by importing cannabinoids of inferior quality from China or Lithuania at a significantly lower price than Counter-Defendants could obtain cannabinoids manufactured in the United States at facilities that comply with all federal consumer safety laws and then selling these goods to customers by misrepresenting that they are domestically produced, Counter-Defendants are misleading customers, who purchase the cannabinoids to use as ingredients in consumable products (e.g., gummies and other edibles), and violating federal laws regarding country-of-origin labeling, safety testing, and batch tracking. Like the

tariff evasion described in subparagraph (b) above, upon information and belief, this deceptive practice gives Counter-Defendants an unlawful advantage over their competitors, because it allows Counter-Defendants to undercut compliant competitors by selling their products at a lower price point while maintaining profitability that would not be possible if Counter-Defendants incurred the expenses that would be required to comply with federal consumer safety laws.

194. Based on the conduct described in paragraphs 159 through 193 above, Counter-Defendants' enterprise, directed by Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, is and has been engaged in a pattern of racketeering activity since at least the second quarter of 2023 and likely earlier. The conduct constituting predicate acts within the meaning of N.C. Gen. Stat. § 75D-3(c) committed by Counter-Defendants as participants in this illicit enterprise includes, but is not limited to, the following:

a. Obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100: On multiple occasions from January 2025 through June 5, 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly and willfully misrepresented the financial stability and creditworthiness of Counter-Defendants' enterprise to Asterra's representatives during in-person meetings held in North Carolina and in telephone calls and emails between Asterra's representatives, who were located in North Carolina, and Counter-Defendant Bret Worley, who was, upon information and belief, located in Colorado, and Counter-Defendant Jeff Worley, who was, upon information and belief, located in Texas. Counter-Defendant Bret Worley and Counter-Defendant

41

Jeff Worley grossly overstated Counter-Defendant MCN's annual revenue, misrepresented that Counter-Defendant MCB possessed sufficient liquidity to support a $2.5-million credit line, and made multiple false promises to pay Asterra for goods that Asterra supplied with no intention of actually paying for these products. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's false representations of these past and subsisting facts were made with the intent to cheat Asterra by inducing it to extend credit and supply hemp-derived products without any intention of paying Asterra for the products it supplied. In reliance upon Counter-Defendants' false representations as described herein, Asterra subsequently delivered goods that Counter-Defendants accepted, resold through Counter-Defendant MCN's distribution channels, and retained proceeds from the resale thereof without compensating Asterra, thereby obtaining property through deceit in violation of this statute.

b. Extortion in violation of N.C. Gen. Stat. § 14-118.4[11]: In or around June 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly threatened a former employee of Counter-Defendant MCN through interstate telephone calls by stating that they would make a false report to his probation officer, which could potentially lead to his incarceration, if he did not immediately return to work for Counter-Defendant MCN and publicly apologize on a company-wide sales call for leaving to join

---

[11] Although this crime was committed in Colorado and does not fall within the jurisdiction of North Carolina, Colo. Rev. Stat. § 18-3-207 is substantially equivalent to N.C. Gen. Stat. § 14-118.

another company. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley made this threat to extort from the former employee his labor and loyalty as an advantage to Counter-Defendants' enterprise by preventing the loss of a key salesperson who possessed knowledge of Counter-Defendants' fraudulent practices. These threats were made without reasonable or probable cause and were pretextual, designed solely to coerce the employee's compliance and deter other employees from leaving amid growing internal awareness of the enterprise's insolvency and vendor fraud. Fearing for his freedom and his family's wellbeing, the former employee succumbed to Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's extortion, thereby enabling Counter-Defendants' enterprise to continue its pattern of deceiving vendors, such as Asterra, without internal disruptions or public disclosures that might expose their scheme.

c. Conspiracy to commit fraudulent import evading duties in violation of 18 U.S.C. § 545: Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly and fraudulently conspired in violation of 18 U.S.C. § 371 to obtain imported chemical compounds and rare cannabinoids from suppliers in China and Lithuania. Upon information and belief, foreign-based suppliers, such as Shanghai Minstar Chemical Co. Ltd. and Santobiotec, and importers, such as Hau Processing, directed the mislabeling of shipments of goods ordered by Counter-Defendants as non-dutiable items and the use of multiple small packages deliberately sized to fall under de minimis thresholds or other exceptions for the purpose of evading applicable

43

tariffs and customs duties imposed under federal law in violation of 18 U.S.C. §
545. Upon information and belief, Counter-Defendants conspired to introduce
these products, purchased either directly from suppliers in China or Lithuania or
through importers, such as Hau Processing, into United States commerce contrary
to law and to defraud the United States of revenue by avoiding payments that
legitimate importers were required to make. Upon information and belief,
Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's conspiracy
with Chinese-based suppliers and importers, such as Hau Processing, resulted in
the unlawful entry of goods that were then resold through Counter-Defendants'
enterprise's distribution channels without the payment of duties, thereby
substantially undercutting compliant competitors enabling the enterprise to sustain
its fraudulent vendor relationships, including the non-payment scheme perpetrated
against Asterra. This smuggling activity allowed Counter-Defendants to source
materials at artificially low prices while concealing the unlawful cost savings that
masked the enterprise's insolvency.

d.  Transmitting in interstate commerce a communication threatening to injure the
property or reputation of another in violation of 18 U.S.C. § 875: The allegations
of subparagraph (b) above are hereby realleged and incorporated by reference as if
fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant
Jeff Worley's communications, transmitted via interstate commerce through
telephone networks crossing state lines, contained explicit threats to injure the
former employee's person by invoking legal processes without probable cause that
would lead to his physical confinement. By transmitting these interstate threats

44

with the specific intent to extort things of value through intimidation as described above, Counter-Defendants violated 18 U.S.C. § 875(b).

e.  <u>False statement to federal agencies in violation of 18 U.S.C. § 1001</u>: The allegations of subparagraph (c) above are hereby realleged and incorporated by reference as if fully set forth herein.  Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly and fraudulently conspired in violation of 18 U.S.C. § 371 to willfully falsify, conceal, and cover up material facts by trick, scheme, and device in matters within the jurisdiction of the executive branch of the United States government in violation of 18 U.S.C. § 1001, specifically by agreeing for Chinese-based suppliers and/or importers, such as Hau Processing, to submit fraudulent declarations and entry documents to U.S. Customs and Border Protection during the importation of chemical compounds and rare cannabinoids purchased by Counter-Defendants from suppliers in China and by misrepresenting the nature, value, and classification of the merchandise to evade tariffs and duties imposed under federal law.

f.  <u>Mail fraud in violation of 18 U.S.C. § 1341</u>: The allegations of subparagraph (j) below are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, committed mail fraud in violation of 18 U.S.C. § 1341 by and through the following acts:

i.      Counter-Defendants devised an artifice to defraud Michael Boughton ("Mr. Boughton") of JL Processing LLC ("JL Processing") by knowingly and deliberately misrepresenting to him that they were returning to JL Processing products that they had purchased from Mr. Boughton's company because they "overstocked" the products. In late March or early April 2025, Mr. Boughton agreed to accept the returned materials so long as: (1) they were actually the materials supplied to Counter-Defendants by JL Processing; (2) the materials were in JL Processing's bottles; and (3) the caps of the JL Processing bottles were still sealed. Following this conversation with Mr. Boughton, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, deposited, or caused to be deposited, a package to be delivered by a commercial interstate carrier, United Parcel Service ("UPS"), from Counter-Defendants' place of business in Colorado to JL Processing in Tennessee. The package shipped via UPS purportedly contained the materials Counter-Defendants had purchased from JL Processing and overstocked, but the materials actually contained in the package had been purchased from another source another source. When the package shipped interstate through UPS by Counter-Defendants from Colorado arrived at JL Processing in Tennessee on or about April 4, 2025, Mr. Boughton discovered that the materials in the package were not the materials Counter-Defendants had purchased from JL Processing and were instead products

46

from another supplier. Mr. Boughton informed Counter-Defendant Bret Worley that he would not accept the materials and returned the materials to Counter-Defendants. Upon information and belief, Counter-Defendants knowingly and deliberately attempted by false pretenses to defraud Mr. Boughton and JL Processing by misrepresenting to Mr. Boughton that they were returning un-used materials purchased from JL Processing to fraudulently and through false pretenses obtain a credit in the amount of approximately $10,000.00 towards the past-due balance Counter-Defendants owed to JL Processing.

ii. In July 2024, Steven Brandel ("Mr. Brandel"), the CEO of Unlimited Experience Holding Company LLC (d/b/a The Southern Maryland Experience) ("SM Experience") purchased one kilogram of tetrahydrocannabinolic acid ("THCA") from Counter-Defendant MCN. Upon information and belief, Counter-Defendant MCN misrepresented the quality of the THCA sold to Mr. Brandel and SM Experience, located in Hollywood, Maryland, through the use of misappropriated certificates of analysis ("COAs") and material misrepresentations made about the quality of Counter-Defendant MCN's products on its website. In reliance upon Counter-Defendant MCN's misrepresentations, Mr. Brandel purchased and paid for what he believed to be high-quality THCA based on Counter-Defendant MCN's representations. On or about July 11, 2024, upon information and belief, Counter-Defendant MCN shipped via UPS from its facility in Colorado to SM Experience in Maryland a package containing

one kilogram of THCA. When Mr. Brandel received the THCA package from Counter-Defendant MCN, he discovered that it was not the high-quality product that he expected to receive based on Counter-Defendant MCN's deceptive advertising. Instead, the THCA that SM Experience received was very low quality and contaminated with pentane to the point that it emitted a strong chemical smell and was not fit for consumption. Counter-Defendant MCN refused to refund the purchase price paid by SM Experience and told Mr. Brandel that he was outside the timeframe for receiving a refund for the THCA sold by Counter-Defendant MCN under false pretenses.

iii.    Upon information and belief, in the second and third quarter of 2025 after Asterra had terminated its business relationship with Counter-Defendants, Counter-Defendant MCN, Counter-Defendant MCB, and Counter-Defendant MCGH misappropriated the address of Asterra's manufacturing facility in Nashville, North Carolina in COAs linked in marketing emails to fraudulently cause potential customers to believe that Counter-Defendant MCB was lawfully operating in and distributing products from Asterra's facility in North Carolina. Upon information and belief, Counter-Defendants knowingly and deliberately attempted by false pretenses to defraud recipients of these marketing emails to induce the recipients to purchase products distributed by Counter-Defendants. Upon information and belief, Counter-Defendants shipped products purchased in reliance

48

upon the fraudulent marketing emails through interstate commerce via UPS to customers nationwide.

iv. Counter-Defendant MCN and Counter-Defendant MCB, upon information and belief,[12] engaged in a scheme to manufacture, distribute, market, and sell intoxicating hemp-derived cannabinoid products exceeding lawful THC thresholds under federal and Pennsylvania state law, which products were disguised as compliant hemp (like the compliant hemp products manufactured and distributed by Asterra) to evade regulatory oversight, thereby deceiving consumers, regulators, and competitors through false labeling, fraudulent certificates of analysis, and misleading marketing that misrepresented product potency, safety, and legality.

v. By devising the artifices described in subparagraphs (i) through (iv) above to defraud JL Processing, Mr. Boughton, SM Experience, Mr. Brandel, recipients of the deceptive marketing emails described in subparagraph (iii) above, and consumers of goods containing Counter-Defendants' cannabinoid products and using UPS, a commercial interstate carrier, to execute their fraudulent schemes, Counter-Defendants violated 18 U.S.C. § 1341.

