IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:25-CV-400-BO

| | |
|---|---|
| MC BOTANICALS LLC and<br>MC NUTRACEUTICALS LLC, a<br>Texas limited liability company,<br>　　　　Plaintiffs,<br><br>v.<br><br>ASTERRA LABS LLC,<br>RISE CAPITAL LLC, and<br>RYAN MCCONNELL,<br>　　　　Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RYAN MCCONNELL'S PARTIAL MOTION TO DISMISS** |
| ASTERRA LABS LLC,<br>　　　　Counter-Plaintiff,<br><br>v.<br><br>BRET C. WORLEY,<br>JEFFREY A. WORLEY,<br>MC BOTANICALS LLC,<br>MC NUTRACEUTICALS LLC, a<br>Colorado limited liability company,<br>MC NUTRACEUTICALS LLC, a<br>Texas limited liability company,<br>and<br>MC GLOBAL HOLDINGS LLC,<br>　　　　Counter-Defendants. | |

## INTRODUCTION

In this dispute principally between Plaintiffs MC Botanicals, LLC ("MCB") and

MC Nutraceuticals, LLC ("MCN"; together with MCB, "MC") and Defendant Asterra

Labs, LLC ("Asterra"), Defendant Ryan McConnell ("McConnell") is unfortunately a

target for collateral attack. MC has raised stray claims against McConnell for breach

of contract, unjust enrichment, state and federal claims for misappropriation of trade secrets, and unfair and deceptive trade practices ("UDTP"). These claims are unsupported by law or the well-pled allegations of the Complaint. In particular, the non-solicitation clause on which MC's breach of contract claim relies is brazenly overbroad, purporting to prevent contacting or entering into any agreements with any current or former customer of MCN or any of its affiliates. Moreover, the UDTP claim, aside from not sufficiently alleging unfair or deceptive acts, involves an employment dispute that is not "in or affecting commerce" and thus not cognizable. McConnell respectfully requests that the Court dismiss the breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and UDTP claims against him in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS

Plaintiffs MC Nutraceuticals LLC and MC Botanicals LLC ("Plaintiffs") allege that Defendant Ryan McConnell ("McConnell") was formerly employed by MCN and later joined Defendant Asterra Labs LLC ("Asterra"), allegedly misusing confidential information and soliciting customers in violation of post-employment restrictions. However, the Complaint itself reveals that McConnell's involvement with Asterra was initially authorized and directed by Plaintiffs, and the allegations fail to plausibly establish any actionable misconduct.

In February 2025, MCN sent McConnell, then its Senior Account Manager, to North Carolina to assist Asterra with operational support due to Asterra's alleged performance failures under a Manufacturing and Supply Agreement with MC

2
Case 5:25-cv-00400-BO-KS    Document 32    Filed 10/14/25    Page 2 of 16

Botanicals (Compl. ¶¶ 34-35). Although McConnell's assignment was initially expected to last only a week or two, it extended for several months allegedly due to ongoing issues at Asterra, and McConnell remained on MCN's payroll throughout this period (Compl. ¶¶ 36-38). Plaintiffs allege that Asterra requested McConnell's continued assistance, and MC agreed to keep him embedded in Asterra's operations (Compl. ¶ 38). These facts demonstrate that McConnell's presence at Asterra was not only known to Plaintiffs but also actively facilitated by them.

Plaintiffs go on to allege "upon information and belief" that Asterra and Rise Capital "approached McConnell about leaving MC Nutraceuticals to join Asterra permanently and lead the company's sales efforts," because they "understood how critical Mr. McConnell could be in essentially taking MC's business for themselves, and that Mr. McConnell had access to MC's valuable trade secrets and confidential and proprietary information." (Compl. ¶ 70). Plaintiffs further allege that by nature of his position with MCN, "McConnell had almost complete access to MC's sensitive, confidential, proprietary information related to the cannabinoid industry," specifically including customer and vendor lists. (Compl. ¶¶ 71-72). However, the Complaint does not allege that McConnell accessed or used this information after his resignation, nor does it identify any specific act of misappropriation. The only concrete allegation is that McConnell allegedly solicited one customer, Golden Hour Hemp, after leaving MC Nutraceuticals (Compl. ¶¶ 77(b), 77(d)), but no detail is provided regarding the nature, timing, or content of the alleged solicitation.

