IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-00400-BO

| | | |
|---|---|---|
| MC BOTANICALS LLC and MC NUTRACEUTICALS LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS** |
| ASTERRA LABS, LLC; RISE CAPITAL, LLC; and RYAN MCCONNELL; | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |
| ASTERRA LABS LLC,<br>Counter-Plaintiff,<br>V. | ) ) ) | |
| BRET C. WORLEY, JEFFREY A. WORLEY, MC BOTANICALS LLC, MC NUTRACEUTICALS LLC, A COLORADO LIMITED LIABILITY COMPANY, MC NUTRACEUTICALS LLC, A TEXAS LIMITED LIABILITY COMPANY, AND MC GLOBAL HOLDINGS LLC,<br>Counter-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL OVERVIEW ..................................................................................... 3

LEGAL STANDARD .......................................................................................... 6

ANALYSIS OF SPECIFIC CLAIMS ................................................................ 7

    Third Counterclaim: Fraud ................................................................... 7

    Second Counterclaim: Unfair & Deceptive Trade Practices ............................. 14

    Fourth Counterclaim: Abuse of Process ............................................... 15

    Fifth Counterclaim: Veil Pierceing, Alter Ego, and Mere Instrumentality ....... 16

    Sixth Counterclaim: Civil RICO 18 U.S.C. §1961 .............................................. 19

    Seventh Counterclaim: Conspiracy to Violate RICO 18 U.S.C. §1962 .............. 22

    Eighth Counterclaim: Civil RICO N.C. Gen. Stat. §75D-1 et. seq. ................... 23

    Ninth Counterclaim: Civil Conspiracy ............................................... 26

    Tenth Counterclaim: Punitive Damages ............................................. 28

    Breach of Contract ............................................................................ 28

NOW COMES MC Botanicals, LLC, MC Nutraceuticals, LLC, a Texas limited liability company, MC Nutraceuticals, a Colorado limited liability company, MC GLOBAL HOLDINGS LLC, BRET C. WORLEY, AND JEFFREY A. WORLEY (Counterclaim Defendants), through counsel, who submit this memorandum in support of their Motion to Dismiss the Amended Counterclaims.

## INTRODUCTION

This case arises out of a flawed business relationship between two groups of businesses, MC Botanicals, LLC and MC Nutraceuticals, LLC on the one hand and Asterra Labs, LLC and Rise Capital, LLC on the other. From February 12, 2025, to late May 2025, the businesses worked together to distribute "high quality CBD and hemp-derived products." (Complaint ¶59; Counterclaim, ¶¶170-78)

Disputes over payments and inventory arose between Memorial Day 2025 and June 5, 2025. (Complaint ¶¶55-63; Counterclaim 183-87) To protect their interests under the contract entered between MC Botanticals and Asterra on May 2, 2025, MC Botanicals LLC and MC Nutraceuticals LLC filed suit in this Court on July 7, 2025. Asterra filed an answer and counterclaims on July 25, 2025, and an amended answer and counterclaims on September 10, 2025.

The amended counterclaims fall into two buckets: a specific, fact intensive claim for breach of contract, and a series of nine wide-ranging, scatter-shot claims based on alleged fraud by the counterclaim defendants. Counterclaim defendants move to dismiss all claims.

1

Claims for fraud are governed by Rule 9 of the Federal Rules of Civil Procedure and must be stated with particularity. Likewise, state and federal courts have held that any claim *founded on alleged fraudulent behavior* must include facts sufficient to support the alleged fraud under Rule 9. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989); *see also Tucker v. Clerk of Ct. of Forsyth Cnty. ex rel. Frye*, 2019 N.C. App. LEXIS 866 (N.C. Ct. App. Oct. 15, 2019). Where the pleadings of fraud claims are deficient, other claims predicated on the deficient fraud claims likewise fail to state a claim for relief. *Id.*

For those reasons, counterclaims two through nine should be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 9 & 12(b)(6). The breach of contract claim should be dismissed under Rule 12(b)(6).

The portion of Asterra's amended counterclaims labeled "Factual Background" runs from page 30 to page 61. Asterra's factual presentation falls into three distinct categories: (1) claims related to Asterra's relationship with counterclaims defendants, (2) accusations of misconduct by counterclaim defendants with no direct connection to Asterra, and (3) allegations that counterclaim defendants had cash flow problems between November 2024 and January 2025, which predates the relationship between the parties.

Because it is the relationship between the parties that either does or does not support the fraud-related counterclaims, Asterra's rendition of that relationship will be the focus of this factual synopsis.

2

## FACTUAL OVERVIEW

Taking Asterra's allegations regarding the relevant background about its business relationship with the counterclaim defendants as true, the facts are as follows.

