IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:25-CV-400-BO-KS

| | |
|---|---|
| MC BOTANICALS LLC and<br>MC NUTRACEUTICALS LLC,<br>a Texas limited liability company,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>ASTERRA LABS LLC,<br>RISE CAPITAL LLC, and<br>RYAN MCCONNELL,<br>　　　　　Defendants.<br>ASTERRA LABS LLC,<br>　　　　Counter-Plaintiff,<br><br>　　　v.<br><br>BRET C. WORLEY,<br>JEFFREY A. WORLEY,<br>MC BOTANICALS LLC,<br>MC NUTRACEUTICALS LLC,<br>a Colorado limited liability company,<br>MC NUTRACEUTICALS LLC,<br>a Texas limited liability company, and<br>MC GLOBAL HOLDINGS LLC,<br>　　　　Counter-Defendants. | **REPORT OF THE PARTIES' PLANNING MEETING**<br>**Fed. R. Civ. P. 26(f)** |

1.     <u>Participants</u>: The parties held a conference pursuant to Fed. R. Civ. P. 26(f) on March 18, 2026 by phone conference.  Participating in the conference were:

(a)     Jonah Garson of Parry Law, P.L.L.C, representing Plaintiff/Counter-Defendant MC Botanicals LLC, Plaintiff/Counter-Defendant MC Nutraceuticals LLC (Colorado), Plaintiff/Counter-Defendant MC Nutraceuticals LLC (Texas), Counter-Defendant Bret C. Worley, Counter-Defendant Jeffrey A. Worley, and Counter-Defendant MC Global Holdings LLC;

1

(b) Alicia Jurney of Parker Bryan Britt Tanner & Jenkins, P.L.L.C, representing Defendant/Counter-Plaintiff Asterra Labs LLC and Defendant Rise Capital LLC; and

(c) Brandon S. Neuman of Nelson Mullins Riley & Scarborough, L.L.P., representing Defendant Ryan McConnell.

2. <u>Initial Disclosures:</u> The partes will complete the initial disclosures required by Rule 26(a)(1) by **Monday, April 20, 2026**, thirty (30) days from the filing of this Report.

3. <u>Nature of the Case:</u>

(a) This commercial action arises from a failed business relationship in the hemp-derived cannabinoid industry. Plaintiffs/Counter-Defendants MC Botanicals LLC ("<u>MCB</u>") and MC Nutraceuticals LLC (Texas) ("<u>MCN TX</u>") allege breaches of a Manufacturing and Distribution Agreement ("<u>Agreement</u>") by Defendant/Counter-Plaintiff Asterra Labs LLC ("<u>Asterra</u>"); breach of an employment agreement by Defendant Ryan McConnell ("<u>McConnell</u>"); breach of the implied duty of good faith and fair dealing by Asterra and McConnell; unjust enrichment by Asterra and McConnell (in the alternative); tortious interference with contract by Defendant Rise Capital LLC ("<u>Rise</u>") and Asterra; tortious interference with prospective economic advantage by Rise and Asterra; misappropriation of trade secrets under North Carolina law (N.C. Gen. Stat. § 66-152 *et seq.*) and federal law (Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*) by McConnell and Asterra; and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.* against Asterra, McConnell, and Rise.

2

(b) Asterra asserts counterclaims against MCB, MCN CO, MCN TX, MCGH,[1] Bret C. Worley, and Jeffrey A. Worley (collectively "Counter-Defendants") for breach of contract; unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.*; fraud; abuse of process; veil piercing/alter ego/mere instrumentality; civil RICO under 18 U.S.C. § 1961 *et seq.*; conspiracy to violate RICO under 18 U.S.C. § 1962(d); civil RICO under the North Carolina Racketeer Influenced and Corrupt Organizations Act, N.C. Gen. Stat. § 75D-1 *et seq.*; and civil conspiracy.