---

[12] Agape Total Health Care Inc., Franklin Bioscience – Penn LLC, and Franklin Bioscience – SE LLC have a civil action for common law unfair competition, conversion, tortious interference with contract, tortious interference with business relations, and civil conspiracy pending against Counter-Defendant MCB, Counter-Defendant MCN, and other entities pending in *Agape Total Health Care, Inc. et al. v. Golden Hour LLC et al.*, Case No. 250803198, Court of Common Pleas, Philadelphia County, Pennsylvania.

49

g.   <u>Wire fraud in violation of 18 U.S.C. § 1343</u>: The allegations of subparagraphs (a) and (f) above and subparagraph (j) below are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, executed Counter-Defendants' fraudulent schemes described above and below through interstate wire transmissions, including:

   i.   Phone calls and emails exchanged between Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley in Colorado and Asterra's representatives in North Carolina, which were essential to Counter-Defendants' scheme's success, as they facilitated the fraudulent acquisition of Asterra's products.

   ii.  iMessage and emails exchanged between Counter-Defendant MCN's representative in Colorado and Mr. Boughton, acting on behalf of JL Processing, in Tennessee, which were essential to Counter-Defendants' scheme's success, as they facilitated Counter-Defendants' artifice to defraud Mr. Boughton and JL Processing.

   iii. Marketing emails described in subparagraph j(iii) below in which Counter-Defendant MCB and Counter-Defendant MCN fraudulently misappropriated Asterra's business address to facilitate Counter-Defendants' scheme to evade the Assurance and deceptively induce potential customers to purchase products from Counter-Defendants by causing recipients of the marketing emails to believe that Counter-

50

Defendants' products were high-quality cannabinoids distributed from Asterra's facility in North Carolina.

iv. Websites (e.g., https://mcnutraceuticals.com/products/cannabinoids/) advertising the products purportedly distributed by Counter-Defendants, which were, upon information and belief, used to defraud numerous purchasers who placed orders in the amount of approximately $2,000.00 to $10,000.00 and pre-paid for these orders by transmitting payments using interstate wires through the online processing platform on Counter-Defendants' websites. Counter-Defendants received payments from these purchasers and then knowingly and deliberately accepted the funds received for the orders and converted the funds to their own use without ever fulfilling the website orders. Upon information and belief, the decision to retain customers' funds without filling the orders was a calculated scheme, whereby Counter-Defendants accumulated tens of thousands of dollars collectively received for orders that Counter-Defendants never intended to fill. Counter-Defendants, upon information and belief, believed that there was little risk of legal recourse because the amount unlawfully converted by Counter-Defendants for each unfulfilled order was low enough that the cost to the defrauded customer of pursuing a civil action against Counter-Defendants would exceed the amount in dispute. For example, on June 25, 2025, Nathaniel Prince ("Mr. Prince") of FlowBlend, a company located in Kalispell, Montana that manufactures and sells CBD pouches, placed a $2,050.00 order for hemp CBD isolate from Counter-Defendant MCN's

51

website and paid via PayPal. Despite multiple requests to Counter-Defendants, Mr. Prince did not receive the product he paid Counter-Defendant MCN for or a refund,[13] and Counter-Defendants eventually stopped communicating with Mr. Prince. This fraudulent activity allowed Counter-Defendants to unlawfully obtain operating funds that masked the enterprise's insolvency and created the false appearance of financial stability that in turn enabled Counter-Defendants to defraud Asterra and other suppliers of goods and credit.

v.    Websites  (e.g.,  https://mcnutraceuticals.com/products/cannabinoids/) used to market and sell intoxicating hemp-derived cannabinoid products exceeding lawful THC thresholds under federal and Pennsylvania state law, which products were disguised as compliant hemp (like the compliant hemp products manufactured and distributed by Asterra) to evade regulatory oversight, thereby deceiving consumers, regulators, and competitors through false labeling, fraudulent certificates of analysis, and misleading marketing that misrepresented product potency, safety, and legality. Counter-Defendants marketed and sold non-compliant hemp-derived products to customers across state lines by advertising these products on websites operated by Counter-Defendants and transmitting payments using interstate wires through the online processing platform on Counter-

---

[13] Mr. Prince did receive a $10.00 wire transfer on July 17, 2025. On July 24, 2025, Counter-Defendant Bret Worley sent a text message to Mr. Prince confirming the remaining $2,040.00 owed, but thereafter Counter-Defendant MCN did not issue the refund or respond to Mr. Prince's calls, text messages, or emails.

Defendants' websites. Counter-Defendants' deliberate act of disguising their non-compliant products as compliant hemp (like Asterra's high-quality, compliant products) has inflicted significant reputational harm upon Asterra and other compliant suppliers within the hemp industry, engendering widespread consumer concern regarding the contents and legality of hemp products and eroding the trust essential to operating successfully in this market.

vi. By devising the artifices described in subparagraphs (i) through (v) above to defraud Asterra, JL Processing, Mr. Boughton, FlowBlend, Mr. Prince, and others and using interstate wires to execute their fraudulent schemes, Counter-Defendants violated 18 U.S.C. § 1343.

h. <u>Bank fraud in violation of 18 U.S.C. § 1344</u>: The allegations of subparagraphs (a), (c), (e), and (f) above are hereby realleged and incorporated by reference as if fully set forth herein. Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly engaged in fraudulent schemes to obtain bank-controlled credits and funds from federally insured financial institutions, such as First Citizens Bank & Trust Company ("<u>First Citizens</u>"), through interstate wires under false pretenses, including, but not limited to, the following:

i. Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCN, obtained a $1-million line of credit from First Citizens

53

by concealing from First Citizens the true financial condition of Counter-Defendant MCN in much the same way that Counter-Defendants fraudulently concealed Counter-Defendant MCN's true financial condition from Asterra and other suppliers who extended credit to Counter-Defendant MCN.

ii.    Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB and Counter-Defendant MCN, falsely represented the financial condition of Counter-Defendant MCB and Counter-Defendant MCN and fraudulently concealed from Asterra material information related to the financial condition of these entities to induce Asterra to use funds under the control of a federally insured financial institution to pay for products supplied to Counter-Defendant MCB and Counter-Defendant MCN in reliance upon Counter-Defendants' false pretenses. These false representations, pretenses, concealments, and promises were material, as they directly influenced, and were intended to influence, the decisions by First Citizens, as a federally insured financial institution, and Asterra, as the holder of accounts containing funds at a federally insured financial institution, to extend credit and/or use funds under the custody or control of said financial institutions for the benefit of Counter-Defendants' enterprise and were part of Counter-Defendants' broader pattern of fraudulent and deceptive practices.

iii.     Upon information and belief, during 2024 and 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley falsely represented to Asterra and other suppliers to whom Counter-Defendant MCN, Counter-Defendant MCB, and/or Counter-Defendant MCGH owed substantial past-due balances that Counter-Defendants were transmitting payments to the suppliers to reduce the outstanding amounts owed.  In order to deceive Asterra and other suppliers and in furtherance of this deception, upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley falsified documentation of bank transactions. Counter-Defendants would send the suppliers screenshots of purportedly pending wire transfers to cause the suppliers to believe payment had been wired by Counter-Defendants, but the screenshots would actually only show the wire transfer set-up page with the sending and receiving federally-insured bank account information filled in.   Counter-Defendants would then deliberately not complete the wire transfer and feign confusion about why the transfer had not occurred.  Counter-Defendants would also send the suppliers screenshots of purported ACH transfers to cause the suppliers to believe payment had been made by electronic funds transfer from a federally-insured bank account held by one of the Counter-Defendants to a federally-insured bank account held by the supplier.  Counter-Defendants would then deliberately cancel the ACH transfer so that no funds would be transferred from Counter-Defendants to the supplier and then feign confusion about why the ACH transfer had not occurred.  These false

55

representations, pretenses, concealments, and promises were material, as they directly influenced, and were intended to influence, the decisions by Asterra and other suppliers, as the holders of accounts containing funds at federally-insured financial institutions, to extend credit and/or use funds under the custody or control of said financial institutions for the benefit of Counter-Defendants' enterprise and were part of Counter-Defendants' broader pattern of fraudulent and deceptive practices.

iv.    Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, fraudulently obtained payments from accounts at federally-insured institutions containing funds held by Mr. Prince and other customers, as described in subparagraph (g)(iv) above, for the benefit of Counter-Defendants' enterprise in furtherance of Counter-Defendants' broader pattern of fraudulent and deceptive practices.

v.    Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH fraudulently obtained payments from accounts at federally-insured institutions containing funds held by recipients of deceptive marketing emails, which linked falsified COAs misappropriating Asterra's business address, as described in subparagraph (g)(iii) above, for the benefit of

Counter-Defendants' enterprise in furtherance of Counter-Defendants' broader pattern of fraudulent and deceptive practices.

i.  <u>Interference with commerce by extortion in violation of 18 U.S.C. § 1951</u>: The allegations of subparagraphs (b) and (d) above are hereby realleged and incorporated by reference as if fully set forth herein.  Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, wrongfully extracted the former employee's services and silence as property to which Counter-Defendants had no lawful claim, motivated by the need to prevent defections that could expose the enterprise's fraudulent practices and disrupt its interstate resale operations.  Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's threats, communicated across state lines and affecting the flow of personnel critical to Counter-Defendants' commerce in hemp-derived products shipped to customers nationwide, obstructed interstate commerce by forcing the former employee to forgo lawful employment opportunities and contribute to an operation reliant on coerced stability.