Plaintiffs also allege that McConnell was subject to a Mutual Confidentiality Agreement containing non-disclosure and non-solicitation provisions (Compl. ¶¶ 72-75). While Plaintiffs allege that "[w]ith respect to non-solicitation, the McConnell Employment Agreement provides that Mr. McConnell may not directly or indirectly solicit MC customers," that summation is wholly inaccurate. (Compl. ¶ 75). Instead, what MC labels the "McConnell Employment Agreement," which is actually entitled "Mutual Confidentiality Agreement," reads as follows:

> **5. NON-CIRCUMVENT**
>
> In the event **McConnell** ceases to be employed by MCN for any reason, they may not contact or enter into any agreement directly, or through its agents or subsidiaries or by any other means, with any individual or entity that was a Customer of MCN or its affiliates. The direct contact of such third parties by **McConnell**, without the written consent of MCN shall be a material breach of this agreement.

(McConnell Employment Agreement, ¶ 5). In short, the Employment Agreement does not prohibit non-solicitation of customers, but rather overbroadly prohibits all contracts or contact with any customer. Notably, Plaintiffs do not allege that McConnell was prohibited from accepting employment with a competitor.

Finally, the Complaint treats McConnell as an agent of Asterra and does not allege that he acted independently or outside the scope of his employment with Asterra (Compl. ¶¶ 70, 77). The claims against McConnell are duplicative of those asserted against Asterra and Rise Capital, and the Complaint fails to distinguish McConnell's conduct in a way that would support individual liability.

## STANDARD OF REVIEW

A complaint is subject to dismissal under Rule 12(b)(6) when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice to state a claim. *Id.* at 663. While the Court will accept the facts alleged by Plaintiffs in their Complaint and draw reasonable inferences in favor of the nonmovant, the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may "consider a 'written instrument' attached as an exhibit to a pleading, *see* Fed. R. Civ. P. 10(c), 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Brimer v. MDElite Laser & Aesthetic*, LLC, 770 F. Supp. 3d 876, 881 (E.D.N.C. 2025) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)).

## ARGUMENT

### I. MC Fails to State a Cognizable Claim for Breach of Contract.

MC alleges a breach of contract claim based on a violation of McConnell's alleged non-solicitation and confidentiality obligations. This claim fails for several reasons.

### A. For purposes of this Motion, Texas Law applies to this agreement.

A federal court sitting in diversity jurisdiction applies the choice-of-law rules of the forum state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In North Carolina, contract claims are "governed by the rule of *lex loci contractus* [or, where the contract was formed], *see Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 261 S.E.2d 655, 656 (1980), and choice of law in torts cases is governed by the rule of *lex loci delicti* [or, where the injury occurred] *see Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849, 854 (1988)." *Brimer v. MDElite Laser & Aesthetic, LLC*, 770 F. Supp. 3d 876, 885 (E.D.N.C. 2025) (quoting *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 280 (4th Cir. 2014)). North Carolina law recognizes the enforceability of choice of law clauses. *See, e.g.*, *Park v. Merrill Lynch*, 159 N.C. App. 120, 123, 582 S.E.2d 375, 378 (2003) (citing *Perkins v. CCH Computax, Inc.,* 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992)). Here, the Agreement contains a choice-of-law clause that selects Texas substantive law. (Agreement ¶ 7(a)).[1] While facts outside the face of the Complaint may show McConnell was a resident of another state that may impact the choice of law clause, for purposes of this Motion, McConnell assumes that Texas law applies based on the fact of the Complaint.

---

[1] McConnell reserves the right to argue that either North Carolina or another state's law govern this dispute depending on the evidence to be developed in this matter. However, at this stage, McConnell takes the allegations of the Complaint as true and looks only to the fact of the Agreement.

## B. The Non-Circumvent Clause Is Unenforceable.

On its face, the Non-Circumvent clause that MC relies upon is hopelessly overbroad. Under Texas law, "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code Ann. § 15.05. Customer non-solicitation covenants are restraints on trade subject to the same criteria for enforceability as non-competition covenants pursuant to Tex. Bus. & Com. Code § 15.50. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (citations omitted). "The enforceability of a covenant not to compete is a question of law." *Byun v. Hong*, 641 S.W.3d 821, 826 (Tex. App. 2022).

The core inquiry in interpreting a restrictive covenant under Texas law is whether the covenant "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. § 15.50(a). "Unreasonable limitations on employees' abilities to change employers or solicit clients or former co-employees, i.e., compete against their former employers, could hinder legitimate competition between businesses and the mobility of skilled employees." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011).

Here, the Non-Circumvent relied upon for the breach of contract claim is massively overbroad. While MC's allegations attempt to water down the non-solicitation language in the Agreement, the non-solicitation clause does not simply

prohibit McConnell to "directly or indirectly solicit MC customers." Compl. ¶ 75. Instead, the clause, titled "Non-Circumvent," provides as follows:

> "In the event McConnell ceases to be employed by MCN for any reason, they may not contact or enter into any agreement directly, or through its agents or subsidiaries or by any other means, with any individual or entity that was a Customer of MCN or its affiliates. The direct contact of such third parties by McConnell, without the written consent of MCN shall be a material breach of this agreement."