Asterra was founded in 2019 to produce high-quality CBD and hemp-derived products. It was on "an upward trajectory and achieving all benchmarks of its business plan" by 2024. (Amended Counterclaim, ¶170). The counterclaim defendants are in the same business, but not as manufacturers; instead, they buy and resell products. (Counterclaim, ¶171).

Counterclaim defendants had lost market position by 2024, owed money, and needed capital to operate. (Amended Counterclaim, ¶¶172-73; 176). Bret Worley considered himself a successful executive and leader in the Hemp industry. (Amended Counterclaim, ¶176). He claimed that the counterclaim defendants had annual revenue of $90 million. (Amended Counterclaim, ¶176). Mr. Worley boasted about his political connections and claimed that he could influence federal policy because he was in a romantic relationship with the daughter of Susie Wiles, President Trump's chief of staff. (Amended Counterclaim, ¶176). His affiliation with Susie Wiles by dating her daughter "caused Asterra … to believe that he should be viewed as a person worthy of trust and respect." (Amended Counterclaim, ¶176).

Bret Worley stated that, through his relationship with Caroline Wiles, he could secure political appointments and other favors for people who did business

3

with his companies on favorable terms. (Amended Counterclaim, ¶176). Asterra concluded that his ability to secure appointments and favors were intended to make the counterclaim defendants appear as "creditworthy powerhouses and desirable business partners." (Amended Counterclaim, ¶176). Jeff Worthy agreed that the counterclaim defendants had "financial strength." (Amended Counterclaim, ¶176).

Asterra did not conduct any credit check. It did not ask for a financial statement. Neither Asterra nor its representatives engaged in any investigation, requested references, or attempted to determine whether the counterclaim defendants had political influence through Bret Worley's romantic relationship. Asterra did not ask to review profit and loss statements, tax returns, or bank statements before entering its business relationship with the counterclaim defendants. (Amended Counterclaim, ¶¶170-197).

To conduct business, the counterclaim defendants "needed Asterra to supply products on credit for the counterclaim defendants to resell, increase its revenue, and regain its industry standing." (Amended Counterclaim, ¶177). For several months, the parties operated that way. Beginning February 12, 2025, Asterra purchased and distributed raw materials on MC Neutraceuticals behalf. Customers placed the orders through MC Neutraceuticals, Asterra purchased the raw materials, and MC Neutraceuticals reimbursed Asterra and paid a commission for its service. The counterclaim defendants made timely payments until May 2025. (Amended Counterclaim, ¶178-79).

Bret Worley proposed expanding the work between the parties. Under this proposal, Asterra would purchase raw materials, hold the raw materials in inventory, ship the ingredients for MC Botanicals, and accept an agreed upon rate as payment. On May 2, 2025, Asterra and MC Botanicals executed a Manufacturing and Supply Agreement that has been incorporated into the pleadings and included as Exhibit A to the Complaint. Asterra agreed to extend MC Botanicals a revolving line of credit of $2.5 million. (Complaint, Exhibit A, Agreement).

According to the agreement, MC Botanicals was obligated to prove its credit worthiness upon Asterra's request. Specically, Asterra could request "documentation which adequately demonstrates the strength of Purchaser's financial condition or creditworthiness …" (Complaint, Exibit A, ¶9). Asterra believed that the counterclaim defendants were credit worthy enough to extend them a $2.5 million line of credit. Asterra never requested any documentation to "demonstrate the strength of [MC Botanical's] financial condition]" prior to entering the agreement. (Amended Counterclaim, ¶181).

In late May 2025, counterclaim defendants fell behind on payments owed to Asterra. Asterra decided at that point that MC Botanicals was not creditworthy and could not meet its financial obligations. Asterra suspended shipments in early June. (Amended Counterclaim, ¶185, 190).

On June 5, 2025, the parties agreed that the counterclaim defendants would do the following:

      a.     Pay Asterra $50,000 per day to pay off the balance;

5

b. Remain current on all invoices;

c. Permit Asterra to hire Ryan McConnell.

The counterclaim defendants began those payments but made their last payment of $50,000 on June 9, 2025. When they were unable to make their payment on June 10, 2025, Asterra "terminated the agreement." (Amended Counterclaim, ¶186-89).