(c) The case involves disputes over inventory valuation and control; financing arrangements; alleged trade secrets; alleged fraudulent representations regarding financial stability and operational competencies within a market sector; corporate interrelationships relevant to veil-piercing; and the existence *vel non* of a number of predicate RICO acts. The parties' respective positions are more specifically set out below.

4.  Discovery Plan: The parties **jointly** propose this **phased discovery plan**.

(a) Subjects on which the parties anticipate discovery will be needed: The parties anticipate that discovery will be needed on all claims and defenses raised in the Complaint, (ECF No. 1), (except for the dismissed by the Court's March 16, 2026 ruling on the motions to dismiss), Asterra's Amended Answer and Counterclaim, (ECF No. 24), and any counterclaims that Rise and McConnell may file. Based on the pleadings that have been filed as of the date of this report, discovery will be needed on the following subjects:

---

[1] MCB, MCN CO, MCN TX, and referred to collectively as "MC."

3

i.  <u>Contract Formation, Performance, Alleged Breaches, and Damages</u>: Evidence regarding the negotiation, execution, terms, and performance of the Agreement (including product fulfillment obligations, inventory financing, revenue sharing, and non-solicitation covenants), the McConnell Employment Agreement (including non-compete, non-solicitation, and confidentiality provisions), and any implied duties of good faith and fair dealing; breaches, such as failure to fulfill orders, non-payment for supplied goods (e.g., $1,577,518.17 claimed by Asterra for unpaid invoices); and resulting damages, including lost profits, unreimbursed expenses, and diminished market position in the cannabinoid industry. The parties disagree on the nature and extent of breaches. Plaintiffs do not dispute that they failed to pay as required by the Agreement but allege that Asterra breached by failing to fulfill customer orders. Plaintiffs further allege that McConnell breached his Employment Agreement by soliciting MC customers in violation of covenants. Asterra contends that MC breached the Agreement first by failing to pay for goods despite repeated assurances that payments would be made, that MC's prior material breaches excuse Asterra's performance, and that any non-performance was justified due to MC's insolvency, failure to cure its default, and fraudulent conduct. Asterra's defenses include Plaintiffs' prior material breach, laches, unclean hands, and waiver. Discovery will include information regarding the timeline of payments and deliveries, communications on order fulfillment,

4

inventory audits, financial records showing solvency or distress, and calculations of damages.

.

ii. <u>Unjust Enrichment</u>: Benefits allegedly conferred by MC on Asterra and McConnell without compensation, pled as an alternative to contract claims. Asterra contends that no unjust enrichment claim lies where an express contract governs the subject matter of the dispute and that MC conferred no benefit on Asterra for which Asterra was not entitled to compensation under the Agreement. Discovery will focus on the existence and scope of any express contract covering the alleged benefits, the nature and value of any conferred benefits (if any), and whether retention was inequitable under North Carolina law.

iii. <u>Tortious Interference Claims</u>: Plaintiffs assert two tortious interference claims: (1) against Rise for interfering with the Manufacturing and Distribution Agreement and Plaintiffs' prospective business relationships (Count Five), and (2) against Rise and Asterra for interfering with the McConnell Employment Agreement (Count Six). Discovery will address Rise's knowledge, if any, of the Manufacturing and Distribution Agreement and the McConnell Employment Agreement; the nature and purpose of Rise's actions with respect to the business relationship between Asterra and MC; whether those actions were justified; whether Asterra induced McConnell to breach his employment obligations; and damages suffered by Plaintiffs, if any. Rise argues that it did not induce Asterra to terminate its

5

business relationship with MC, that Rise's actions were all justified that Rise's actions were all justified as an equity investor protecting its financial interest in Asterra (economic interest privilege), and that there was no improper motive for its involvement in the dispute between Asterra and MC beyond Rise's legitimate business purpose.