j.  <u>Interstate transportation of stolen or fraudulently obtained property in violation of 18 U.S.C. § 2314</u>: Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly transported, transmitted, or transferred in interstate and/or foreign commerce goods and

money with a value of $5,000.00 or more, knowing the same to have been obtained by means of false or fraudulent pretenses by committing the following acts:

i.   Upon information and belief, beginning in May 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH knowingly and deliberately caused the products fraudulently obtained from Asterra, and funds derived therefrom, to be transported, transmitted, or transferred in interstate commerce for the benefit of Counter-Defendants' illicit enterprise.

ii.  Beginning in or around May 2025 and continuing since that time, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, upon information and belief, knowingly and deliberately caused the shipment and resale of hemp-derived cannabinoid products, which were sourced from suppliers in China and Lithuania and valued in excess of $5,000.00 per shipment, across state lines to customers throughout the United States, while fraudulently misrepresenting the origin, fulfillment location, and quality of these products through marketing emails and linked COAs transmitted by means of interstate wires that misappropriated Asterra's principal place of business at 800 Cooke Road, Nashville, North Carolina 27856, as Counter-Defendant MCB's operational address and misrepresented that the address

58

of a professional registered agent entity in Raleigh, North Carolina was also an address at which Counter-Defendant MCB operated.

iii. Upon information and belief, beginning in or around the first quarter of 2025 (though likely earlier) and continuing since that time, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, upon information and belief, fraudulently altered COAs of cannabichromene ("CBC") synthesized by BayMedica, a cannabinoid manufacturing company with locations in Nevada and California. Upon information and belief, Counter-Defendants knowingly and deliberately altered BayMedica's COAs, which showed a purity of 99% for CBC produced by BayMedica, to cause the COAs to falsely appear as though they reflected the composition of CBC sourced from another supplier and distributed by Counter-Defendant MCN and Counter-Defendant MCGH. By altering and misappropriating the COAs for the high-quality CBC produced by BayMedica without BayMedica's knowledge or consent, Counter-Defendant MCN and Counter-Defendant MCB disguised the fact that the substandard CBC Counter-Defendants obtained from another supplier had a purity of 87% or less and consisted of 13% unknown chemicals and sold the substandard CBC to customers based on this fraudulent misrepresentation.

iv. The knowing, deliberate misrepresentations described in subparagraphs (i) through (iii) above were designed to deceive customers into believing that

the products distributed by Counter-Defendants were high quality and manufactured at legitimate, compliant domestic facilities, thereby concealing Counter-Defendants' illicit enterprise's violations of the Assurance of Discontinuance with the Colorado Attorney General; the poor financial condition of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH; and Counter-Defendants' interstate sale of substandard, contaminated cannabinoids under false pretenses. Counter-Defendants fraudulently induced suppliers and customers to transact business with Counter-Defendants through these deliberate falsehoods and converted the value of the goods and money fraudulently obtained through this artifice to Counter-Defendants' benefit, all while perpetuating the cycle of vendor defaults and regulatory evasion that directly harmed Asterra by associating its reputable operations with the enterprise's illicit activities and diverting market share through deceptive competition and other unlawful business practices.

k.  <u>Use of interstate communication in aid of racketeering in violation of 18 U.S.C. § 1952</u>: The allegations of subparagraphs (a) through (j) above are hereby realleged and incorporated by reference as if fully set forth herein. Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, knowingly used communication facilities in interstate commerce, including telephone lines and electronic communication networks crossing state boundaries, to promote, manage, establish, carry on, and

60

facilitate unlawful activity in furtherance of their racketeering activities, which are described in more detail in subparagraphs (a) through (j) above. Upon information and belief, Counter-Defendants' uses of interstate communication facilities were deliberate and willful and directly promoted the criminal activities described above.

<u>Harm to Asterra by Counter-Defendants' Unlawful Acts</u>

195. Counter-Defendants' unlawful conduct inflicted profound damage on Asterra, consisting of approximately $1,600,000.00 in lost revenue, potential insolvency, diversion of executive resources from core operations, reduction in employee bonuses due to lost revenue, and reputational injury.

196. Counter-Defendants' actions with respect to Asterra described above are not isolated or unrelated incidents of unlawful conduct. The unlawful conduct of Counter-Defendants that harmed Asterra is part of an interrelated pattern of organized unlawful activity, the purpose and effect of which is the derivation of pecuniary gain by Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, both personally and in their capacities as officers and directors of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB.

197. The interrelated pattern of Counter-Defendants' organized unlawful activity within the past four years is evidenced by the following:

    a. Asterra is not the only entity that has been harmed by Counter-Defendants' fraudulent, deceptive, and criminal conduct within the past four years. Asterra is merely one of the most recent victims of Counter-Defendants' fraudulent interstate scheme, which is described in more detail in paragraphs 159 through 196 above. Other victims who were deceived by Counter-Defendants' deliberate misrepresentation of the financial condition of Counter-Defendant MCGH,

Counter-Defendant MCN, and Counter-Defendant MCB and Counter-Defendants' false promises to pay within the past four years immediately preceding the filing of this answer and counterclaim include, but are not limited to, IAH Oregon, JL Processing, Atlantic Global Supply, FM Labs, The Southern Group, BioVivo Sciences LLC, Hemp Depot, Low Gravity, Inov8 Distribution, BioPure Healing Products, FlowBlend, and SM Experience.

b.    In furtherance of their fraudulent interstate scheme, Counter-Defendants defrauded each victim within the past four years in essentially the same way:

    i.    To establish business relationships with new suppliers (victims), Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley would falsely portray Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB as trustworthy, successful, influential, and profitable. Contrary to their misrepresentations, these limited liability companies were overextended, undercapitalized, in debt to their vendors, and not profitable.

    ii.    To build trust with suppliers, Counter-Defendants would make initial payments on time. However, Counter-Defendants would eventually start making payments late, run up high balances, falsely promise to pay the full outstanding balance, and make only minimal payments (resulting in debt cycling instead of reducing their outstanding balances) to ensure that the suppliers would continue to fill Counter-Defendants' purchase orders. This would put the suppliers, who realized that Counter-Defendants had deceived them, in a position where they were forced to choose between

62

two undesirable situations: (1) continuing to work with Counter-Defendants so that they would get paid at least some portion of what Counter-Defendants owed, because they recognized that Counter-Defendants would stop payments if the suppliers terminated their business relationship; or (2) terminating their business relationship with Counter-Defendants, which would almost certainly eliminate any possibility of recovering what Counter-Defendants owed without legal action.

iii. When Counter-Defendants inevitably stopped making even the minimal payments towards their significant outstanding balances, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley would use a variety of deceptive tactics to stall, deter the suppliers from pursuing legal action to recover the balances owed by Counter-Defendants, and obtain additional product shipments from defrauded suppliers, such as: (1) asking endless questions (without any legitimate basis), which were intended to create a pretext for delaying payment rather than to resolve any genuine dispute or accounting discrepancy; (2) falsely stating that they had initiated wire transfers and ACH payments to pay Counter-Defendants' outstanding balances, then feigning confusion about why the payments had not gone through (no wire transfer had been initiated by Counter-Defendants and ACH transfers that were initiated were immediately canceled after sending purported payment confirmation to the suppliers); and (3) proposing fictitious payment plans with which Counter-Defendants never intended to comply.

63

iv.     Most suppliers would eventually stop working with Counter-Defendants. On some occasions, when defrauded suppliers exerted enough pressure to cause Counter-Defendants to believe that they would pursue collection action such that Counter-Defendants could not avoid paying, Counter-Defendants would set their sights on another mark and start the process over with a new supplier. Employing financial maneuvering similar to a Ponzi scheme, Counter-Defendants would then use funds generated from reselling products sourced from a new supplier on credit to make payments towards a balance owed to the former supplier. For example, in or around mid-May 2025, when Counter-Defendant MCN and Counter-Defendant MCB were both delinquent on payments to Asterra, Counter-Defendants owed Atlantic Global Supply approximately $500,000.00. Upon information and belief, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley told Atlantic Global Supply that they would get the money to pay the balance owed to Atlantic Global Supply from Asterra. Recognizing that Counter-Defendants' Ponzi-like scheme would be exposed if employees of Atlantic Global Supply and Asterra discussed with each other their business dealings with Counter-Defendants, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, upon information and belief, instructed Atlantic Global Supply not to tell Asterra about how they planned to pay the balance they owed. Likely out of concern that the outstanding balance would not be paid unless it did as Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley

64

instructed, Atlantic Global Supply did not communicate with Asterra about Counter-Defendants' plan. In mid- to late May 2025, Counter-Defendants, upon information and belief, paid approximately $250,000.00 to Atlantic Global Supply using funds received from reselling goods supplied to Counter-Defendant MCN and Counter-Defendant MCB by Asterra on credit. Counter-Defendants did not pay Asterra for these goods, and instead, further increased their still-unpaid outstanding balance to Asterra.

c. The collective criminal activity described in paragraph 194(a)-(k) above was intended to, and did, result in pecuniary gain for Counter-Defendants by enabling Counter-Defendants to unlawfully avoid paying debts and other expenses while receiving money from goods sold at the expense of their victims, including Asterra. For Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, the fraudulent scheme resulted in artificial profit that did not reflect the entities' true financial circumstances. For Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, the entities' artificial profit enabled them to take distributions far in excess of what would be appropriate in light of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB's true financial circumstances, which personally benefited Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley but left the entities to which they owed fiduciary duties severely undercapitalized.

198. Asterra has been harmed by Counter-Defendants' organized criminal activity.

## FIRST COUNTERCLAIM
### (Breach of Contract—Against Counter-Defendants MCB, MCN, and MCGH)

199.    Paragraphs 1 through 198 above are hereby realleged and incorporated by reference as if fully set forth herein.

200.    The Agreement constitutes a valid, binding contract between Asterra and Counter-Defendant MCB, supported by mutual consideration, including Asterra's credit extension and product supply in exchange for Counter-Defendant MCB's promise to pay for the goods supplied by Asterra and representation that it was creditworthy.

201.    Asterra fully performed its obligations under the Agreement by timely supplying conforming goods consistent with purchase orders sent by Counter-Defendant MCB.

202.    Counter-Defendant MCB materially breached the Agreement by:

    a.    Failing to pay Asterra for the goods supplied pursuant to the Agreement from May 6, 2025 through June 10, 2025; and

    b.    Failing to demonstrate that it was financially healthy and creditworthy when its inability to timely pay invoices as they came due caused Asterra to reasonably question whether Counter-Defendant MCB could comply with its financial obligations under the Agreement.