(Employment Agreement ¶ 5). The operative language of this clause indicates its unreasonable overbreadth. The clause applies to "any individual or entity that was a Customer of MCN or its affiliates." This language is problematic for at least the following reasons:

(1) The Non-Circumvent applies for customers of not just MCN (the entity that employed McConnell), but also MCN's affiliates for whom McConnell did not work. This is not a legitimate business interest of MCN's.

(2) Since the clause applies to anyone who "was a Customer," this applies not only to existing customers, but also former customers with whom MCN or its affiliates do business.

(3) This clause does not apply only to customers with whom McConnell had dealings while employed by MCN, but any customer or former customer of MCN or its affiliates. MCN has no legitimate business interest in protecting non-existent relationships with former customers that it no longer services.

Clauses like this one with such overbroad restrictions have been found unenforceable under Texas law. *See Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App. 2004) (holding that covenants that "do not limit the prohibitions

just to customers with whom [an employee] had dealings while he was employed" are "over broad and are unreasonable restraints of trade").

On top of issues with the persons to whom the non-circumvent clause applies and for whose benefit it seeks to promote, the actions which this clause prohibits McConnell from taking are equally problematic. The clause purports to prohibit <u>all contact</u> with those customers for any reason. In effect, this prohibits not just discussions for new business, but also even contacting a current or former MCN client who may be a personal friend or acquaintance beyond the business relationship with MCN. The clause likewise prohibits "enter[ing] into any agreement" with such customers. Yet again, this language extends beyond any reasonable business interest of MCN and prohibits such innocuous conduct as buying a publicly-traded share of an MCN customer or purchasing product from an MCN customer as a consumer. As noted above, courts applying Texas law have refused to enforce this type of sweeping prohibition. Accordingly, this Court should likewise decline to enforce the Non-Circumvent language in the Agreement.

## II. **Plaintiffs Fail to State a Claim of Breach of the Implied Covenant of Good Faith and Fair Dealing.**

If the Employment Agreement is governed by Texas law, the related claim of Breach of Implied Duty of Good Faith and Fair Dealing should be as well. The choice-of-law clause indicates that the Agreement would be "construed in accordance with" Texas law, and the claim of Implied Duty of Good Faith and Fair Dealing directly construes the intent of the Employment Agreement and seeks to imply terms and

9
Case 5:25-cv-00400-BO-KS     Document 32     Filed 10/14/25     Page 9 of 16

specific courses of dealing into the contract to which Plaintiffs claim Texas law applies. (Employment Agreement ¶ 7).

Texas law does not recognize a duty of good faith and fair dealing in every contract or business transaction. Instead, such a duty "has only been applied to protect parties who have a special relationship based on trust or unequal bargaining power." *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex.1994). Texas courts are hesitant to, and rarely do, extend this duty beyond the insurer/insured relationship. *GTE Mobilnet of S. Texas Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 295 (Tex. App. 1997), *writ denied* (Nov. 13, 1997). Here, Plaintiffs do not allege any special relationship between themselves and McConnell, and certainly not an insurer/insured relationship. Moreover, Texas courts have explicitly declined to recognize this claim in the employment context. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000). As such, this claim fails as a matter of law.

Furthermore, even if this claim were analyzed under North Carolina law, the Complaint still would fail to state a claim. While North Carolina law recognizes such a claim, it also holds that "where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, we treat the former claim as 'part and parcel' of the latter." *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38-39, 817 S.E.2d 247, 256 (2018). Thus, "[a] defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." *McDonald v. Bank of New York Mellon Tr. Co., Nat'l Ass'n*, 259 N.C. App. 582, 587,

816 S.E.2d 861, 864–65 (N.C. Ct. App. 2018) (citing *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012)). Because Plaintiff's Breach of Contract claim fails, so too does this claim under North Carolina law.

### III. Plaintiff's Unjust Enrichment Claim Fails Due to the Existence of a Contract.

Plaintiffs further allege a claim against McConnell "in the alternative" for unjust enrichment. This claim fails for two reasons. First, this claim is the quintessential "threadbare recitation of elements" that fails to meet federal pleading standards. *Iqbal*, 556 U.S. at 663. The claim only conclusorily alleges that McConnell "holds money and property that in equity and good conscience belongs to MC Neutraceuticals," without identifying what money and property he supposedly holds. (Compl. ¶ 106). Second, where "there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Here, Plaintiffs allege that there is a contract between MCN and McConnell which seems to form the basis for the only "property" they have alleged McConnell has misappropriated, which is the two alleged trade secrets identified in the Complaint. The Agreement governs any claim related to that "property." Accordingly, this claim—even pled in the alternative—should be dismissed. *See Value Health Sols. Inc.*, 2020 WL 2616400, at *13 (dismissing unjust enrichment claim pled in alternative where the complaint alleges that "the APA is a valid, express contract between the parties"), *aff'd*, 385 N.C. 250 (2023).