The counterclaim defendants will incorporate additions from Asterra's factual background in their analysis of the respective claims.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitle to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint…." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Although the Court must accept as true all well-pleaded facts and reasonable inferences drawn from those facts, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations must show that the claim is plausible on its face and more than mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "[A] formulaic recitation of the elements" supported only by "naked assertions" without "further factual enhancements" fail to state a claim for relief. *Id.* A claim is plausible when the allegations include "factual content that allows the

6

Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Fraud allegations must be "stated with particularity." Fed. R. Civ. P. 8(a) & 9(b). In other words, the elements of fraud must include "the time, place, contents of any false representations, as well as the identity of the person making the representations, reasonable detrimental reliance on the representations, and what was obtained…" by the false representations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). In addition, the party must plead with particularity reasonable detrimental reliance on the alleged falsehoods. *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 547 (4th Cir. 1987). Significantly for purposes of this Motion, alleged violations of other claims based on acts of fraud must include the particularities required by Rule 9(b). *Menasco*, 886 F.2d at 684; (allegations of fraud to support RICO violation must include particular facts under Rule 9).

Dismissal under Rule 12(b)(6) is necessary when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729 (2018); *see also Twombly*, 550 U.S. at 570.

**ANALYSIS OF SPECIFIC CLAIMS**

**<u>Third Counterclaim: Fraud</u>**

7

The elements of fraud are (1) false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *State Props., L.L.C. v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180 (N.C. Ct. App. 2002). Reliance on the false representations must be reasonable. *Cobb v. Pa. Life Ins. Co.* 215 N.C. App. 268, 277, 715 S.E.2d 541 (N.C. Ct. App. 2011). Justifiable reliance is an essential element of fraud. Reliance is not justifiable "where the plaintiff could have discovered the truth through reasonable diligence but failed to investigate." *Id.*

The basis of Asterra's fraud claim is that the counterclaim defendants misled Asterra about their financial condition by boasting about Bret Worley's non-marital relationship with the daughter of the chief of staff to the President, their standing in the industry, and their revenues and general financial success. In addition, it claims that the counterclaim defendants failed to disclose information that Asterra would have considered relevant to its evaluation of the counterclaim defendants' financial condition and credit worthiness.

Although Asterra concludes that the counterclaim defendants mislead Asterra about their financial well-being and solvency, it provides almost no factual support for that conclusion. Asterra alleges that Bret Worley overstated the counterclaim defendants' total revenue. A claim that a company has revenue of $90 million says little about the financial well-being of the company. Asterra offers nothing to show that it made any effort to verify the claim. In addition, Asterra concedes that the statement was about their revenue, not profit.

Asterra fails to allege any factual statement that counterclaim defendants made in support of their financial condition. Nor does Asterra explain negotiations or tactics that would have led it to believe the counterclaim defendants had the financial ability to perform their obligations under the contract or point to any document offered to support their financial condition.

Based on Asterra's allegations, the Court should make the reasonable inference that Asterra engaged in no due diligence before entering into the contract with the counterclaim defendants. Asterra's claims that it was unaware of counterclaim defendants' financial condition, which it labels as negative cash flow and undercapitalized. But as provided in paragraph nine of the agreement included as Exhibit A to the complaint, Asterra could have requested MC Botanicals to prove its creditworthiness at any time. Apparently, it failed to do so—ever, much less before entering the relationship and extending the credit.

Asterra does not allege that MC Botanicals misled it by submitting false documents of financial solvency. In fact, Asterra makes no mention of a financial statement, profit and loss report, tax return, credit report, public records search, or any other investigation. As a result, it is reasonable to infer that none of that happened. Even if it did, Asterra was under the obligation to plead those facts under Rule 9.

In support of its conclusion that the counterclaim defendants never intended to perform their obligations under the contract, Asterra refers to other instances where the counterclaim defendants were sued or experienced financial difficulties.

Asterra's apparent theory is that these complaints by other companies support a conclusion that the counterclaim defendants engaged in a plan to use the proceeds from sales with one company to pay the other companies for products, a farfetched theory which is unsupported by anything other than conjecture.

While the Court must take plausible facts as true, it may not accept mere conclusions when Asterra fails to allege facts to support the conclusions. *Twombly*, 550 U.S. at 570 What's more, even if the conclusion was accepted as fact, that conclusion would reflect only on the counterclaim defendants' intent and not the other required elements of fraud.

Nowhere in the thirty-one pages of factual background does Asterra describe with particularity what any counterclaim defendant (or their agent) said to make Asterra believe they had the ability to pay any debt, much less a $2.5 million line of credit.

The facts taken as true are that Brett Worley and Jeff Worley boasted about the counterclaim defendants' standing in the industry, Brett's political influence, and the combined financial revenues of their companies. Asterra makes no claims about specific statements or representations the counterclaim defendants made about their operating structure, their profits, their costs, or obligations to other vendors. Even if they did offer those specifics, Asterra would have the obligation to explain that the statements were false and designed to mislead. *Ray*, 155 N.C. App. at 72.

To the extent it pleads sufficient facts to support false claims, the counterclaim fails to state with any particularity that Asterra's reliance was reasonable. The conclusion that a non-marital, romantic relationship with the daughter of a high-ranking official to the President makes a person "worthy of trust and respect" is illogical. To conclude that the relationship makes his companies creditworthy to the tune of $2.5 million highlights Asterra's lack of diligence before entering the agreement.