iv. <u>Misappropriation of Trade Secrets (State and Federal)</u>: Identification and value of alleged trade secrets; acquisition, use, or disclosure by Asterra and McConnell without consent; alleged willfully malicious conduct by McConnell or Asterra; and damages. The parties disagree on the protectability of the information at issue. Plaintiffs allege that customer/vendor lists, formulas, pricing strategies, and regulatory methods derive independent economic value from secrecy and were subject to reasonable safeguards. Asterra and McConnell contend that any information alleged to be in McConnell's possession (e.g., lists of contacts, licenses/regulatory information, Asterra-related invoices, sales forecasts, certificates of analysis, and product photos) does not qualify as trade secret under state or federal law, because it is publicly available, easily ascertainable, not marked or treated as confidential, routinely shared with third parties (including Asterra), developed in part by McConnell through his own relationships, and lacks independent economic value. Asterra and McConnell further assert that no misappropriation occurred, because McConnell has not disclosed or used the information for competitive purposes and the parties operate in distinct market segments. Discovery

6

will include information related to Plaintiffs' efforts to maintain secrecy, public accessibility of the purportedly secret information, dissemination to employees/third parties, and whether possession alone constitutes misappropriation.

v.    <u>Unfair and Deceptive Trade Practices</u>: Both sides assert claims under N.C. Gen. Stat. § 75-1.1, which requires proof that a defendant (1) committed an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that proximately caused injury to the plaintiff.  Discovery will be needed on both claims. Plaintiffs allege, among other things, that Defendants agreed and conspired to carry out acts that constitute unfair and deceptive trade practices, including embarking on a campaign to exclude MC from the business relationship so that Defendants could convert MC's inventory and personnel for themselves; procuring McConnell's breach of his employment obligations and soliciting MC customers in violation of the non-circumvention provisions; converting MCB Inventory for Defendants' exclusive benefit, including attempting to sell it on LinkedIn; and using their principals' positions of power and influence in North Carolina to threaten criminal prosecution and incarceration of MC's executives as leverage to extract payment demands. Plaintiffs contend these acts constitute deception and unfairness beyond mere breach of contract, with aggravating factors justifying treble damages under N.C. Gen. Stat. § 75-16 and costs and attorneys' fees under N.C. Gen. Stat. § 75-16.1. Asterra, Rise, and McConnell deny these allegations and contend that their actions were not

7

unfair or deceptive but rather constituted legitimate efforts to collect a debt; threats of criminal prosecution are not improper where the underlying conduct actually constitutes a crime, as Asterra maintains Counter-Defendants' conduct does; the conduct at issue constitutes mere breach of contract; and any actions taken by Rise were justified by its legitimate economic interest as Asterra's equity investor. Discovery will address the specific acts alleged (*e.g.,* communications, threats, inventory disposition, customer solicitation), whether those acts are independently actionable as unfair or deceptive conduct beyond ordinary breach of contract, the in-or-affecting-commerce element, proximate causation, damages, and the presence or absence of aggravating factors. Asterra, for its part, alleges a deliberate course of deceptive conduct by MCB, MCN, and MCGH designed to mislead Asterra and other market participants, including misrepresenting MCN's financial stability and creditworthiness to induce Asterra to fulfill purchase orders; misrepresenting MCB's ability to support a $2.5-million line of credit when MCB was undercapitalized; making false assurances of payment and sending fabricated wire transfer and ACH confirmations; concealing financial distress, including inability to meet payroll, while secretly shifting business to tariff-evading foreign suppliers; a broader pattern of deceptive conduct, including defrauding smaller customers and vendors by accepting upfront payments for undelivered orders and refusing refunds, extorting employees, conspiring in customs fraud, misappropriating Asterra's Nashville, North Carolina business

8

address in COAs to fraudulently cause customers to believe Counter-Defendants were operating from Asterra's facility, and falsifying certificates of analysis; and marketing and selling hemp-derived products exceeding lawful THC thresholds while disguising them as compliant hemp. Asterra alleges this conduct was in or affecting commerce because it involved the interstate manufacture, sale, and distribution of goods in the hemp market. Asterra seeks treble damages under N.C. Gen. Stat. § 75-16 and costs and attorneys' fees under N.C. Gen. Stat. § 75-16.1. MC denies these allegations. Discovery will address the specific representations made; Counter-Defendants' knowledge of the falsity of the representations at the time they were made, the concealment of financial distress, the broader pattern of deceptive conduct against third parties (e.g., communications with and records of other defrauded vendors and customers), the in-or-affecting-commerce element, proximate causation, and damages.