203.    Counter-Defendant MCB's material breaches of the Agreement proximately caused Asterra damages in the amount of $573,684.42 through July 25, 2025, consisting of $564,425.00 principal and $9,259.42 interest at the contract rate of 18% per year (0.0493% per day).  This amount is comprised of the following:

| Invoice Date | Invoice Number | Principal Owed | Days Past Due | Interest Owed | Total Owed |
|---|---|---|---|---|---|
| 05/06/2025 | 2083 | $29,350.00 | 50 | $723.70 | $30,073.70 |
| 05/15/2025 | 2102 | $28,750.00 | 41 | $581.30 | $29,331.30 |
| 05/21/2025 | 2114 | $26,950.00 | 35 | $465.16 | $27,415.16 |

66

| 05/21/2025 | 2115 | $57,500.00 | 35 | $992.47 | $58,492.47 |
| 05/22/2025 | 2123 | $218,450.00 | 34 | $3,662.78 | $222,112.78 |
| 05/30/2025 | 2137 | $57,500.00 | 26 | $737.26 | $58,237.26 |
| 05/30/2025 | 2138 | $31,500.00 | 26 | $403.89 | $31,903.89 |
| 06/10/2025 | 2155 | $114,425.00 | 30 | $1,692.86 | $116,117.86 |

204.     Counter-Defendant MCN and Counter-Defendant MCGH are jointly liable for damages

caused by Counter-Defendants MCB's material breaches of the Agreement as Counter-Defendant

MCB's alter egos, having directed Counter-Defendant MCB's actions, received Counter-

Defendant MCB's benefits under the Agreement, and operated indistinguishably from Counter-

Defendant MCB in the transactions at issue.

205.     In addition to Counter-Defendant MCB's material breaches of the Agreement with

Asterra, Counter-Defendant MCN independently breached a series of purchase order contracts

with Asterra, which were formed between April 29, 2025 and May 26, 2025.

206.     Each of Counter-Defendant MCN's purchase orders submitted to and fulfilled by Asterra

formed a separate contract for the sale of goods pursuant to N.C. Gen. Stat. §§ 25-2-204 and 25-

2-206.   Under these contracts, Counter-Defendant MCN agreed to pay Asterra its cost plus a

commission on sales.   Terms of these contracts were expressly set out in Counter-Defendant

MCN's purchase orders and implied by Counter-Defendant MCN and Asterra's course of dealing

and performance in accordance with N.C. Gen. Stat. § 25-1-303.  Asterra performed its obligations

under its purchase-order contracts with Counter-Defendant MCN by delivering conforming

goods, which entitled Asterra to payment for the goods pursuant to N.C. Gen. Stat. § 25-2-301.

Counter-Defendant MCN breached its purchase-order contracts with Asterra by accepting goods

pursuant to N.C. Gen. Stat. § 25-2-607 but failing to pay Asterra and retaining the proceeds of

each sale. Asterra is entitled to recover damages in the amount of the price of the goods accepted by Counter-Defendant MCN pursuant to N.C. Gen. Stat. § 25-2-709.

207. Counter-Defendant MCN's material breaches of the purchase order contracts described in paragraphs 205 and 206 above proximately caused Asterra damages in the amount of $1,012,234.23 through July 25, 2025, consisting of $991,300.00 principal and $20,934.23 interest at the rate of 18% per year (0.0493% per day). This amount is comprised of the following:

| Invoice Date | Invoice Number | Principal Owed | Days Past Due | Interest Owed | Total Owed |
|---|---|---|---|---|---|
| 04/29/2025 | 2071 | $33,800.00 | 57 | $950.10 | $34,750.10 |
| 04/29/2025 | 2072 | $53,250.00 | 57 | $1,496.84 | $54,746.84 |
| 05/02/2025 | 2077 | $15,500.00 | 54 | $412.77 | $15,912.77 |
| 05/02/2025 | 2078 | $17,750.00 | 54 | $472.68 | $18,222.68 |
| 05/06/2025 | 2080 | $41,000.00 | 50 | $1,010.96 | $42,010.96 |
| 05/06/2025 | 2081 | $32,400.00 | 50 | $798.90 | $33,198.90 |
| 05/06/2025 | 2082 | $105,000.00 | 50 | $2,589.04 | $107,589.04 |
| 05/07/2025 | 2084 | $9,750.00 | 49 | $235.60 | $9,985.60 |
| 05/07/2025 | 2085 | $9,750.00 | 49 | $235.60 | $9,985.60 |
| 05/08/2025 | 2088 | $71,000.00 | 48 | $1,680.66 | $72,680.66 |
| 05/08/2025 | 2089 | $20,800.00 | 48 | $492.36 | $21,292.36 |
| 05/08/2025 | 2090 | $19,500.00 | 48 | $461.59 | $19,961.59 |
| 05/15/2025 | 2101 | $45,500.00 | 41 | $919.97 | $46,419.97 |
| 05/15/2025 | 2105 | $102,000.00 | 41 | $2,062.36 | $104,062.36 |
| 05/15/2025 | 2106 | $24,500.00 | 41 | $495.37 | $24,995.37 |
| 05/16/2025 | 2104 | $89,750.00 | 40 | $1,770.41 | $91,520.41 |
| 05/22/2025 | 2117 | $41,650.00 | 34 | $698.35 | $42,348.35 |
| 05/22/2025 | 2118 | $30,450.00 | 34 | $510.56 | $30,960.56 |
| 05/22/2025 | 2119 | $50,375.00 | 34 | $844.64 | $51,219.64 |
| 05/22/2025 | 2120 | $25,050.00 | 34 | $420.02 | $25,470.02 |
| 05/23/2025 | 2124 | $80,375.00 | 33 | $1,308.02 | $81,683.02 |
| 05/26/2025 | 2126 | $41,700.00 | 30 | $616.93 | $42,316.93 |
| 05/26/2025 | 2127 | $30,450.00 | 30 | $450.49 | $30,900.49 |

208. Counter-Defendant MCN also materially breached its agreement to pay Asterra for the cost of shipping product samples. Counter-Defendant MCN requested by email that Asterra ship the samples and expressly agreed by email to reimburse Asterra for the cost of shipping. Asterra performed by shipping conforming product samples as requested, and these goods were accepted

by Counter-Defendant MCN. In accordance with their agreement, Asterra billed the shipping costs of $21,793.17 to Counter-Defendant MCN by Invoice #2092 on May 21, 2025. Counter-Defendant MCN's material breach of the contract to pay shipping costs for product samples proximately caused Asterra damages in the amount of $22,588.47 through July 25, 2025, consisting of $21,793.17 principal and $795.30 interest at the rate of 18% per year (0.0493% per day).

209. Counter-Defendant MCGH is jointly liable for damages caused by Counter-Defendant MCN's material breaches of its contracts with Asterra described above as Counter-Defendant MCN's alter ego, having directed Counter-Defendant MCN's actions, received Counter-Defendant MCN's benefits under the contracts, and operated indistinguishably from Counter-Defendant MCN in the transactions at issue.

## SECOND COUNTERCLAIM
### (Unfair & Deceptive Trade Practices—Against Counter-Defendants MCB, MCN, and MCGH)

210. Paragraphs 1 through 209 above are hereby realleged and incorporated by reference as if fully set forth herein.

211. The deliberate course of conduct of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH described above constitutes unfair and deceptive trade practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1, because it was designed to mislead, and did mislead, Asterra and other market participants so that Counter-Defendants could extract undue economic advantages.

212. Counter-Defendant MCN misrepresented its financial stability and creditworthiness to induce Asterra to fulfill purchase orders for Counter-Defendant MCN from April 29, 2025 to June 9, 2025. At the time Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting in their capacities as officers of Counter-Defendant MCN, made these misrepresentations,

they knew that they were false in that Counter-Defendant MCN had experienced negative cash flow since at least the third quarter of 2024 and had accumulated substantial unpaid debts to other vendors.

213.   Counter-Defendant MCB misrepresented its financial stability and creditworthiness to induce Asterra to enter into the Agreement on May 2, 2025 and to extend a $2.5-million line of credit.  At the time Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting in their capacities as managers of Counter-Defendant MCB, made these misrepresentations, they knew that they were false in that Counter-Defendant MCB was an undercapitalized entity that could not pay for the goods supplied by Asterra on credit pursuant to the Agreement.

214.   The misrepresentations made by Counter-Defendant MCB and Counter-Defendant MCN described in paragraphs 212 and 213 above were material and intended to deceive Asterra to cause Asterra to believe that Counter-Defendant MCB and Counter-Defendant MCN possessed the capacity and intent to honor their payment obligations, when in fact they operated as an integrated enterprise reliant on exploiting customers and vendor credit to sustain their operations without paying suppliers.

215.   Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting in their capacities as officers and managers of Counter-Defendant MCB and Counter-Defendant MCN, knowingly made false assurances of payment, such as insincere pledges during the June 5, 2025 conference call to make daily $50,000.00 payments to cure defaults and remain current on future invoices and fabricated wire transfer confirmations. They knew that these assurances were false given Counter-Defendant MCN and Counter-Defendant MCB's chronic insolvency and pattern of non-payment across Counter-Defendants' enterprise. These false statements, communicated via interstate wires and emails, had the natural tendency to deceive and did deceive Asterra,

proximately resulting in Asterra continuing to ship products ordered by Counter-Defendant MCB and Counter-Defendant MCN, which Counter-Defendant MCB and Counter-Defendant MCN accepted and resold without remitting any portion of the proceeds to Asterra.

216. Counter-Defendant MCB and Counter-Defendant MCN concealed their financial distress, including their inability to meet payroll and their reliance on underhanded tactics like shifting business to tariff-evading foreign suppliers, such as Shanghai Minstar Chemical Co. Ltd. and Santobiotec, and importers, such as Hau Processing, thereby perpetuating a façade of solvency that permitted them to secure goods on credit terms they had no intention of fulfilling.

217. These acts of Counter-Defendant MCB and Counter-Defendant MCN were not isolated but part of a broader pattern of deceptive conduct, including defrauding smaller customers and vendors by accepting upfront payments for undelivered orders and refusing to refund these payments, extorting employees to prevent departures that might expose internal malfeasance, conspiring in customs fraud by sourcing goods from importers and suppliers who evaded tariffs, misappropriating Asterra's business address to deceive potential customers and conceal Counter-Defendants' violations of the Assurance, and falsifying COAs for substandard products to defraud purchasers, all of which allowed Counter-Defendant MCB and Counter-Defendant MCN to undercut legitimate competitors and continue their exploitative debt-flipping cycle.