## IV. Plaintiffs Fail to Allege a Colorable Claim of Unfair and Deceptive Trade Practices Against McConnell

To allege a claim for unfair and deceptive trade practices, Plaintiffs must allege (1) an unfair or deceptive act or practice; (2) that such act was in or affecting commerce; and (3) that such act proximately caused them injury. *See Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Here, Plaintiffs fail to allege recognizable unfair and deceptive trade practices, and they also fail to allege conduct by McConnell that was in or affecting commerce.

### A. Plaintiffs Do Not Allege Any Unfair or Deceptive Acts by McConnell.

"When a section 75-1.1 claim is based on allegations of deceptive conduct, such allegations must be pleaded with particularity." *Regency Centers Acquisition, LLC v. Crescent Acquisitions, LLC*, No. 17-CVS-11354, 2018 WL 562749, at *9 (N.C. Bus. Ct. Jan. 24, 2018).

While MC does not specify which acts it alleges are unfair or deceptive, to the extent MC bases this claim on the breach of contract claim, it is well established that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the [UDTP] Act[.]" Here, the only "substantial aggravating circumstances" alleged by MC are the "baseless and improper threats against Plaintiffs' principals . . . ." (Compl. ¶ 148). But Plaintiffs do not allege that any of these alleged threats were made by McConnell. Instead, Plaintiffs allege that an individual other than McConnell acting "on behalf

of Rise Capital and Asterra" (not McConnell) sent an allegedly threatening text (Compl. ¶¶ 84-85), and that counsel for Asterra sent an email communication in which counsel indicated "Asterra will be filing a civil action and seeking restitution through criminal charges." (Compl. ¶ 86 and Ex. D). Even if these alleged threats constituted substantial aggravating circumstances (which is denied), none of these allegations involve any actions taken by or on behalf of Mr. McConnell.

Furthermore, to the extent MC bases this claim on an allegation that "there has been an unwarranted refusal by Defendants to fully resolve the matter which constitutes the basis of this suit," (Compl. ¶ 147) once again there are no well-pled allegations that indicate McConnell has unreasonably refused to settle anything. In fact, the Complaint lacks any allegations regarding settlement efforts that were or could have been undertaken but were not other than the single conclusory statement in Paragraph 147 about an unwarranted refusal to settle.

**B.    McConnell's Actions Were Not "In or Affecting Commerce."**

Additionally, at least as to this claim as alleged against McConnell, the dispute between Plaintiffs and McConnell is an employer-employee dispute. The UDTP Act applies only to actions that are "in or affecting commerce," with that term including "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). It is well-established under North Carolina law that this term does not encompass the employer-employee relationship and, therefore, does not apply to the purported breach of an employment agreement by an employee. *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) (citing *Buie v. Daniel*

*International*, 56 N.C. App. 445, 289 S.E.2d 118, *disc. rev. denied*, 305 N.C. 759, 292 S.E.2d 574 (1982)). Accordingly, even if Plaintiffs alleged a qualifying unfair or deceptive act (they have not), the UDTP claim still fails as against McConnell, MCN's former employee.

The UDTP claim against McConnell should be dismissed.

## CONCLUSION

For the foregoing reasons, McConnell respectfully requests that the Court dismiss Counts Two, Three, Four, and Nine against McConnell pursuant to Rule 12(b)(6).

Respectfully submitted, this the 14th day of October, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman
N.C. State Bar No. 33590
Nathaniel J. Pencook
N.C. State Bar No. 52339
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
nate.pencook@nelsonmullins.com

*Attorneys for Defendant Ryan McConnell*

## **CERTIFICATE OF WORD COUNT**

Undersigned hereby certifies that the foregoing brief contains 3,319 words including the body of the brief, headings, and footnotes, but excluding the caption, signature lines, certificate of service, this Certificate of Word Count, and/or any cover page or index and therefore complies with Local Rule 7.2(f)(3)(A).

By: */s/ Brandon S. Neuman*
Brandon S. Neuman
N.C. State Bar No. 33590
Nathaniel J. Pencook
N.C. State Bar No. 52339
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
nate.pencook@nelsonmullins.com

*Attorneys for Defendant Ryan McConnell*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day the foregoing document was electronically filed via the Court's CM/ECF filing system which will send email notification of the filing to all counsel of record.

This the 14th day of October, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Brandon S. Neuman*
Brandon S. Neuman
N.C. State Bar No. 33590
Nathaniel J. Pencook
N.C. State Bar No. 52339
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
brandon.neuman@nelsonmullins.com
nate.pencook@nelsonmullins.com

*Attorneys for Defendant Ryan McConnell*