Likewise, a person's ability to secure political appointments says nothing about the person's business acumen, financial security, or creditworthiness. Entering a business relationship that includes a large line of credit based a person's claims of influence is unreasonable, especially if the claim is that the person can influence the President of the United States to tip the scales in favor of looser regulations of hemp or CBD products. (Amended Counterclaim, ¶176)

The same is true for general statements about the counterclaim defendants' financial condition. Nowhere in the pleading does Asterra explain what it would have considered "financial strength" or "creditworthiness" to justify a $2.5 million revolving credit line. In fact, the complaint concedes that the counterclaim defendants needed and requested the line of credit without describing anything that would have led a company "on an upward trajectory or achieving all benchmarks of its business plan" to extend such credit. Can it be justifiable not to question why a company with $90 million in revenue, as Bret Worley purportedly claimed, needs Asterra to advance purchases and then requests a $2.5 million line of credit?

11

Asterra spends most of its factual background statement painting the counterclaim defendants with a broad brush of unpaid bills, unethical behavior, and, even, illegal conduct. Asterra claims that the counterclaim defendants misled Asterra by failing to disclose or concealing these issues.

Silence is evidence of fraud only when a party has a duty to speak. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557 (1976). To state such a claim, Asterra was under an obligation to allege with particularity that the counterclaim defendants "had a duty to disclose material information." *Id.* That duty would arise if counterclaim defendants had a fiduciary relationship to Asterra or took affirmative steps to conceal the information when Asterra was unable to discover the information through due diligence. *Horton v. Horton*, 81 N.C. App. 295, 297-98, 344 S.E.2d 117 (1986).

Asterra has failed to state a claim that counterclaim defendants had a duty to disclose. Although Asterra contends in conclusory fashion that counterclaim defendants concealed information, they allege no affirmative acts counterclaim defendants took to conceal information. Nondisclosure alone is not concealment. *Maxwell v. Smithfield Foods*, 2023 NCBC LEXIS 20 at*7 (N.C. Super. Ct. Feb 3, 2023).

Asterra describes an arm's length transaction. An arm's length transaction alone does not create a fiduciary relationship. *Id.* Asterra offers no factual support for its implication that the counterclaim defendants should have disclosed the information it claims existed.

Plus, Rule 9(b) requires Asterra to allege that it was denied an opportunity to investigate or could not have discovered the concealed facts through reasonable diligence. *ALCOF III Nubt., L.P. v. Chirico*, 2024 NCBC LEXIS 110, at \*11 (N.C. Super. Ct. Aug. 21, 2024). Asterra does not allege in the amended counterclaims that it asked counterclaim defendants for specific information related to their financial condition or conducted its own investigation into the companies. Asterra does not allege that counterclaim defendants prevented Asterra from investigating or that Asterra could not have discovered the information through reasonable diligence.

Finally, reliance is not justifiable "where the plaintiff could have discovered the truth through reasonable diligence but failed to investigate." *Cobb,* 215 N.C. at 277. A $2.5 million line of credit was central to the parties' negotiations and included in the contract. (Complaint Exhibit One, Agreement). Asterra does not claim to have conducted any due diligence. The Court can reasonably infer from the pleadings that it started the relationship, entered the contract, and extended this line of credit without requesting a financial statement, profit and loss statement, credit report, or references, much less conducting an independent investigation.

The contract included an option to request the counterclaim defendants to provide these details upon request. (Complaint, Exhibit 1, ¶10). Asterra does not claim that it requested any proof of creditworthiness or that the counterclaim defendants submitted any false documents. These combined facts lead to the

13

reasonable inference that Asterra never took any of these simple, reasonable steps to ensure that it was justifiably relying on any false statements.

In summary, the amended counterclaims lack the specificity to support a claim for fraud, the who, what, where, when, and how necessary to plead the elements of fraud under Rule 9(b). For that reason, the fraud claim should be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Second Counterclaim: Unfair & Deceptive Trade Practices

To state a claim for unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the Plaintiff. *RJJ, LLC v. RCWIL Enters.*, 2016 NCBC 44 at ¶56, 2016 WL 3850403 at *14 (N.C. Super. Ct. June 20, 2016). A practice is unfair when it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* A practice is deceptive if it has the capacity or tendency to deceive. *Id.*

Asterra claims that the counterclaim defendants violated this statute by engaging in a "deliberate course of conduct … designed to mislead, and did mislead, Asterra…." (Amended Counterclaim, ¶211) It concludes that counterclaim defendants "misrepresented its financial stability and creditworthiness" (Amended Counterclaim, ¶212). According to Asterra, the misrepresentations caused Asterra to believe that the counterclaim defendants had "the capacity and intent to honor

14

their payment obligations…." (Amended Counterclaim, ¶214). "Asterra reasonably relied on the misrepresentations and concealments…" to its financial detriment. (Amended Counterclaim, ¶220).