vi. <u>Fraud</u>: Alleged misrepresentations by Bret and Jeffrey Worley and MC entities regarding financial solvency, intent to pay for goods, product sourcing and compliance with federal laws; Bret Worley's alleged fabrication or exaggeration of political connections to induce Asterra and other business associates to transact with Counter-Defendants; fabricated evidence of pending payments; justifiable reliance by Asterra; and damages. Asterra alleges false representations and active concealments, known falsity, intent to induce reliance (e.g., to obtain goods without payment pursuant to a scheme repeated against multiple vendors), justifiable reliance, and

9

damages exceeding $1,600,000.00. MC denies. Discovery will address the specific representations made, knowledge of falsity, intent, reliance, and damages under North Carolina law.

vii. <u>Abuse of Process</u>: Improper use of this lawsuit by Bret Worley, MC Botanicals, and MC Nutraceuticals (Texas) for ulterior motives, such as leveraging baseless claims to avoid payment obligations or extract concessions. Asterra alleges MC filed suit with baseless claims to pressure settlement, with ulterior motive, and willful acts. MC denies. Discovery will focus on filing motives, process use, ulterior purpose, and damages under North Carolina law.

viii. <u>Veil Piercing/Alter Ego/Mere Instrumentality</u>: Asterra alleges that the Worleys exercise absolute authority over all MC entities, treating them as interchangeable extensions of their personal interests rather than independent businesses, including by siphoning entity funds for personal expenditures, commingling revenues across entities, and using the limited liability structure to shield assets and evade obligations to Asterra. MC denies. Discovery will examine corporate formation and governance documents, (e.g., operating agreements, minutes, resolutions), financial records showing the flow of funds between and among entities and the Worleys personally, evidence of undercapitalization (e.g., revenue versus debts and liabilities), personal expenditures from entity funds, tax returns, and evidence of domination, improper use, and proximate injury under

North Carolina law., tax returns, and evidence of domination, improper use, and proximate injury under North Carolina law.

ix.      <u>Federal and State RICO, RICO Conspiracy, and Civil Conspiracy</u>: Asterra asserts claims under both federal RICO (18 U.S.C. § 1962(c) and (d)) and state RICO (N.C. Gen. Stat. § 75D-1 *et seq.*), as well as a standalone civil conspiracy claim. Discovery will address (a) the existence and structure of an association-in-fact enterprise among Counter-Defendants (i.e., the Worleys, MCB, MCN, and MCGH), including hierarchical control, common purpose, and ongoing organization since at least the second quarter of 2023; (b) a pattern of racketeering activity consisting of at least two predicate acts, which Asterra alleges include: mail and wire fraud (18 U.S.C. §§ 1341, 1343) in misrepresenting financial solvency and payment intentions to induce extensions of credit; financial institution fraud (18 U.S.C. § 1344) involving false representations to obtain funds from federally-insured institutions, including fabricated wire transfer and ACH screenshots; interference with commerce by extortion (18 U.S.C. § 1951) through threats of incarceration and abuse of political connections; conspiracy to commit fraudulent importation (18 U.S.C. § 545) by importing cannabinoids from China and Lithuania while misrepresenting them as domestically produced and evading tariffs and country-of-origin labeling requirements; money laundering (18 U.S.C. § 1956) involving commingling of fraudulently obtained proceeds across entities, partial payments to prior victims, and diversion of funds for personal