218. The conduct of Counter-Defendant MCB and Counter-Defendant MCN was unfair, as it offended public policy against commercial exploitation, was immoral and unethical in its disregard for contractual and fiduciary duties, and caused substantial injury to Asterra that could not reasonably be avoided and was not outweighed by any countervailing benefits to consumers or competition. By operating as an undifferentiated enterprise under Counter-Defendant MCGH's umbrella, Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH

71

systematically abused their limited liability company form in furtherance of their unfair and deceptive commercial enterprise.

219.    The unfair and deceptive conduct of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH occurred in or affected commerce, as it involved the interstate manufacture, sale, and distribution of goods in the hemp market, impacting suppliers, customers, and competitors within North Carolina and across state lines.

220.    The unfair and deceptive conduct of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH proximately caused Asterra's injuries, as Asterra reasonably relied on the intentional misrepresentations and concealments of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting in their capacities as officers and directors of these entities, in extending credit and manufacturing and shipping products, resulting in unpaid invoices exceeding $1,600,000.00 (inclusive of principal and interest), operational disruptions, and financial distress. But for Counter-Defendants' deliberate deceit, Asterra would not have participated in transactions with Counter-Defendant MCB or Counter-Defendant MCN or suffered the losses described herein.

221.    Asterra is entitled to treble damages pursuant to N.C. Gen. Stat. § 75-16.

222.    Asterra has incurred reasonable costs, including counsel fees, as a proximate result of Counter-Defendants' unfair and deceptive trade practices. Asterra is entitled to an award of costs and reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

223.    Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH commingled funds across entities to obscure assets and evade creditors. Counter-Defendant MCGH is jointly liable for damages caused by Counter-Defendant MCB and Counter-Defendant MCN's unfair and deceptive trade practices in or affecting commers as the alter ego of Counter-

72

Defendant MCB and Counter-Defendant MCN, having directed Counter-Defendant MCB and Counter-Defendant MCN's actions, received benefits from Counter-Defendant MCB and Counter-Defendant MCN, and operated indistinguishably from Counter-Defendant MCB and Counter-Defendant MCN in the transactions at issue.

## THIRD COUNTERCLAIM
### (Fraud—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

224. Paragraphs 1 through 223 above are hereby realleged and incorporated by reference as if fully set forth herein.

225. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting in their capacities as officers and directors of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, committed fraud against Asterra by making false representations and concealments of material facts, with knowledge of their falsity or reckless disregard for their truth, intending to deceive Asterra, upon which Asterra justifiably relied to its detriment, resulting in substantial damages.

226. Beginning in or around February 2025 and continuing through June 5, 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, falsely represented to Asterra's representatives via telephone calls, emails, and in-person discussions, that Counter-Defendant MCB and Counter-Defendant MCN were sufficiently financially stable and creditworthy to support a $2.5-million revolving line of credit. These misrepresentations were material, as they directly influenced Asterra's decision to extend credit and supply products to Counter-Defendants, and Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley knew them to be false at the time they were made.

73

227.    The fraudulent misrepresentations and concealments described in paragraph 226 above induced Asterra to continue shipping products valued at hundreds of thousands of dollars for the benefit of Counter-Defendant MCB and Counter-Defendant MCN without immediate demand for payment, all while Counter-Defendants worked together to conceal their inability to pay due to systemic insolvency across Counter-Defendants' enterprise.

228.    During the June 5, 2025 conference call involving Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, and Asterra's representatives, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting on behalf of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, falsely promised to make daily payments of $50,000.00 to cure existing defaults exceeding $1,000,000.00 and to remain current on future invoices.  Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley knew that their representations were false at the time they were made given the ongoing financial distress of the Counter-Defendant entities, and they intended to persuade Asterra through these intentional misrepresentations to resume shipments and forgo immediate termination of its business relationship with Counter-Defendants.

229.    Additionally, throughout the period from December 2024 through June 5, 2025, Counter-Defendant Bret Worley, as an agent and principal of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, falsely represented that he possessed significant political power through his personal relationship with Caroline Wiles to bolster Asterra's perception of Counter-Defendants' standing in the hemp industry and induce Asterra's trust and continued business engagement.

230.    Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting on behalf of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, also

intentionally concealed material facts, including the enterprise's chronic negative cash flow, its pattern of defaulting on obligations to other vendors through repeated debt-flipping cycles, and its conspiracy with foreign-based suppliers and importers to engage in customs fraud to evade tariffs, which artificially and unlawfully lowered costs to create an illusion of solvency. Counter-Defendants' fraudulent concealments occurred during the same negotiations and communications between February 2025 to June 5, 2025, during which Counter-Defendants had a duty to disclose such facts as they were material to Asterra's assessment of the risk of extending credit to Counter-Defendant MCN and Counter-Defendant MCB.

231. All such intentional representations and concealments by Counter-Defendants described in paragraphs 225 through 230 above were false when made, as Counter-Defendants were aware of their insolvency, mounting debts, and fraudulent practices, yet they persisted in these deceptions to induce Asterra to enter into contracts, extend credit, and supply products, thereby unlawfully enriching Counter-Defendants' enterprise at Asterra's expense.

232. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting on behalf of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH made the false representations and concealments described in paragraphs 225 through 230 above with the intent to deceive Asterra, knowing that Asterra would reasonably rely on these false representations and concealments in deciding whether to transact business with Counter-Defendants, as evidenced by Counter-Defendants' coordinated efforts to portray a façade of stability while systematically avoiding payments and using corporate shells under Counter-Defendant MCGH to shield assets, which is a pattern repeated with other victims as described herein.

233.     Asterra justifiably relied on Counter-Defendants' misrepresentations and concealments, as initial timely payments masked Counter-Defendants' fraud, and Asterra had no reasonable means to discover the deliberately concealed financial distress of the Counter-Defendant entities without access to the internal records of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH. Asterra's reliance was reasonable under the circumstances, given the industry norms of trust in preliminary dealings and Counter-Defendants' affirmative assurances of solvency.

234.     As a direct and proximate result of Counter-Defendants' fraud, Asterra suffered damages exceeding $1,600,000.00, along with operational disruptions and reputational harm.

## FOURTH COUNTERCLAIM
### (Abuse of Process—Against Counter-Defendants Bret Worley, MCB, and MCN)

235.     Paragraphs 1 through 234 above are hereby realleged and incorporated by reference as if fully set forth herein.

236.     Counter-Defendant MCB and Counter-Defendant MCN committed the tort of abuse of process by maliciously initiating this action against Asterra and causing civil process to be issued to Asterra, with the ulterior motive of intimidating Asterra, embarrassing its principals, damaging its business reputation, and deterring it from pursuing legitimate legal remedies for the substantial debts owed by Counter-Defendant MCB and Counter-Defendant MCN.

237.     On July 2, 2025, Asterra's counsel informed Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, as agents and principals of Counter-Defendant MCB and Counter-Defendant MCN, that Asterra intended to pursue civil litigation and restitution through potential criminal charges to recover the outstanding debt of more than $1,000,000.00 owed by Counter-Defendant MCB and Counter-Defendant MCN.

76

238.     In direct response to Asterra's statement that it intended to pursue legitimate legal action, and as a preemptive strike and an attempt to gain leverage, Counter-Defendant MCB and Counter-Defendant MCN filed their complaint in this action on July 7, 2025 (and caused a civil summons to be issued to Asterra on July 16, 2025), alleging baseless claims of breach of contract, tortious interference, misappropriation of trade secrets, and unfair and deceptive trade practices, all of which were based on false factual assertions made by Counter-Defendant Bret Worley under penalty of perjury, including, but not limited to, claims that Asterra was "limping along" prior to going into business with Counter-Defendant MCB and Counter-Defendant MCN, that Asterra failed to fulfill purchase orders or maintain accurate inventory, and that inventory was missing. The truth, which was known to Counter-Defendant Bret Worley at the time he signed the complaint in this action, is that Asterra was on an upward trajectory before transacting business with Counter-Defendant MCB and Counter-Defendant MCN, maintained impeccable service levels, accounted for all inventory, and received no complaints from Counter-Defendant MCB or Counter-Defendant MCN until after their defaults became undeniable.

239.     These false allegations made by Counter-Defendant MCB and Counter-Defendant MCN in complaint filed in this action were not advanced to legitimately resolve a dispute but rather to misuse the judicial process for improper purposes as evidenced by the complaint's inflammatory and false allegations, which were intended to publicly embarrass Asterra and its affiliates, coerce a reduction or forgiveness of the debt owed by Counter-Defendant MCB and Counter-Defendant MCN through intimidation, and dissuade Asterra from filing its own meritorious claims by imposing the burdens of defense, including substantial legal fees and reputational harm in the hemp industry.

240.    Counter-Defendant MCB and Counter-Defendant MCN, by and through Counter-Defendant Bret Worley, acted with a malicious ulterior motive in causing process to be issued to Asterra in this action, knowing that the allegations upon which the complaint was based were not well-grounded in fact, as evidenced by the absence of any pre-litigation cease-and-desist letters or genuine efforts to preserve purported trade secrets, which would have been expected if the claims were bona fide.

241.    Upon information and belief, after civil process was issued to Asterra, Counter-Defendant Bret Worley, acting on behalf of Counter-Defendant MCB and Counter-Defendant MCN, acted with a malicious ulterior purpose that is separate from and collateral to the normal and regular purpose of the process by circulating the complaint to many people in the hemp industry for the purpose of damaging Asterra's reputation in the industry.  Counter-Defendants abused the civil process issued in this action to publish the false statements made about Asterra in the complaint to Asterra's existing and potential business associates while taking advantage of the litigation privilege to shield themselves from a potential libel claim.

242.    After civil process was issued to Asterra, Counter-Defendant MCB and Counter-Defendant MCN, again acting with a malicious ulterior purpose that is separate from and collateral to the normal and regular purpose of the process, attempted to persuade Asterra to consent to an oppressive preliminary injunction without any legitimate legal or factual basis.  Counter-Defendants abused the civil process issued in this action in an effort to obtain a form of relief to which Counter-Defendants knew that they were not entitled.

243.    This willful abuse of process by Counter-Defendant MCB and Counter-Defendant MCN, by and through Counter-Defendant Bret Worley, constitutes irregular acts not proper in the

regular prosecution of such a proceeding, as it transforms the court's machinery into a tool for extortion and harassment rather than justice.

244. As a direct and proximate result of Counter-Defendant MCB and Counter-Defendant MCN's abuse of process, by and through Counter-Defendant Bret Worley, Asterra has suffered actual damages, including but not limited to attorneys' fees incurred in defending against the complaint in this action, reputational injury within the hemp industry stemming from the public airing of false allegations and accusations, and diversion of resources from business operations.