These pleadings mirror the fraud pleadings and reveal that the unfair and deceptive practices claim is based on alleged fraud. It suffers from the same lack of particularity as the fraud claim and should be dismissed for the same reason.

Asterra cannot refashion its fraud claim into an unfair and deceptive trade practice claim and survive a motion to dismiss without providing particular facts to support the claim. *Menasco*, 886 F.2d at 684. Vague references to statements like mislead, misrepresent, or conceal are not sufficiently supported by any factual allegations to state a claim for relief. *Jordan v. Crew*, 125 N.C. App. 712,718, 482 S.E.2d 735 (N.C. Ct App. 1997).

Because the complaint lacks the specificity to support a claim for fraud, which is the basis for this claim, the unfair and deceptive trade practice claim should be dismissed for failure to state a claim upon which relief may be granted pursuant to Rules 9 & 12(b)(6) of the Federal Rules of Civil Procedure.

**Fourth Counterclaim: Abuse of Process**

Abuse of process is misuse of legal process for an ulterior purpose. It requires a wrongful or improper act after the institution of process. In other words, the claim requires (1) an improper act after the institution of process, (2) an ulterior motive during the regular prosecution of a proceeding, and (3) a showing that the acts were employed to "achieve a collateral purpose not within the normal scope of the process

15

used." *Fuhs v. Fuhs,* 245 N.C. App. 367, 375, 782 S.E.2d 385, 390 (N.C. Ct. App. 2016).

Asterra fails to state a claim for relief because it did not allege an improper act by the counterclaim defendants ***after*** the initiation of the lawsuit. *Fox v. Barrett,* 90 N.C. App. 135, 138, 367 S.E.2d 412 (N.C. Ct. App. 1988). In fact, Asterra contends the counterclaim defendants "committed the tort of abuse of process by maliciously **initiating** this action against Asterra and causing civil process to be issued to Asterra…." (Amended Counterclaim, paragraph 236, emphasis added)

The counterclaim for abuse of process should be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

## Fifth Counterclaim: Veil Pierceing, Alter Ego, and Mere Instrumentality

Asterra seeks to pierce the corporate veil of the MC counterclaim defendants and impose liability for corporate debts on Jeff Worley and Brett Worley.

In general, a limited liability corporation is distinct from the members. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 666 S.E.2d 107 (2008). For that reason, members are not personally liable for debts of the corporation. *Harris v. Ten Oaks Mgmt.,* 2022 NCBC LEXIS 62 (2022).

Piercing the corporate veil is a mechanism to disregard the corporate form and protections and "impose legal liability for corporate obligations…upon some other company or individual that controls and dominates a corporation." *Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262 (2013). Such a remedy is extraordinary

16

and only imposed "when necessary to prevent fraud or achieve equity." *Ridgeway Brands*, 362 N.C. at 439.

Complete domination that deprives the entity of "separate mind, will or existence of its own." *Green*, 367 N.C. at 145. To support such a claim, Asterra must show that the Worleys used their domination of the corporation to commit a fraud. *Id.* at 146. "The allegations must offer plausible support that 'the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities ...." *Id.* at 145. Asterra makes the allegations but fails to provide "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The first problem is that Asterra again bases this claim on alleged fraud by the counterclaim defendants. Asterra alleges that counterclaim defendants Jeff Worley and Brett Worley used the MC counterclaim defendants as mere instrumentalities or "interchangeable extensions of their personal ambitions." Their purpose, according to Asterra, was to "perpetrate fraud" by "inducing Asterra to supply over $1,000,000 in products without payment through misrepresentation of financial strength and good standing, concealing the enterprises insolvency to secure ongoing credit ...." (Amended Counterclaim, ¶252).

Again, Asterra's pleading suffers from the same shortcoming as its pleadings in the other counterclaims founded on alleged fraud. They fail to specify, as required by Rule 9(b), how the counterclaim defendants perpetuated this fraud. In addition,

17

the pleadings provide a counter argument to the idea that the counterclaim defendants promoted themselves as financially strong when it sought resources from Asterra to operate.

Although Asterra alleges MC Botanicals "was created as a shell entity to interface with Asterra…," it concedes MC Botanicals, LLC, with whom Asterra contracted, was created in October 7, 2024, in advance of the relationship with Asterra. (Counterclaim, paragraph 165) In fact, as Asterra points out, MC Botanicals did not obtain a certificate to conduct business in North Carolina until February 2, 2024. (Counterclaim, paragraph 165) From Asterra's point of view, the counterclaim defendants created the LLC to "secur[e] credit extensions under false pretenses while funneling benefits to the broader enterprise."