11

expenditures; and use of interstate facilities in aid of racketeering (18 U.S.C. § 1952) including telephones, emails, online payment platforms, and interstate shipments; (c) state predicate acts under the North Carolina RICO Act, including obtaining property by false pretenses (N.C. Gen. Stat. § 14-100) and extortion (N.C. Gen. Stat. § 14-118.4); (d) conduct of the enterprise's affairs through the pattern of racketeering activity; (e) RICO conspiracy under 18 U.S.C. § 1962(d), including evidence that Counter-Defendants knowingly agreed to participate in the pattern of racketeering activity; (f) civil conspiracy, including Counter-Defendants' agreement to defraud Asterra and other creditors by misrepresenting financial stability, inducing extensions of credit and supply of goods without intent to pay, and exploiting the limited liability structure to evade accountability; (g) pattern and continuity, including evidence of similar predicate conduct against other identified victims (e.g., Atlantic Global Supply, BioVivo Science LLC, The Southern Group, FM Labs, Hemp Depot, and others identified in Asterra's counterclaim); and (h) concrete business and property injury to Asterra (e.g., unpaid invoices exceeding $1,577,518.17 plus interest, operational disruptions, reduced employee compensation, and reputational harm).  MC denies all RICO and conspiracy allegations. Discovery will include communications, financial records, import records, customs documentation, corporate records, third-party vendor and customer communications, and evidence of similar schemes against other

victims, as well as evidence relating to injury, causation, and damages under 18 U.S.C. § 1964(c) and N.C. Gen. Stat. § 75D-8(c).

x. <u>Factual Background Issues</u>: Pre-partnership operations of Asterra; Counter-Defendant Bret Worley's representations regarding MCN's revenue, financial stability, and political connections; inventory disputes; communications; product quality and regulatory compliance (e.g., FDA/DEA implications, country-of-origin labeling, safety testing, batch tracking); financial records of all parties (*e.g.*, revenue streams, unpaid balances, financing terms, cash flow, evidence of insolvency or solvency); alleged personal expenditures by Counterclaim Defendants from entity funds; other pending civil actions against Counter-Defendants by third-party creditors; and industry context (*e.g.*, competitive cannabinoid market dynamics, regulatory environment).

xi. Discovery may include document production (*e.g.*, contracts, emails, text messages, financial statements, bank records, inventory logs, import and customs records, corporate formation and governance documents, tax returns, and records relating to the Assurance of Discontinuance with the Colorado Attorney General's Office), interrogatories, requests for admission, depositions of parties (*e.g.*, Bret Worley, Jeff Worley, McConnell, Smith, Bell) and third-party witnesses (*e.g.*, suppliers, customers, regulators, former employees, and representatives of other entities that have transacted business with Counter-Defendants), and expert testimony on damages calculation, industry standards for cannabinoid production/distribution,

13

forensic accounting (including tracing of funds among Counter-Defendant entities), forensic analysis of data misappropriation, and RICO elements (*e.g.*, enterprise structure, predicate acts, pattern, and continuity).

(b)    <u>Phased discovery commencement dates</u>:

    i. <u>Fact Discovery</u>: The fact discovery period shall open **March 23 2026**, and conclude **October 2, 2026**.

    ii. <u>Expert Discovery</u>: The expert discovery period shall open **October 3, 2026**, and conclude **December 15, 2026**. By this timeline, the parties contemplate approximately six (6) months of fact discovery followed by approximately two-and-a-half (2.5) months of expert discovery.

    iii.    <u>Expert Witness Reports and Disclosures</u>: Reports and disclosures from retained experts under Fed. R. Civ. P. 26(a)(2) are due by any **party** with burden of proof on an issue on **October 3, 2026**. Rebuttal reports and disclosures from retained experts under Fed. R. Civ. P. 26(a)(2) are due by any **party** without the burden of proof on an issue on **November 2, 2026**.

    iv.