**FIFTH COUNTERCLAIM**
**(Veil Pierceing, Alter Ego, and Mere Instrumentality—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)**

245. Paragraphs 1 through 244 above are hereby realleged and incorporated by reference as if fully set forth herein.

246. Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH serve as mere alter egos and instrumentalities of Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, and each other, such that the corporate veils separating these entities from one another and from Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley must be pierced to prevent manifest injustice and to hold all Counter-Defendants jointly and severally liable for the obligations and wrongs alleged herein.

247. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley exercise complete domination and control over Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, treating these entities not as independent limited liability companies with their own wills and purposes but as interchangeable extensions of their personal ambitions, devoid of separate identities or autonomous decision-making processes.

79

248.     Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley dictate every significant operational and financial decision across Counter-Defendants' illicit enterprise, often without convening formal meetings, maintaining distinct records, or respecting the nominal boundaries between the entities, thereby rendering the limited liability companies mere puppets in service of their fraudulent scheme.

249.     Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH are chronically undercapitalized, operating not on genuine equity or retained earnings but on a precarious foundation of vendor credit and deferred obligations.

250.     Corporate formalities are flagrantly disregarded across Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, with the entities sharing a principal place of business in Golden, Colorado, overlapping officers and managers in Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, and upon information and belief, a complete absence of separate board meetings, shareholder resolutions, or accounting ledgers that would delineate their purported independence, resulting in an amorphous enterprise where Counter-Defendant MCB functions solely as a shell to procure credit for Counter-Defendant MCN's benefit under Counter-Defendant MCGH's overarching control.

251.     Funds and assets are routinely commingled among Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH without regard for corporate separateness, as illustrated by the seamless transfer of resources to evade creditors, the use of Counter-Defendant MCB as a conduit to access Asterra's $2.5-million credit line for Counter-Defendant MCN's resale operations, and Counter-Defendant Bret Worley's diversion of corporate funds in 2024 to purchase a Ferrari—ostensibly positioned as sales incentives but in truth for his personal extravagance—and fund private jet flights and cryptocurrency purchases for Counter-Defendant

80

Bret Worley's personal use and benefit, despite mounting unpaid debts to vendors, thereby depleting the entities' resources to the detriment of legitimate creditors and demonstrating the entities' role as personal conduits for Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's personal enrichment rather than bona fide businesses.

252.    Counter-Defendants have collectively used this dominated and intermingled corporate structure to perpetrate fraud and achieve inequitable results, including inducing Asterra to supply over $1,000,000.00 in products without payment, through misrepresentations of financial strength and good standing, concealing the enterprise's insolvency to secure ongoing credit, and shielding Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley from personal liability while they siphon funds and other assets for personal gain, such as the aforementioned Ferrari, private jet flights, and cryptocurrency purchases, all of which would be unjust to sustain considering the harm suffered by Asterra.

253.    Piercing the corporate veils of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH is essential to avert injustice, as maintaining the fiction of separateness would reward Counter-Defendants' abuse of the corporate form, allow Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley to escape accountability for their egregious wrongdoing, and facilitate the very misconduct that caused Asterra's damages.

254.    Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH must be disregarded, rendering Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley personally liable, and all Counter-Defendants jointly and severally accountable, for the counterclaims asserted by Asterra herein.

## SIXTH COUNTERCLAIM
### (Civil RICO Pursuant to 18 U.S.C. § 1961 *et seq.*—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

255.    Paragraphs 1 through 254 above are hereby realleged and incorporated by reference as if fully set forth herein.

256.    At all times relevant to the events giving rise to Asterra's counterclaim pursuant to 18 U.S.C. § 1961 *et seq.*, Asterra is and was a person within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

257.    At all times relevant to the events giving rise to Asterra's counterclaim pursuant to 18 U.S.C. § 1961 *et seq.*, Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH each were and are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

258.    Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, by conducting or participating, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  As a direct and proximate result of these violations, Asterra suffered concrete and quantifiable injury to its business and property, entitling Asterra to recover treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

Counter-Defendants' RICO Enterprise

259.    Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB collectively constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), comprising an association-in-fact of individuals and entities engaged in ongoing, coordinated activities with a common purpose, structure, and continuity.  This enterprise, which has existed since at least the second quarter of 2023 (though likely earlier) and persists to the present, functions as an integrated operation under the absolute domination and control of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, who serve as its architects and directing principals.

260.    The common purpose of this enterprise is to generate illicit pecuniary gain for Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, both personally and through their corporate shells, by defrauding customers, vendors, suppliers, employees, and regulators in the cannabinoid industry.  This is achieved through a systematic scheme of misrepresenting the financial solvency and creditworthiness of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH to induce extensions of credit and supplies of valuable products; accepting and reselling those products without payment; concealing the enterprise's chronic insolvency and negative cash flow; evading liabilities through inter-entity asset transfers and undercapitalization; and intimidating insiders to prevent exposure of the enterprise's fraud, all while exploiting regulatory ambiguities in the hemp sector to maintain an artificial façade of legitimacy.

261.    The enterprise exhibits a clear hierarchical structure and division of roles, with Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley at the apex, exercising unchecked authority over all significant decisions involving Counter-Defendant MCB, Counter-Defendant

83

MCN, and Counter-Defendant MCGH. Counter-Defendant Bret Worley, as the public-facing leader, leverages his purported industry influence and fabricated political connections to initiate victim contacts, negotiate deceptive agreements, and orchestrate misrepresentations that conceal the true nature of the enterprise's activities. Counter-Defendant Jeff Worley, as the financial overseer, manipulates accounting records, fabricates payment assurances, intimidates and extorts employees, and directs fund commingling to shield assets from creditors. Counter-Defendant MCGH serves as the parent holding entity, facilitating asset protection and inter-entity transfers. Counter-Defendant MCN operates as the core resale arm, submitting purchase orders and reselling fraudulently obtained goods to generate revenue that is diverted away from creditors. Counter-Defendant MCB functions as a specialized shell entity, created expressly to interface with new victims like Asterra, secure credit lines under false pretenses, conceal the enterprise's violation of its obligations under the Assurance by misrepresenting that its operations take place in North Carolina, and funnel benefits to the broader enterprise without independent capitalization or operations.

262. This enterprise is distinct from its individual participants and from the pattern of racketeering activity itself, as it maintains an ongoing organizational framework evidenced by shared resources (including a common principal place of business in Golden, Colorado, overlapping personnel, and unified branding); routine disregard for corporate formalities (such as commingled funds, absent board meetings, and indistinguishable accounting); and continuity beyond any single fraudulent transaction, as demonstrated by its repeated application of the same illicit scheme against multiple victims nationwide over time, including but not limited to Asterra, IAH Oregon, JL Processing, Atlantic Global Supply, The Southern Group, BioVivo Science, FM

Labs, Hemp Depot, Low Gravity, Inov8 Distribution, BioPure Healing Products, FlowBlend, and SM Experience.

Counter-Defendants' Pattern of Racketeering Activity

263. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, as persons distinct from the enterprise under 18 U.S.C. § 1962(c), conducted or participated, directly or indirectly, in the conduct of Counter-Defendants' enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5). This pattern consists of at least two (and in fact numerous) related predicate acts of racketeering committed within the past ten years, exhibiting both relatedness and continuity sufficient to pose a threat of ongoing criminal conduct.

264. The predicate acts are related by their common participants (Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB); common victims (vendors, suppliers, and customers in the hemp industry defrauded through material misrepresentations and credit exploitation); common methods (misrepresentations of solvency, false payment promises, falsification of bank transfer confirmations and COAs, and asset concealment); and common purpose (enriching Counter-Defendants' enterprise at the expense of customers and creditors, such as Asterra, while sustaining its exploitative arbitrage model). These acts form a cohesive scheme rather than isolated events, as they follow a consistent modus operandi—initial trust-building through timely payments and order fulfillment, escalation to debt accumulation, deployment of stalling tactics (e.g., false statements that payments were made, feigned confusion about why payments that were never made were not received by victims, and endless inquiries intended to do nothing more than gaslight victims and delay collection attempts), and eventual default, often funded by new victims in a Ponzi-like cycle.

85

265.    The pattern demonstrates closed-ended continuity through a series of related predicate acts spanning a substantial period—from at least the second quarter of 2023 through June 2025 (over two years)—involving multiple victims in different states and multiple interstate schemes. It also exhibits open-ended continuity, as Counter-Defendants' enterprise's survival depends on repeating these fraudulent activities against new suppliers and customers to offset chronic negative cash flow, posing an inherent threat of recurrence absent intervention, consistent with Counter-Defendants' ongoing criminal behavior and lack of legitimate profitability.

<u>Predicate Acts of Counter-Defendants</u>

266.    The predicate acts committed by Counter-Defendants within the past four years include, but are not limited to, the following indictable offenses under 18 U.S.C. § 1961(1):

   a.    <u>Mail fraud in violation of 18 U.S.C. § 1341</u>: The allegations of paragraph 194(f) above are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH, devised and participated in a scheme to defraud vendors, including Asterra, of money and property by means of false pretenses, representations, and promises transmitted through the United States Postal Service or private commercial interstate carriers, such as UPS.  For example, from February 2025 through June 2025, Counter-Defendants caused purchase orders and related documents containing false assurances of payment and solvency to be mailed or shipped interstate from Counter-Defendants' principal office in Colorado to Asterra in North Carolina, inducing Asterra to ship over $1,000,000.00 in products that Counter-Defendants accepted and resold without remitting payment to

86

Asterra. Similarly, Counter-Defendants mailed or caused to be mailed deceptive packages and communications to other victims, such as JL Processing (as more specifically described in paragraph 194(f)(i) above, the allegations of which are realleged and incorporated by reference as if fully set forth herein), SM Experience (as more specifically described in paragraph 194(f)(ii) above, the allegations of which are realleged and incorporated by reference as if fully set forth herein), recipients of fraudulent marketing emails (as more specifically described in paragraph 194(f)(iii) above, the allegations of which are realleged and incorporated by reference as if fully set forth herein), falsely promising payment plans they never intended to honor, all to obtain funds that were not earned and goods on credit to perpetuate Counter-Defendants' enterprise's debt-flipping cycle. Counter-Defendants also mailed or caused to be mailed to customers and consumers packages containing deceptive and non-compliant hemp products (as more specifically described in paragraph 194(f)(iv) above, the allegations of which are realleged and incorporated by reference as if fully set forth herein), causing significant reputational harm to Asterra and other compliant suppliers within the hemp industry.