These allegations are inconsistent with both complete domination and a mere instrumentality of the Worleys. Asterra admits that it was aware the Worleys operated several different entities as part of MC Global, which was a "parent company" to MC Botanicals. It alleges that MC Botanicals secured credit to benefit the broader enterprise of MC Global, not the Worleys individually. In fact, included in its pleadings are allegations that the proceeds of sale from the relationship with Asterra were used to pay the debts of the other companies, not to the Worleys' personally.

Most important, Asterra once again fails to specify how these arrangements were secured by fraud. What were the alleged false inducements that coerced

18

Asterra to open its wallet to the tune of a $2.5 million line of credit without any due diligence? The counterclaims never specify.

This counterclaim should be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

**<u>Sixth Counterclaim: Civil RICO 18 U.S.C. §1961</u>**

To plausibly allege an 18 U.S.C. 1962(c) violation, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A plaintiff can recover only if and to the extent it was "injured … by the conduct constituting the violation." *Id.* "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Id.* at 496-97 (quoting *Haroco, Inc. v. American National Bank & Trust Co.* of Chicago, 747 F.2d 384, 398 (7th Cir. 1984).

Section 1964(c) creates a private right of action for a party injured "by reason of" a RICO violation. The United States Supreme Court has interpreted the "by reason of" language to require the allegedly injured party to show that the RICO violation, or predicate offenses, was the proximate cause of the injured party's injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006).

When the predicate acts alleged as the pattern of racketeering are based on acts of fraud, the pleadings must include the particularities required by Rule 9(b) of the Federal Rules of Civil Procedure. *Menasco*, 886 F.2d at 684. The Fourth Circuit is "cautious about basing a RICO claim on predicate acts of mail or wire fraud

19

because it will be the unusual fraud that does not enlist the mails and wires at least twice." *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).

Asterra's allegations are insufficient to create a plausible claim that the counterclaim defendants committed two predicate criminal acts while engaged in racketeering activity. Asterra alleges the following predicate acts to support its RICO claim:

a. Mail Fraud to defraud Asterra.

b. Wire Fraud to defraud Asterra.

c. Bank Fraud unrelated to Asterra.

d. Interference with Commerce related to counterclaim defendants' employee.

e. Money laundering proceeds of unspecified unlawful activities.

f. Interstate facilities to commit unspecified fraud and extortion.

(Amended Counterclaim, ¶266)

The bank fraud, interference with commerce by extortion, money laundering, and use of interstate facilities to aid in racketeering should be dismissed. Asterra does not allege an injury that could be proximately caused by the bank fraud and interference with commerce by extortion. These claims involve First Citizens Bank and a counterclaim defendant employee unconnected to Asterra. Those parties would be the victims of any damages proximately caused by these alleged violations, not Asterra. *Anza,* 547 U.S. at 453.

The claims for money laundering and use of interstate facilities are too vague to state a claim under notice pleading. They cannot constitute predicate offenses because it is unclear what unlawful activities or illegal acts counterclaim defendants supposedly committed that violated these statutes.

A restatement of the elements combined with conclusions like "unlawful activities" and "fraud" and "extortion" are not sufficient to show how counterclaim defendants violated the statutes or how Asterra was injured by these specific violations. Both the alleged money laundering and use of interstate facilities allegations fail to make a plausible claim because they lack "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

The claims based on wire and mail fraud should be dismissed because they fail to state facts with particularity that the counterclaim defendants committed any fraud, much less wire or mail fraud. Like the other fraud-based claims it offers no particulars as required by Rule 9(b) of the alleged behavior that constituted the fraud, specifically "the time, place, contents of any false representations, as well as the identity of the person making the representations, reasonable detrimental reliance on representation, and what was obtained…" by the false representations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).

Once again, Asterra failed to sufficiently allege facts to support the claim. It does not supply what the counterclaim defendants did or said that constituted a misrepresentation, other than general boasts about status, political influence, and

gross revenue. These general remarks are insufficient to show that anyone misled Asterra, that it was reasonable to rely on the statements, or that they conducted any due diligence.

While they allege general remarks using the wires or mail, Asterra fails to specify affirmative misrepresentation of facts, "much less the time, place, and content of the false representations [or] the person making them…." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009).

## Seventh Counterclaim: Conspiracy to Violate RICO 18 U.S.C. §1962

"To plausibly allege conspiracy to commit a RICO violation, the plaintiff must allege that the defendant conspired to participate in the RICO enterprise and pattern of criminal activity and the same criminal objective as the other conspirators." *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 536 (S.D. Md. 2019) (citing *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017).