(c)    <u>Limitations</u>:

    i.    <u>Interrogatories</u>: Maximum of **twenty-five (25) interrogatories** from each **<u>set of counsel</u>**. Responses and supplementation shall be due as set out in the Federal Rules of Civil Procedure and the Court's Scheduling Order.

    ii.    <u>Requests for Admission</u>: Maximum of **fifty (50) requests for admission** from each **<u>set of counsel</u>**. Responses and supplementation shall be due as set out in the Federal Rules of Civil Procedure and the Court's Scheduling

14

Order. Notwithstanding the foregoing subsection, requests for admission with respect to the authenticity and admissibility of documents (including requests for admissions that objections to admissibility with respect to a given document will not be made), electronically-stored information, and things, shall not be subject to this limit, or count against this limit.

iii. <u>Fact Witness Depositions</u>: Maximum of **ten (10) depositions of fact witnesses** by each <u>**set of counsel**</u>. Each deposition under Rule 30(b)(6) shall constitute a single deposition, regardless of the number of witnesses supplied by the responding party.

iv. <u>Expert Depositions</u>: In addition to the deposition of fact witnesses, each <u>**set of counsel**</u> may take the deposition of each expert witness identified by the other sets of counsel in the case.

v. <u>Length of depositions</u>: Each deposition, including each Rule 30(b)(6) corporate deposition, shall not exceed **seven (7) hours**. Time spent testifying in a corporate deposition by a designated witness shall not count towards the seven (7) hour limit for the deposition of such witness in their individual capacity (if such individual deposition is taken), and vice versa.

(d) <u>Supplementation</u>: Supplementation under Rule 26(e) shall be made promptly as required by the Rules, but in no event later than the close of the fact or expert discovery period, as applicable.

(e) <u>Electronically Stored Information</u>: The parties intend to enter into an agreement between themselves by **Monday, April 20, 2026**, thirty (30) days from the filing of

15

this Report, governing the form in which electronically-stored information will be produced, and associated requirements for document retention.

(f) <u>Protective Order and Clawbacks</u>: The parties intend to agree on, and submit to the Court on before **Monday, April 20, 2026**, thirty (30) days from the filing of this Report, a proposed protective order governing the production of confidential information and materials, which shall include their agreements concerning clawback of inadvertently-produced information and materials for proposed inclusion in an order under Fed. R. Evid. 502.

5. <u>Scheduling</u>:

(a) The parties **<u>jointly request</u>** a conference with the court before entry of the scheduling order.

(b) <u>Final date for the plaintiffs to amend pleadings or to join parties</u>: 90 days from the close of the original pleadings in this matter.

(c) <u>Final date for the defendants to amend pleadings or to join parties</u>: 90 days from the close of the original pleadings in this matter.

(d) <u>Final date to file dispositive motions</u>: **Sixty (60) days** prior to trial.

(e) <u>Final date for submitting Fed. R. Civ. P. 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists</u>: **Thirty (30) days** prior to trial.

(f) <u>Final pretrial conference</u>: **Thirty (30) days** prior to trial.

(g) <u>Suggested trial date</u>: The parties request a trial date in **March 2027**. The estimated length of the trial is **one to two weeks**.

6. <u>Alternative Dispute Resolution</u>:

16

(a)     Prospects for settlement are low.

(b)     The parties were notified that this case was selected for mediation.

(c)     The parties agree that mediation may enhance settlement prospects and have selected Judge Gale as the mediator.

(d)     The parties will participate in an early, mediated settlement conference with Judge Gale on or before **June 30, 2026**, subject to the mediator's availability.

[Signature page follows]

Date: March 20, 2026

**/s/ Jonah Garson**
Jonah Garson
Attorney for Plaintiffs and MC
100 Europa Drive, Suite 351
Chapel Hill, North Carolina 27517
Telephone: (919) 913-3320
Email: jag@parryfirm.com

Date: March 20, 2026

**/s/ Alicia Jurney**
Alicia Jurney
Attorney for Asterra and Rise
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Email: alicia@parkerbryanlaw.com

Date: March 20, 2026

**/s/ Brandon Neuman**
Brandon Neuman
Attorney for McConnell
Nelson Mullins Riley & Scarborough
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3878
Email: brandon.neuman@nelsonmullins.com

18