b.   Wire fraud in violation of 18 U.S.C. § 1343: The allegations of paragraph 194(g) are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, transmitted or caused to be transmitted by wire in interstate commerce writings, signals, and sounds for the purpose of executing a

87

scheme to defraud Asterra and others of money and property. Examples of acts in furtherance of Counter-Defendants' scheme to defraud include: (i) emails and telephone calls from December 2024 through June 5, 2025, misrepresenting the enterprise's financial stability to induce Asterra's execution of the Agreement and extension of a $2.5-million credit line to Counter-Defendant MCB; (ii) the June 5, 2025 conference call falsely promising daily $50,000.00 payments to cure defaults, transmitted via interstate wires, which prompted Asterra to resume shipments for Counter-Defendant MCN and Counter-Defendant MCN; (iii) the June 5, 2025 email from Counter-Defendant Jeff Worley immediately following the conference call referenced in subparagraph (ii) above reiterating the falsely promise to make daily $50,000.00 payments to cure defaults, upon which Asterra relied in its decision to resume shipments for Counter-Defendant MCN and Counter-Defendant MCN; (iv) false statements emailed to Asterra and other vendors regarding making payments by wire transfer claiming payments had been initiated when none had; (v) marketing emails sent to potential customers to fraudulently induce recipients to purchase Counter-Defendants' products through the misappropriation of Asterra's business address and falsification of COAs; (vi) use of Counter-Defendant MCN's website to defraud customers and generate revenue from payments made for orders placed online that Counter-Defendants never intended to fulfill; (vii) electronic communications with importers like Hau Processing and foreign suppliers like Shanghai Minstar Chemical Co. Ltd. and Santobiotec to facilitate tariff evasion and thereafter wiring funds interstate and internationally to underprice goods and sustain the illusion of solvency; (vi)

88

interstate electronic communications, online marketing and sales of products in interstate commerce, and transmission of payments through Counter-Defendants' online payment processing platform through interstate wires to market, sell, and distribute non-compliant and deceptive hemp products (which Counter-Defendants fraudulently disguised as compliant hemp) in violation of federal and Pennsylvania state law, causing significant reputational injury to Asterra and other compliant suppliers in the hemp industry.

c.  Bank fraud in violation of 18 U.S.C. § 1344: The allegations of paragraph 194(h) are realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCN, knowingly executed a scheme to defraud First Citizens Bank & Trust Company, a federally insured financial institution, by obtaining a $1-million line of credit through false representations and concealments of Counter-Defendant MCN's true financial condition, including its negative cash flow and vendor defaults, mirroring the deceptions to obtain credit from Asterra. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCN, also knowingly executed a scheme to defraud holders of accounts at federally-insured financial institutions to unlawfully obtain and convert to Counter-Defendants' own use the funds under the custody and control of these federally-insured financial institutions, as described in paragraph 194(h) above. This fraud enabled the enterprise to access funds used to partially pay prior victims (e.g., $250,000.00 to

89

Atlantic Global Supply in or around May 2025) while accumulating new debts with Asterra and perpetuating the fraudulent debt-flipping cycle.

d.  <u>Interference with commerce by extortion in violation of 18 U.S.C. § 1951</u>: The allegations of paragraph 194(b), (d), and (i) are realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, obtained property in the form of services and silence from a former Counter-Defendant MCN employee to which they had no lawful claim, by wrongful use of threatened force or fear, affecting interstate commerce. In or around May 2025, Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley threatened to falsely report a probation violation by this former employee unless the employee returned to work and issued a public apology, coercing his compliance to prevent defections that could expose Counter-Defendants' enterprise's fraud and disrupt its nationwide arbitrage business model.

e.  <u>Money laundering in violation of 18 U.S.C. § 1956</u>: The allegations of paragraph 194(f), (g), (h), and (j) are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, conducted financial transactions involving proceeds of unlawful activities (e.g., fraudulently obtained goods resold for profit, fraudulently obtained funds transferred to Counter-Defendants for purchase orders that Counter-Defendants never intended to fulfill) with the intent

90

to promote further unlawful activity and conceal the source of those illicit proceeds. For example, revenues from reselling Asterra's products from February 2025 through June 2025, for which Counter-Defendant MCN and Counter-Defendant MCB, under the direction of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, were commingled across Counter-Defendant entities and used to make partial payments to prior victims (e.g., Atlantic Global Supply) or diverted for personal gain (e.g., Counter-Defendant Bret Worley's 2024 Ferrari purchase and cryptocurrency purchases for his personal benefit), knowing that these transactions involved criminally derived property exceeding $10,000.00 and affecting interstate commerce.

f. <u>Use of interstate facilities in aid of racketeering in violation of 18 U.S.C. § 1952</u>: The allegations of paragraph 194(a)-(k) are hereby realleged and incorporated by reference as if fully set forth herein. Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as agents and principals of Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, used interstate facilities (e.g., telephones, emails, websites, online payment platforms, and travel across state lines) to promote, manage, and facilitate unlawful activities, including the fraud and extortion described above. By way of example, interstate communications and shipments, made and/or caused to be made by Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, were used to execute the scheme against Asterra, with subsequent acts (e.g., nationwide resales) furthering Counter-Defendants' racketeering activity as described herein above.

91

267.    As a direct and proximate result of Counter-Defendants' violations of 18 U.S.C. § 1962(c) and (d) described herein above, Asterra suffered concrete injury to its business and property, including lost revenue exceeding $1,600,000.00 (comprising unpaid principal of $1,577,518.17 plus accrued interest), operational disruptions (e.g., diversion of resources to debt collection and defense against the frivolous complaint filed by Counter-Defendant MCB and Counter-Defendant MCN), reduced employee compensation, and reputational harm in the hemp industry. These injuries were foreseeable and proximately caused by Counter-Defendants' racketeering activity described herein above, as Asterra's reliance on the misrepresentations of Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, which were part of their pattern of criminal conduct and corrupt business activities, led directly to Asterra's extension of credit to Counter-Defendant MCN and Counter-Defendant MCB and supply of goods to Counter-Defendants without payment.

268.    Pursuant to 18 U.S.C. § 1964(c), Asterra is entitled to recover threefold its actual damages, plus costs and reasonable attorneys' fees, proximately resulting from injuries sustained from Counter-Defendants' violations of 18 U.S.C. § 1962(c) and (d).

## SEVENTH COUNTERCLAIM
### (Conspiracy to Violate RICO in Violation of 18 U.S.C. § 1962(d)—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

269.    Paragraphs 1 through 268 above are hereby realleged and incorporated by reference as if fully set forth herein.

270.    Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB have each unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together and with others

92

to violate 18 U.S.C. § 1962(c) as described in paragraphs 255 through 268 above, in violation of 18 U.S.C. § 1962(d).

271.  Upon information and belief, Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB each knew that they were engaged in a conspiracy to commit the predicate acts described in paragraph 266(a)-(f) above, and they knew that the predicate acts constituted racketeering activity and that the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. Counter-Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) and (d).

272.  Upon information and belief, Counter-Defendant Bret Worley, Counter-Defendant Jeff Worley, Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of Counter-Defendants' RICO enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

273.  Counter-Defendants' conspiracy to violate 18 U.S.C. § 1962(c) and (d) was formed with the specific intent to advance their illicit enterprise's fraudulent objectives, and it proximately caused concrete injury to Asterra's business and property, entitling Asterra to recover treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

274.  The conspiracy between Counter-Defendants to violate 18 U.S.C. § 1962(c) and (d) began no later than the second quarter of 2023, when Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, leveraging their dominant control over Counter-Defendant MCGH, Counter-Defendant MCN, and Counter-Defendant MCB, agreed to orchestrate a scheme to defraud customers, vendors, and suppliers, like Asterra, by misrepresenting the Counter-

93

Defendants' enterprise's solvency to secure credit and goods without payment. This agreement is evidenced by their coordinated actions, including the creation of Counter-Defendant MCB as an undercapitalized shell entity to interface with Asterra; the joint drafting and execution of the Agreement on May 2, 2025, with credit terms drafted by Counter-Defendant Jeff Worley that Counter-Defendants never intended to honor and, in fact, intended to exploit; and the unified deployment of deceptive tactics, such as false payment assurances during the June 5, 2025 conference call and subsequent email described above, all of which were fraudulently designed to induce ongoing shipments from Asterra for the benefit of Counter-Defendants while concealing Counter-Defendants' enterprise's insolvency.

275. Each Counter-Defendant knowingly and willfully joined and participated in the conspiracy, understanding its unlawful objectives and agreeing to facilitate the pattern of racketeering activity. Counter-Defendant Bret Worley agreed to serve as the enterprise's public emissary, fabricating political influence and solvency claims to lure victims. Counter-Defendant Jeff Worley agreed to manipulate financial records and inter-entity transfers to evade detection and shield assets from victims and other creditors. Counter-Defendant MCGH agreed to act as the conduit for fund commingling and asset protection. Counter-Defendant MCN agreed to submit purchase orders and resell fraudulently obtained goods, retaining proceeds to fuel the debt-flipping and evasion cycle. Counter-Defendant MCB agreed to pose as a creditworthy entity to secure the $2.5-million line of credit from Asterra for the benefit of the other Counter-Defendants without any intent to repay the credit extended by Asterra. This mutual agreement is inferred from Counter-Defendants' interdependent roles, shared resources, and consistent pattern of unlawful conduct across multiple victims nationwide, including the Ponzi-like use of new vendor

94

funds (e.g., from Asterra) to partially placate prior suppliers (e.g., Atlantic Global Supply in May 2025).

276.     Counter-Defendants knew or should have known that their conspiracy involved a pattern of racketeering activity, as the predicate acts—mail fraud, wire fraud, financial institution fraud, extortion, money laundering, and use of interstate facilities in aid of racketeering as described in paragraph 266(a)-(f) above—were indictable offenses under federal law, and they deliberately structured their enterprise to repeat these acts against multiple victims to ensure its continuity.

277.     As a direct and proximate result of Counter-Defendants' conspiracy to violate 18 U.S.C. § 1962(c) and (d), Asterra suffered tangible injury to its business and property, including unpaid invoices exceeding $1,600,000.00 (principal of $1,577,518.17 plus interest), forced diversion of resources to mitigate losses, reduced operational capacity, and reputational damage in the cannabinoid industry.  These injuries were the foreseeable and intended consequences of Counter-Defendants' conspiracy to violate 18 U.S.C. § 1962(c) and (d), flowing directly from Asterra's reasonable and detrimental reliance on the conspirators' fraudulent acts.

278.     Asterra is entitled to recover threefold its actual damages, plus costs and reasonable attorneys' fees, proximately resulting from injuries sustained from Counter-Defendants' violations of 18 U.S.C. § 1962(c) and (d).