Intracorporate immunity means that a corporation cannot conspire with itself. *State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790 (N.C. Ct. App. 2007). As members of the counterclaim defendant LLCs, Bret Worley and Jeff Worley cannot conspire with themselves. The counterclaims against them should be dismissed for that reason.

Furthermore, Asterra fails to state a claim for conspiracy for the same reason it fails to state a claim on the underlying RICO violation. The RICO analysis applies to this claim, and it should be dismissed for the same reasons. Fed. R. Civ. P. 9(b) & 12(b)(6)

**Eighth Counterclaim: Civil RICO N.C. Gen. Stat. §75D-1 *et. seq.***

North Carolina created a private right of action for a party injured by a pattern of racketeering activity, which must include one act of racketeering activity other than mail fraud or wire fraud. N.C. Gen. Stat. §75D-8(c). Racketeering activity includes the commission of acts that "would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent under Chapter 14 of the General Statutes…." N.C. Gen. Stat. §75D-3(c)(1). A pattern of racketeering activity is defined (in relevant part) as "at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristic and are not isolated or unrelated incidents…." N.C. Gen. Stat. §75D-3(b).

To state a claim under the North Carolina RICO Act, "(1) an innocent person must allege (2) injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendants." *Gilmore v. Gilmore,* 229 N.C. App. 347, 356, 748 S.E.2d 42 (2013) (quoting *In re Bostic Constr., Inc.*, 435 B.R.46, 68 (Bankr. M.D.N.C 2010). North Carolina RICO claims based on fraud must be pled with particularity. *Tucker v. Clerk of Court of Forsyth County ex rel. Frye*, 2019 N.C. App. LEXIS 866 *14 (*citing* Gilmore, 229 N.C. App. At 356.).

Asterra contends that the predicate acts supporting its North Carolina RICO claim are set forth in paragraph 194(a)-(k). Taking the statements included in the paragraph and subsections as true, only two arguably relate to the relationship between Asterra and the counterclaim defendants: (a) obtaining property by false pretenses and (g) wire fraud. The others have no connection to the parties' relationship, North Carolina, or the criminal violations under Chapter 14 of the North Carolina General Statutes. (Amended Counterclaim ¶194).

North Carolina lacks jurisdiction over Subsections (b) (alleged extortion of counter defendants' employee another state, Colorado), (c) (conspiracy to commit fraudulent import evading duties), (d) (transmitting a threat against the same former employee referenced in subsection (b) through telephone networks), (e) (false statements to federal agents related to alleged illegal imports from China), (f) (mail fraud involving Michael Broughton), (h) (bank fraud to secure credit from First Citizen's Bank), (i) (interference with commerce by preventing the same employee referenced in (a) and (d) to leave counter defendants employment), and (j) (use of interstate communications to aid in racketeering). N.C. Gen. Stat. §75D-3(c)(1). Just as important, Asterra does not allege that the acts caused injury or damage to its business or property or claim, much less specify, any pecuniary gain to the counterclaim defendants from these acts. *Gilmore*, 229 N.C. at 356.

Asterra alleges one predicate act under different statutes for the remaining claims, wire fraud and obtaining property by false pretenses, but does not specify the content, place, or time of these claims. It simply alleges that the counterclaim

24

defendants engaged in a fraudulent scheme. The two predicate acts must be distinct and consecutive to one another. *Tucker v. Clerk of Court of Forsyth County ex rel. Frye*, 2019 N.C. App. LEXIS 866 *14

In *Tucker*, the North Carolina Court of Appeals addressed the same issue that arises in this case. *Id*. The plaintiff alleged fraud and argued that the defendant violated N.C. Gen. Stat. §14-100 by obtaining property by false pretenses. *Id*. The Court concluded that the claim failed because the plaintiff failed to distinguish the allegation of obtaining property by false pretenses from the fraud claim. *Id*.

The Court in Tucker reasoned that N.C. Gen. Stat. §14-100 requires proof that an "intentionally false and deceptive representation of a fact or event has been made." Because the plaintiff failed to adequately allege any false representations, he failed to adequately allege a violation of the obtaining property by false pretenses. Id. *at* *16.

Once again, Asterra fails to support its claim that the counterclaim defendants obtained property by false pretenses with facts, alleged with particularity, to support a violation under N.C. Gen. Stat. §14-100. Asterra claims that the counterclaim defendants "willfully misrepresented the financial stability and creditworthiness of [their] enterprise to Asterra's representatives…." Saying they overstated their revenue, misrepresented their liquidity, and made false promises offers only conclusions and interpretations, not the actual misrepresentations necessary to state a claim.