## EIGHTH COUNTERCLAIM
### (Civil RICO Pursuant to N.C. Gen. Stat. § 75D-1 *et seq.*—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

279.     Paragraphs 1 through 278 above are hereby realleged and incorporated by reference as if fully set forth herein.

280.     Counter-Defendant MCB, Counter-Defendant MCN, Counter-Defendant MCGH, Counter-Defendant Bret Worley, and Counter-Defendant Jeff Worley violated North Carolina's

Racketeer Influenced and Corrupt Organizations Act, N.C. Gen. Stat. § 75D-1 *et seq.*, by conducting the affairs of an enterprise through a pattern of racketeering activity that proximately caused injury to Asterra's business and property.

281.    Counter-Defendants collectively constitute an enterprise within the meaning of N.C. Gen. Stat. § 75D-3(a), consisting of an association of individuals and entities, including Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley as the controlling principals, Counter-Defendant MCN as the primary operational arm for distribution and resale, Counter-Defendant MCB as the shell interface for credit procurement, and Counter-Defendant MCGH as the overarching holding company facilitating asset shielding and fund transfers.

282.    Counter-Defendants are all united by the common purpose of defrauding customers, vendors, and suppliers, such as Asterra, through direct and indirect misrepresentations of solvency, non-payment for goods received, intimidation of insiders to prevent exposure, and exploitation of corporate forms to evade liability, with Counter-Defendants' enterprise exhibiting an ongoing scheme of organization, continuity, and structure since at least the second quarter of 2023 (though likely earlier), and persisting through the present as evidenced by coordinated actions across entities in negotiations, communications, and debt avoidance.

283.    Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley direct this illicit enterprise with absolute authority, utilizing Counter-Defendant MCB, Counter-Defendant MCN, and Counter-Defendant MCGH not as independent businesses but as integrated tools for their fraudulent objectives, including, but not limited to, the commingling of funds and avoidance of payment obligations to obscure insolvency, the issuance of false assurances to secure credit, and the diversion of resources for personal gain, demonstrating Counter-Defendants' enterprise's hierarchical control and lack of legitimate separateness.

284.     Counter-Defendants conducted the enterprise's affairs through a pattern of racketeering activity, as defined in N.C. Gen. Stat. § 75D-3(b) and (c), consisting of multiple predicate acts committed within a four-year period that are related by, among other things, their shared method of deceiving vendors to obtain goods without payment and consistent and continuous in their repetition across multiple victims, posing an ongoing threat of recurrence because the illicit enterprise relies on such tactics for its survival.  The predicate acts of Counter-Defendants are described in detail in paragraph 194(a)-(k) above.

285.     These predicate acts of Counter-Defendants are related, as they share common methods of deception, concealment, and coercion to obtain economic advantages without legitimate exchange, common victims in the form of customers, vendors, suppliers, and employees in the cannabinoid supply chain, and a common purpose of enriching Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley through Counter-Defendants' illicit enterprise at the expense of others.  The predicate acts also exhibit closed-ended continuity through repetition over more than one year from the second quarter of 2023 (though possibly earlier) through June 2025 across multiple instances, and open-ended continuity as an ongoing threat, considering the enterprise of Counter-Defendants depends on such unlawful tactics for its survival.

286.     As a direct and proximate result of Counter-Defendants operating the enterprise through this pattern of racketeering activity, Asterra suffered injury to its business and property, including unpaid invoices totaling $1,577,518.17, plus $30,988.96 in accrued interest through July 25, 2025, operational disruptions, diversion of executive time from core business pursuits, and reputational harm in an industry wary of unreliable partners, which are all foreseeable consequences of Counter-Defendants' unlawful scheme.

287.    Asterra is entitled to recover from Counter-Defendants treble damages, costs, and reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75D-8(c), as Asterra's injuries flow directly from Counter-Defendants' racketeering pattern orchestrated with willful intent to defraud.

288.    Asterra certifies that it has, contemporaneously with the filing of this amended counterclaim, notified the Attorney General of North Carolina of the commencement of this action as required by N.C. Gen. Stat. § 75D-8(c).

## NINTH COUNTERCLAIM
### (Civil Conspiracy—Against Counter-Defendants Bret Worley, Jeff Worley, MCB, MCN, and MCGH)

289.    Paragraphs 1 through 288 above are hereby realleged and incorporated by reference as if fully set forth herein.

290.    Counter-Defendant MCB, Counter-Defendant MCN, Counter-Defendant MCGH, Counter-Defendant Bret Worley, and Counter-Defendant Jeff Worley engaged in a civil conspiracy to defraud Asterra and other creditors by agreeing to misrepresent the enterprise's financial stability, induce extensions of credit and supply of goods without intent to pay, and exploit the limited liability structure of the entity Counter-Defendants to evade liability, thereby committing unlawful acts in furtherance of their conspiracy and causing substantial harm to Asterra's business.

291.    The existence of this civil conspiracy is evidenced by Counter-Defendants' coordinated conduct beginning in or around December 2024, when Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, acting as principals of Counter-Defendant MCB, Counter-Defendant MCN, Counter-Defendant MCGH, initiated negotiations with Asterra and falsely portrayed Counter-Defendants' enterprise as financially sound, a unified misrepresentation that concealed Counter-Defendant MCN's negative cash flow and served the common purpose of

98

securing a $2.5-million credit line from Asterra, pursuant to the Agreement that Counter-Defendants, upon information and belief, collectively intended to breach from the outset to obtain materials from Asterra without payment.

292.    Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley, directing the actions of Counter-Defendant MCB, Counter-Defendant MCN, Counter-Defendant MCGH as an integrated unit, agreed to commit a series of overt acts, including the submission of purchase orders by Counter-Defendant MCN for raw materials that Asterra shipped directly to Counter-Defendant MCN, with the understanding that Counter-Defendant MCN would remit costs plus commissions, only for Counter-Defendants to retain all sales proceeds without compensating Asterra, thereby enriching Counter-Defendants' illicit enterprise at Asterra's expense in violation of N.C. Gen. Stat. § 25-2-709 and common law principles of contract.

293.    Counter-Defendants' civil conspiracy also consisted of extortionate practices to maintain operational secrecy, such as Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley's threats to make a false report of a probation violation by a former employee unless he returned to work for Counter-Defendant MCN and publicly apologized for his departure. These actions were taken by Counter-Defendant Bret Worley and Counter-Defendant Jeff Worley on behalf of Counter-Defendants' enterprise to prevent the loss of a key salesperson and disclosures that could expose and unravel their fraudulent activities.

294.    Asterra suffered damages exceeding $1,600,00.00 as a direct and proximate result of the unlawful acts of Counter-Defendants in furtherance of their civil conspiracy.

295.    Counter-Defendants are jointly and severally liable to Asterra for damages proximately caused by the unlawful acts of Counter-Defendants in furtherance of their civil conspiracy.

## PUNITIVE DAMAGES

296.     Paragraphs 1 through 295 above are hereby realleged and incorporated by reference as if fully set forth herein.

297.     Counter-Defendants engaged in malicious and willful and wanton conduct that was intended to interfere with, and did interfere with, the rights of Asterra.

298.     The fraudulent actions of Counter-Defendants as described herein above were malicious, willful and wanton, atrocious, reprehensible, and with reckless indifference to the rights and wellbeing of Asterra.

299.     Asterra is entitled to recover punitive damages from Counter-Defendants in connection with its claim for fraud in accordance with N.C. Gen. Stat. § 1D-15.

## PRAYER FOR RELIEF

        WHEREFORE, Asterra prays that this Court grant it the following relief:

1.     Deny the relief requested by Plaintiff/Counter-Defendant MCB and Plaintiff/Counter-Defendant MCN;

2.     Award Asterra damages for breach of contract in the principal amount of $1,577,518.17, together with pre-judgment interest from the date of each breach and post-judgment interest at the applicable rate, against Counter-Defendants, jointly and severally;

3.     Award Asterra treble damages against Counter-Defendants, jointly and severally, on its claim for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1;

4.     Award Asterra compensatory damages against Counter-Defendants, jointly and severally, on its claim for fraud;

5.     Award Asterra compensatory damages against Counter-Defendants, jointly and severally, on its claim for abuse of process;

6.      Award Asterra treble damages against Counter-Defendants, jointly and severally, on its claim for civil racketeering pursuant to 18 U.S.C. § 1964(c) and N.C. Gen. Stat. § 75D-8(c);

7.      Award Asterra punitive damages in connection with its claim for fraud to punish Counter-Defendants;

8.      Allow a jury trial on all issues so triable;

9.      Order Counter-Defendants to pay the reasonable attorneys' fees incurred by Asterra as a result of Counter-Defendants' material breach of the Agreement, abuse of process, unfair and deceptive trade practices, and racketeering acts resulting in injury to Asterra;

10.     Tax the costs of this action against Counter-Defendants;

11.     Grant Asterra such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 5th day of September, 2025.

**PARKER BRYAN BRITT
TANNER & JENKINS, P.L.L.C.**

ATTORNEYS FOR ASTERRA LABS LLC
AND RISE CAPITAL LLC

 /s/ Alicia Jurney
_____
Alicia Jurney
N.C. State Bar # 37133
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: alicia@parkerbryanlaw.com

 /s/ Amy L. Britt
_____
Amy L. Britt
N.C. State Bar # 33835
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: amy@parkerbryanlaw.com

102

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025 a copy of the foregoing Asterra Labs LLC's Amended Answer and Counterclaims was served upon all other parties in this cause via CM/ECF as follows:

Brandon S. Neuman
Nelson Mullins Riley & Scarborough, L.L.P.
brandon.neuman@nelsonmullins.com
*Attorney for Defendant Ryan McConnell*

Nathaniel J. Pencook
Nelson Mullins Riley & Scarborough, L.L.P.
nate.pencook@nelsonmullins.com
*Attorney for Defendant Ryan McConnell*

K. Alan Parry
Parry Law, P.L.L.C.
kap@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants*

Amos Tyndall
Parry Law, P.L.L.C.
agt@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants*

Jonah Garson
Parry Law, P.L.L.C.
jag@parryfirm.com
*Attorney for Plaintiffs/Counter-Defendants*

**PARKER BRYAN BRITT
TANNER & JENKINS, P.L.L.C.**

ATTORNEYS FOR ASTERRA LABS LLC
AND RISE CAPITAL LLC

/s/ Alicia Jurney
Alicia Jurney
N.C. State Bar # 37133
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: alicia@parkerbryanlaw.com