25

What's more, "these allegations are not meaningfully distinct" from their allegations of wire fraud. As such, Asterra has failed to allege the necessary element of "two or more acts of organized unlawful activity or conduct." *Gilmore*, 229 N.C. at 356. This claim should be dismissed for these reasons. Fed. R. Civ. P. 9(b) & 12(b)(6).

## Ninth Counterclaim: Civil Conspiracy

This claim is simply a restatement of Asterra's fraud claim with the additional allegation that the counterclaim defendants conspired to commit fraud. This claim fails for two reasons. One, North Carolina Courts do not recognize a separate action for civil conspiracy in North Carolina. *Fox v. City of Greensboro*, 279 N.C. App. 301, 321 (2021). At best, it is an evidentiary basis to support damages for a different claim. *Id*. Asterra fails to state a separate claim for relief.

Two, it is founded on the same unspecified conclusions offered for the fraud claim. As such, it must be pleaded with particularity. Because Asterra has failed to plead its fraud claims with particularity and adds nothing more specific in its attempt to plead an independent civil conspiracy claim, it fails to state a claim upon which relief may be granted.

To create civil liability for conspiracy, plaintiffs must allege "(1) an agreement between two or more individuals, (2) to do an unlawful act or to do a lawful act in an unlawful way, (3) resulting in injury to plaintiff inflicted by one or more of the conspirators, and (4) pursuant to a common scheme." *Privette v. Univ. of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (N.C. Ct. App. 1989).

26

Asterra claims the counterclaim defendants committed the "unlawful acts" of "a civil conspiracy to defraud Asterra and other creditors by agreeing to misrepresent the enterprise's financial stability, induce extension of credit and supply of goods without intent to pay, and exploit the limited liability structure of the entity … to evade liability…." Even if these allegations were sufficient for a notice pleading standard, they fail the specificity required under Rule 9(b). In other words, what facts support the conclusions that the defendants agreed to misrepresent their financial stability, what were the misrepresentations, and how did it motivate Asterra to reasonably, detrimentally rely on the alleged, but unspecified, misrepresentations.

As with the fraud claim, Asterra failed to describe its due diligence before extending a $2.5 million line of credit to the counterclaim defendants and why they would need that line of credit if they made such a compelling case through misrepresentations about their financial stability. The counterclaim defendants' need to negotiated a $2.5 million line of credit as part of the operating agreement undermines any argument that they misrepresented their financial stability.

While Asterra's pleadings lack any specifics of what the counterclaim defendants said to misrepresent their financial stability, the agreement includes evidence of the opposite: the counterclaim defendants lacked the resources necessary to operate without a significant line of credit. Asterra fails to explain what it did to ensure the counterclaim defendants had the capacity to meet their obligations. Without that explanation, the claim for fraud fails and so does a claim

27

for conspiracy to commit that fraud. Reliance on the false representations must be reasonable. *Cobb,* 215 N.C. App. at 277. Extending a line of credit of that size without even requesting a financial statement is by definition unjustified.

## Tenth Counterclaim: Punitive Damages

Asterra seeks to recover punitive damages based on fraud. For the reasons addressed under the fraud counterclaim, the punitive damages claim fails. In fact, the claim only includes conclusions that essentially restate the legal standard. That is insufficient under either Rule 8 or 9(b). This amended counterclaim should be dismissed.

## Breach of Contract

The breach of contract amended counterclaim should be limited to the written agreement and any written agreements specifically referenced in the written agreement between the parties. The contents of that contract limit their relationship to the terms of that agreement and any documents specifically referenced in that agreement. To the extent the breach of contract counterclaim relies upon any alleged subsequent contracts, it should be denied under the terms of the written contract. Because Asterra's breach of contract claim is based on an alleged subsequent contract, it should be dismissed.

28

This the 20th day of March 2026.

**PARRY LAW, PLLC**

By: <u>/s/ Amos G. Tyndall</u>
K. Alan Parry
State Bar No. 31343
Amos Tyndall
State Bar No. 19309
Jonah Garson
State Bar. No. 55547
The Europa Center
100 Europa Drive, Suite 351
Chapel Hill, NC 27517
Phone: 919.913.3320
Fax: 919.869.2600
kap@parryfirm.com
agt@parryfirm.com
jag@parryfirm.com

**COUNSEL FOR PLAINTIFFS MC BOTANICALS, LLC AND MC NUTRACEUTICALS, LLC**

29

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed via the Court's

CM/ECF system, which provides email notice to all counsel of record.

This 20th day of March 2026.

**PARRY LAW, PLLC**

By:    /s/ Amos G. Tyndall
       Amos G. Tyndall

Case 5:25-cv-00400-BO-KS    Document 39    Filed 03/20/26    Page 32 of 32